Docusign Envelope ID: 69811564-F01F-8B5Fa83F9FF570528E4416B

CAUSE NO. 26-0959-C

| | | |
|---|---|---|
| BRANDON TRACE STEELE, AND ANDREA IRENE STEELE, TRUSTEES OF ARROYO PICOSA REVOCABLE TRUST | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| v. | § § | 241st JUDICIAL DISTRICT |
| AMERICAN STATE BANK, KELLY M. SANDERS, IN HIS CAPACITY AS TRUSTEE AND BRUCE A. STOCKARD IN HIS CAPACITY ON BEHALF OF AMERICAN STATE BANK | § § § § § § § § § | |
| Defendant. | § | SMITH COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Brandon Trace Steele and Andrea Irene Steele, Trustees of the Arroyo Picosa Revocable Trust ("Plaintiffs") and file this Plaintiffs' Original Petition and Application for Injunctive Relief complaining of and against American State Bank ("ASB") and Kelly M. Sanders in his capacity as Trustee (the "Trustee") and Bruce A. Stockard in his capacity on behalf of American State Bank ("Stockard") (ASB, the Trustee and Stockard are sometimes collectively referred to herein as the "Defendants"), and for causes of action would show the court the following:

### I. CLAIMS FOR RELIEF

1.      This lawsuit arises from Defendants' attempts to foreclose upon Plaintiffs' homestead.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF**
1149992

**Page 1**

Copy from re:SearchTX

2.      Plaintiffs seek a Temporary Restraining Order and Temporary/Permanent Injunction to stop Defendants' foreclosure of Plaintiffs' homestead located in Smith County, Texas. Plaintiffs also seek declaratory relief from the Court.

## II. DISCOVERY CONTROL PLAN

3.      Discovery in this matter should be conducted in accordance with a Level 3 Discovery Control Plan.

## III. PARTIES

4.      Plaintiff Brandon Trace Steele is a Trustee of the Arroyo Picosa Revocable Trust and an individual who resides in Smith County, Texas.

5.      Plaintiff Andrea Irene Steele is a Trustee of the Arroyo Picosa Revocable Trust, and an individual who resides in Smith County, Texas.

6.      Defendant American State Bank is a Texas chartered bank with its headquarters and principal place of business at 102 W. Front Street, Arp, Texas, in Smith County, Texas. American State Bank has failed to appoint or does not maintain a registered agent in the state of Texas. Accordingly, Tex. Bus. Org. C.§ 5.251(1) provides that the Secretary of State of Texas shall be an agent of the corporation upon whom process may be served. The Secretary of State of Texas shall immediately cause one copy of the citation with petition attached to be forwarded by registered mail addressed to the corporation at its registered office, pursuant to Tex. Bus. Org. C. § 5.251. Alternatively, American State Bank may be served with process by serving its President Peter Bennis at its headquarters and principal place of business at 102 W. Front Street, Arp, Texas, in Smith County, Texas.

7.      Defendant Kelly M. Sanders is the Trustee named in that certain Deed of Trust (Security Agreement, Financing Statement) (the "Deed of Trust") executed on May 27, 2022,

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                      **Page 2**
**FOR INJUNCTIVE RELIEF**
**1149992**

**EXHIBIT "A" - PAGE 2 of 153**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-8206-83FDF5-705294418P

which secures the Promissory Note made the basis of this lawsuit and is an individual who may be served with Citation at the address listed in the Deed of Trust at 5555 Old Jacksonville Highway, Tyler, Texas 75703.

8.      Defendant Bruce A. Stockard is an attorney representing ASB but also acts as the person purportedly conducting the sale pursuant to the Notice of Foreclosure Sale, without the Trustee, and without the appointment of a Substitute Trustee as required by the Deed of Trust herein. Mr. Stockard is an individual who may be served with process by serving him at his business address located at 500 N. Akard, Suite 2700, Dallas, Texas 75201.

### III. JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to the Texas Constitution Article 5. Section 8 and Texas Civil Practice & Remedies Code section 65.021(a).

10.     Venue in Smith County is mandatory in this case under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property and the removal of encumbrances from the title to real property located in Smith County, Texas.

### IV. FACTS

**A.   Plaintiffs' Property and Homestead**

11.     Plaintiffs are husband and wife and currently reside on approximately 169.798 acres of property consisting of three (3) tracts of land including (1) Tract 1 with approximately 166.798 acres, (2) Tract 2 with 1.0 acre and (3) Tract 3 with 2.0 acres located at 10693 County Road 2180, Whitehouse, Smith County, Texas, 75791 (all collectively the "Property"). The resulting approximate 169.798 acres of Property constitutes Plaintiffs' homestead. A true and correct copy of a Legal Description of Plaintiffs' homestead is attached hereto as **Exhibit A** and incorporated herein by reference.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                      **Page 3**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4045-B3F4-E79528E4A16B

## B. Promissory Note and Deed of Trust

12. On or about May 27, 2022, the Arroyo Picosa Revocable Trust, as Borrower, executed a Promissory Note with ASB, as Lender. The Trustees of the Borrower who executed the Promissory Note are: (1) Brandon Trace Steele, Individually and as Trustee of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022, and (2) Andrea Irene Steele, Individually and as Trustee of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022. A true and correct copy of the Promissory Note is attached hereto as **Exhibit B** and incorporated herein by reference. The Promissory Note was secured by a Deed of Trust (Security Agreement, Financing Statement) also dated May 27, 2022 (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C** and incorporated herein by reference. The Deed of Trust granted ASB a lien against the Property.

## C. Year 6 Balloon Payment, Fixed Rate

13. The loan product chosen by Plaintiffs and ASB was termed a "Year 6 Balloon Payment, Fixed Rate" loan. Principal and interest on the Promissory Note are payable in monthly installments of $23,981.52 (based on a 300 month amortization) each month beginning June 27, 2022 and continuing regularly in like installments on the same day of the month in each period. If on November 27, 2027, Borrower still owes amounts under this Note, Borrower will pay those amounts on that date, which is called the "Maturity Date" when all unpaid principal and interest is due and payable.

## D. ASB Has Previously Improperly Noticed Defaults and Posted Plaintiffs' Property for Foreclosure Which Plaintiffs Cured Anyway By Agreement

14. ASB's has previously posted notice of foreclosure of the Plaintiffs' Property for foreclosures scheduled for May 6, 2025 but that posting was eventually removed as more fully

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                    **Page 4**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-8...

discussed in Paragraphs N through O below which focuses on ASB's broken promise to enter into a Reinstatement and Modification Agreement Therefore, Plaintiffs will first focus on the pending Notice of Foreclosure scheduled for April 7, 2026 and then return to a discussion of the earlier posting.

**E.    Notice of Foreclosure Sale for Tuesday April 7, 2026**

15.    On February 27, 2026, ASB, by and through its attorney Defendant Bruce A. Stockard, and without notice from the Trustee named in the Deed of Trust or the appointment of a Substitute Trustee, purportedly served a Notice of Foreclosure Sale for April 7, 2026. A true and correct copy of the foregoing ASB's Notice of Foreclosure Sale is attached hereto as **Exhibit D** and incorporated herein by reference.

**F.    Failure to Properly Serve Notice of Foreclosure Sale**

16.    There was no transmittal letter accompanying the Notice of Foreclosure Sale establishing the method, type or date of service attempted such as by certified mail, return receipt requested, U.S. postage mail or other means of service. Neither of the Plaintiffs received the Notice of Foreclosure Sale by certified mail, return receipt requested as required by Paragraph 11 of the Deed of Trust and Brandon Steele denies receiving a copy of the Notice of Foreclosure Sale addressed to him. Without such evidence, Defendants cannot establish that Defendants' Notice of Foreclosure Sale was timely sent to Plaintiffs in strict compliance with the terms of the Deed of Trust.

**G.    Notice of Foreclosure Sale was Served by ASB's Attorney, not by Either the Trustee, or Substitute Trustee**

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION                                      Page 5
FOR INJUNCTIVE RELIEF
1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-8... Plaintiff's Original State Court Petition   Page 6 of 153

17.     Pursuant to the Deed of Trust, legal title remains in "Kelly M. Sanders, Trustee", the trustee named in the Deed of Trust. Plaintiffs have received no notice of the appointment of a Substitute Trustee.  Paragraph 11 of the Deed of Trust  provides as follows:

> 11.     **POWER OF SALE.** If Grantors shall default hereunder, **Grantors hereby authorize and empower the Trustee,** at the request of Beneficiary, at any time during the continuance of any default to sell all or any portion of the Mortgaged Premises, at public auction, to the highest bidder, for cash…(emphasis added)

Therefore, the Trustee is currently holding legal title to the Property and is the only party currently authorized and empowered to conduct the foreclosure sale.

18.     The Notice of Foreclosure Sale was purportedly sent by ASB's Attorney, Mr. Bruce Stockard but legal title and the "Power of Sale" would appear to be in Kelly M. Sanders, Trustee pursuant to the Deed of Trust. There has apparently been no appointment of a Substitute Trustee and Plaintiffs deny receipt of any appointment of a substitute trustee. The Notice of Foreclosure Sale is in violation of the foregoing "Power of Sale" provision in Paragraph 11 set forth above and not in strict compliance with the terms of the Deed of Trust.

19.     Although ASB's own Notice of Foreclosure Sale in Paragraph 2 incorrectly and vaguely references "Notice of Substitute Trustee's Sale",   it clearly is not a notice of substitute trustee's sale since there is no reference to the transfer of the "Power of Sale" in Paragraph 11 of the Deed of Trust. See only general reference to a Substitute Trustee's Sale in the Notice of Foreclosure Sale below:

> Place:     In the area designated by the Commissioners Court of such County, pursuant to §51.002 of the Texas Property Code as the place where foreclosure sales are to take place (if no such place is so designated, the sale will take place in the area **where this Notice of Substitute Trustee's Sale is posted**). (emphasis added)

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                    **Page 6**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-8...

However, "this" (i.e. The Notice of Foreclosure Sale) is neither a notice of the appointment of a substitute trustee nor a Notice of Substitute Trustee's Sale, since no Substitute Trustee has been appointed nor is there a transfer of the "Power of sale in Paragraph 11 of the Deed of Trust. .An appointment of substitute trustee would have to come from Trustee or at least ASB. The person or entity who might have appointed Mr. Stockard is at best assumed and, therefore, the Notice of Foreclosure Sale is not in strict compliance with the terms of the Deed of Trust.

**H. ASB, and its Attorney, Failed to Comply with Substitute/Successor Trustee Requirements in Deed of Trust**

20. Paragraph 12 of the Deed of Trust (Exhibit C) provides:

> 12. **SUBSTITUTE /SUCCESSOR TRUSTEE**. At the option of the Beneficiary, with or without any reason, a successor substitute trustee may be appointed by the Beneficiary without any formality **other than a designation in writing of a successor or substitute trustee**, who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named, the same as if the successor or substitute trustee had been named original Trustee herein; and such right to appoint a successor substitute trustee shall exist as often and whenever the Beneficiary desires.

21. There is no designation in writing of a successor or substitute trustee in compliance with Paragraph 12 above and therefore the Notice of Foreclosure Sale is not in strict compliance with the terms of the Deed of Trust.

**I. Mr. Stockard and his Law Firm are Advocates Not Fair and Impartial Trustees**

22. An attorney such as Defendant Stockard is an advocate and a party to this lawsuit in his capacity on behalf of ASB, while a Trustee must be fair and impartial. Therefore Scheef & Stone and particularly attorney Bruce A. Stockard, are disqualified from serving as a fair and impartial Trustee, or Substitute Trustee, pursuant to the Notice of Foreclosure Sale or to exercise the powers of the Trustee, or Substitute Trustee under the Deed of Trust.

Copy from re:SearchTX

**J.      The Failure to Act In Capacity as Trustee or Substitute Trustee in Posting the Notice of Foreclosure Sale Breaches Duties Owed by Trustee to Plaintiffs**

23.      Under Texas law, a substitute trustee "exercising the authority to foreclose in accordance with the terms of a deed of trust does not act merely as an agent or employee of the lienholder but has a separate capacity with a particular legal responsibility." *Johnson v. Ocwen Loan Servicing, LLC*, No. 02:09-CV-00047, 2009 WL 2215103, at *4 (S.D. Tex. July 22, 2009) (quoting *Person v. Black*, 980 S.W.2d 818, 822 (Tex. App.—San Antonio 1998, no pet)). It is the substitute trustee's duty to "act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust." *Myrad Properties, Inc. v. La Salle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009); *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). "This duty is breached when the trustee fails to comply strictly with the terms of the deed of trust or the notice and sale provisions of § 51.002 of the Texas Property Code." *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011).

24.      Defendant Bruce A. Stockard is an attorney and advocate for ASB and is unable to act with impartiality or fairness in performing his duties. An attorney is an advocate while a Trustee must be fair and impartial. Therefore Scheef & Stone and particularly attorney Bruce A. Stockard, are disqualified from serving as a fair and impartial Trustee, or Substitute Trustee, pursuant to the Notice of Foreclosure Sale or to exercise the powers of the Trustee, or Substitute Trustee under the Deed of Trust.

25.      As demonstrated by the Exhibits attached to this Petition, Defendant Stockard is long-time retained counsel for ASB in this and other matters and has an extensive business relationship with the owners of ASB. The foregoing evidence establishes that Scheef & Stone and

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                              **Page 8**
**FOR INJUNCTIVE RELIEF**
**1149992**

**EXHIBIT "A" - PAGE 8 of 153**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-8...

particularly attorney Bruce A. Stockard was clearly acting with partiality, acting in bad faith, and committing fraud against the Borrower, the Plaintiffs and potential third-party bidders.

26.     Defendant Stockard and representatives of ASB have personal animosity toward Plaintiff Brandon Steele, the principal of the Borrower, which further prevents them from acting with impartiality. As more fully discussed below, Defendant Stockard has previously improperly posted Plaintiffs' Property for foreclosure, only to be forced to remove such postings. In addition, as more fully discussed below, Plaintiffs and ASB are engaged, and have been engaged as adversaries in numerous, multifaceted litigation, including one lawsuit filed just 3 days before ASB's latest posting for foreclosure, against ASB seeking in excess of $655,953.57 for contractual and statutory indemnification based upon the legal work performed for Steele as the former Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022. That lawsuit seeks contractual and statutory advancement and indemnification for legal fees and expenses incurred by 5 different law firms engaged on Brandon Steele's behalf as a result of his service to ASB as the former Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022.

**K.     Posting of Notice of Foreclosure at the Smith County Courthouse**

27.     Paragraph 11 of the Deed of Trust (Exhibit C) provides as follows:

**11.     POWER OF SALE:**

\*\*\*

"Notice of such proposed sale shall be given by written notice thereof as provided by applicable law. In addition, Beneficiary shall, **at least twenty-one days preceding the date of sale**, serve written notice of the proposed sale **by certified mail on each debtor obligated to pay the debt** secured hereby according to the records of Beneficiary in the manner prescribed by applicable law. (emphasis added)

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                **Page 9**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

The Notice of Foreclosure Sale was purportedly filed stamped at 3:47 p.m. on March 13, 2026, and posted by the Smith County Clerk in the place designated for the posting of notices in Smith County. True and correct copies of photographs taken by Mr. Steele of the foregoing posted Notice of Foreclosure Sale are attached hereto as **Exhibit E** and incorporated herein by reference. The Notice of Foreclosure Sale posted at the Smith County Courthouse (Exhibit E) appears to be identical to the Notice of Foreclosure Sale attached as Exhibit D.

**L.     The Notice of Foreclosure Sale Fails to Establish the Persons or Entities Served and the Manner or Method of Service**

28.     The Notice of Foreclosure Sale attached as Exhibit D, however, is not addressed or directed to any person or entity, much less the Borrower, Plaintiffs collectively or even individually. As more set forth above the Power of Sale in Paragraph 11 of the Deed of Trust requires service of "written notice of the proposed sale by certified mail **on each debtor** obligated to pay the debt. (emphasis added)" Certified mail "on each debtor" requires the identification of the debtor and person or entity to be served.

29.     The Notice of Foreclosure Sale contains no confirmation of the method or manner of service, the persons or entities served or the place of service including service by certified mail as required by Paragraph 11 of the Deed of Trust. Service by Certified mail also requires the identification of the address or location of delivery.

30.     Defendants failed to send the Notice of Foreclosure Sale in the manner and method required by the Deed of Trust and, therefore, the Notice of Foreclosure Sale is not in strict compliance with the terms of the Deed of Trust.

**M.     The Notice of Foreclosure Sale Fails to Establish that Additional Borrowers were Served**

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                  **Page 10**
**FOR INJUNCTIVE RELIEF**
1149992

**EXHIBIT "A" - PAGE 10 of 153**

Copy from re:SearchTX

31. As set forth above, pursuant to Paragraph 11 of the Deed of Trust, ASB was required to "serve written notice of the proposed sale by certified mail **on each debtor obligated to pay the debt** secured hereby" (emphasis added). Pursuant to the Revocable Trust Rider, not only was the Arroyo Picosa Revocable Trust a debtor, but Brandon Trace Steele and Andrea Irene Steele were also debtors entitled to receive Notice of Foreclosure Sale as follows:

> **ADDITIONAL BORROWER(S).** The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. **Each party signing this Rider below** (whether by accepting and agreeing to the terms and covenants contained herein or by acknowledging all of the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and **shall be enforceable by the Lender as if such party were named as "Borrower" in the Security Agreement.** (emphasis added)

32. Additionally, section 51.002(b)(3) of the Texas Property Code provides

> (b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
>
> > (3) serving written notice of the sale **by certified mail** on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt. (emphasis added)

33. But, the Notice of Foreclosure Sale attached as Exhibit D was not properly served upon any of the debtors obligated to pay the debt and therefore, the Notice of Foreclosure Sale is not in strict compliance with either the Deed of Trust or Texas law.

**N. Earlier Unsuccessful Attempts By Defendants to Foreclose on Plaintiffs' Property**

34. On or about November 29, 2024, Defendant Strickland, as attorney for ASB forwarded to Plaintiffs correspondence including notice of default recognizing a recent payment

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**    **Page 11**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4FAE-A5FF-0F9EF044C79A

by Plaintiffs but demanding payment of $49,162.12 for the months of October and November 2024. A true and correct copy of the foregoing November 29, 2024 correspondence is attached hereto as **Exhibit F** and incorporated herein by reference.

35. However, during the prior week, on November 22, 2024, Mr. Steele on behalf of Plaintiffs, had forwarded correspondence to Mr. Petter Bennis, CEO of ASB and James W. Bowen, an attorney for ASB notifying ASB that ASB had prevented Plaintiffs from making timely payment on his mortgage as follows:

> Peter,
>
> Hope this message finds you well. I was making my mortgage payment in the drive through at the Bechman branch today at 5:45, ironically, I was also on the phone with James and the lady in the window said that her supervisor told her that she could not accept my mortgage payment at this time. She was very polite and her name was Stacy Smith. Definitely nothing you need to worry about this weekend but please let me know when you can what I need to do to make my payment.

A true and correct copy of the foregoing November 22, 2024 correspondence is attached hereto as **Exhibit G** and incorporated herein by reference.

36. On or about December 6, 2024, Defendant Strickland, as attorney for ASB forwarded to Plaintiffs correspondence including Notice of Acceleration. A true and correct copy of the foregoing December 6, 2024 correspondence is attached hereto as **Exhibit H** and incorporated herein by reference.

**O.    ASB Fails to Abide by Their Proposal and Offer for a Reinstatement and Modification Agreement**

37. By correspondence dated January 13, 2025, Defendant Stockard as attorney for ASB, presented a written proposal, at ASB's instruction, to Plaintiffs offering to reinstate and modify the Promissory Note upon the following grounds:

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                        **Page 12**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

...I have been instructed by Lender that it would still be willing to consider reinstating the Note if you were to meet certain conditions as a requirement before reinstatement would be put into effect. As a condition to reinstatement and which will be set forth in the form of a Reinstatement and Modification Agreement with terms acceptable to the Lender in its sole and absolute direction, you shall be required to send Lender $64,700.30, before January 31, 2025. Additionally, as a condition to reinstatement, you must produce evidence satisfactory to Lender of payment of the 2024 property taxes on the collateral for the Loan prior to January 30, 2025. Finally, upon request, you must allow Lender access to the Property for inspection and appraisal.

A true and correct copy of the foregoing January 13, 2025 correspondence is attached hereto as **Exhibit I** and incorporated herein by reference The deadline to meet the foregoing deadlines was February 1, 2025.

38.     By correspondence dated later that afternoon on January 13, 2025, Brandon Steele, on behalf of Plaintiffs responded: "I accept the terms of this letter, thank you." A true and correct copy of the foregoing January 13, 2025 correspondence is attached hereto as **Exhibit J** and incorporated herein by reference

39.     Brandon Steele then proceeded to forward to Defendant Stockard the following 5 separate written correspondences, requesting clarifications concerning the balance owed and an accounting of how ASB applied payments on the Promissory Note:

**Request No. 1**:   January 13, 2025 Exhibit J):

> Would you mind also sending me a copy of the loans lender for 2024 please? where the payments where applied etc. please? I no longer receive statements, and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this matter.

> January 13, 2025 (Exhibit K) :

> Additionally, could you please show me how this new payment request will be applied?

**Request No. 2**:   January 17, 2025 (Exhibit L)

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                              **Page 13**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4E9F-9B30-C60F37E0AE9E

Just following up here on the request of the 2024 payments ledger/breakdown of past payments and the sources and uses of how the requested January payment will be applied.

**Request No. 3:**      January 30, 2025 (Exhibit M)

This is my third request asking for basic information regarding my attached loan payment and to date I have not receive the requested information or even an acknowledgement of my email. As you know, ASB evidently stopped sending out loan payment request or statements last year to save dollars which I respect. However, I have simply asked for an allocation of payments for 2024 as well as a source and uses for your payment request from your letter dated 1/13/25. As you can see, my estate attorneys received the attached requested voucher on January 21st after your letter that was sent on January 13th. As you can see, there is no allocation of principal to the payment, it deviated from your payment request of 1/13/25 and additionally the payment does not match the requested loan payment on the loan agreement. And since ASB no longer sends any kind of loan statements to its customers, or payment vouchers the only way I know to acquire this information is to ask for it. To date based on your lack of response ASB appears to be withholding this information from me which leaves me baffled. Additionally, this payment request deviates from your request in your letter dated January 13th.

Finally, as I have requested several times before I am simply trying to reconcile the payments ASB received in 2024 and additionally , I have three different payment requests in my possession for the month of January. *As in most all my interactions with the banks management team in 2024* **I am not asking for any special treatment as the 93% owner of American State Bank but merely the same level of courtesy, respect, access to basic information and communication that any customer/investor should receive.** Additionally, you not responding to my three emails leaves me confused based on pure professional courtesy. I look forward to your response.

**Request No. 4:** January 31, 2025 (Exhibit N)

My 4th attempt to get communication as your letter of 1/21 offered. Attached please see the receipt of paid property taxes per your request. Again, I have attached a loan payment notice after the letter dated on 1/13 and the numbers differ. Which is correct? Can I please see the breakdown of your requested amount and why it differs. The banks internal system has a number that differs from the other. Not saying it's wrong just want to know what the discrepancy is and a breakdown which by law I am entitled to. If I don't get a response by 2:00 Peter ill just come by your office and you can maybe pull it up on the computer and we can walk thought it. Please advise,

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                    **Page 14**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4E96-A54B

**Request No. 5**: April 15, 2025 (Exhibit O)

Per your request I am attaching this letter to the four other correspondence that I have sent to you and to Mr. Bennis. I have requested clarification to my balance as well as asking for correct monthly payment amount of my mortgage as you can see it appears to be incorrect. Finally, after not responding to you I spoke to Peter Bennis on February 1st and he apologized for you not responding to my correspondence. He also said there was a payment discrepancy due to the fact that the loan was on non-accrual and that he would get back to me with a reconciliation and payment information. To date I have received nothing.

I have received no payment notice nor balance information and as I told Mr. Bennis I have no idea what the payment amount should be. As I told you on the phone there is no reference to an amount owed or even a balance owed in this letter. I am blind and need the banks assistance in telling me what is owed for the 5th request. Please immediately take the foreclosure notice down to avoid escalation.

True and correct copies of each of the foregoing correspondences are attached hereto as **Exhibits J through O** respectively and incorporated herein by reference.

40.     The Requests set forth in Exhibits J-O constitute "Requests for Information" ("RFI") and "Qualified Written Requests" ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §2605(e) which provides in pertinent part as follows::

**(e) Duty of loan servicer to respond to borrower inquiries**

**(1) Notice of receipt of inquiry**

**(A) In general**

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

**(B) Qualified written request**

PLAINTIFF'S ORIGINAL PETITION AND APPLICATION                                          Page 15
FOR INJUNCTIVE RELIEF
1149992

**EXHIBIT "A" - PAGE 15 of 153**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

**(2) Action with respect to inquiry**

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**          **Page 16**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

41. Pursuant to the correspondence identified in Request No. 4 above, Brandon Steele on behalf of Plaintiffs, also served upon Mr. Stockard on January 31, 2025, a copy of the Smith Cunty Tax Office-Multiple Account Receipt- along with proof of payment, in full of all 2024 Property Tax Statements. The foregoing correspondence was served to comply with one of the conditions set forth in Defendant Stockard's January 13, 2025 correspondence (Exhibit I).

42. Finally, on February 1, 2025, Brandon Steele, on behalf of Plaintiffs, spoke by telephone with Mr. Peter Bennis, Chief Executive Officer of ASB, concerning Mr. Steel's requests for clarification of his balance and his request for correct monthly payment amounts on his mortgage which appeared to be incorrect. See Exhibits J through O above. Mr. Bennis apologized for Mr. Stockard's failure to respond to the 5 Request Nos. 1-5 above and stated there was a payment discrepancy due to the fact that the loan was on non-accrual and that Mr. Bennis would get back to Steele with a reconciliation and payment information. However, Mr. Bennis, the CEO of ASB failed to "get back" to Mr. Steele as he had promised to do in his February 1, 2025 telephone conference.

43. ASB and its attorneys have breached their duty of cooperation and breached their duty of good faith and fair dealing thereby making it impossible for Plaintiffs to determine the correct amounts required to pay off the Promissory Note and loan indebtedness, or how any payments made would be allocated. Plaintiffs were ready, willing and able to meet all the conditions of the written proposal contained in Mr. Stockard's correspondence dated January 13, 2025 (Exhibit I).

44. On April 10, 2025, Mr. Bruce A. Stockard of Scheef & Stone purported to serve a Notice of Foreclosure Sale scheduled for May 6, 2025. A true and correct copy of the April 10,

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**            **Page 17**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4884-9478-9F3F4BE2CC12

2025 Notice of Foreclosure Sale is attached hereto as **Exhibit P** and incorporated herein by reference.

45.      On April 15, 2025, Mr. Andrew Ryan, an attorney newly hired to represent Plaintiffs, forwarded correspondence to Mr. Stockard to follow-up on Mr. Steele's requests for clarifications of amounts due on the Promissory Note as follows:

> I just left you a voicemail. I represent Brandon Steele. I'm calling to find out: (1) what amount ASB claims is owed so that Brandon can pay it and have the foreclosure notice taken down; and (2) resolve the reconciliation and auto-debit issues so that lawyers don't have to get involved in what should be the routine auto-debit of his mortgage. Please give me a call back at 214.347.7360 (office) or 214.417.0076 (cell). As you know, time is of the essence given the foreclosure notice. If we don't receive a prompt response, Brandon will have to pursue all other available options, including seeking a TRO against the foreclosure sale.

A true and correct copy of Mr. Ryan's April 15, 2025 correspondence is attached hereto as **Exhibit Q** and incorporated herein by reference.

46.      The next day, on April 16, 2025, Mr. Ryan forwarded correspondence to Mr. Stockard, requesting the following:

> Could you please also provide the following documents?
>
> 1 – The reconciliation statements that Brandon's emails have previously asked for.
>
> 2 – The amount currently past due on the loan. Not the accelerated amount, but the amount related to allegedly missed payments.
>
> 3 – The basis for the interest calculation. Neither the payoff statement nor the daily rate makes much sense. From the payoff statement, there's around $260,000 in interest that is supposedly due. The loan is for roughly $4M; that's about 1 year's interest at 6.25%. But the documents attached to Brandon's prior email show (re-attached here), as of the payment due on 12/27/24, the interest outstanding was $13,039.81—and no principal, so the principal had not been accelerated. So how did a year's worth of interest accrue between January 21st and today? Also, the daily interest amount is over $1,800, which would suggest an interest rate on this mortgage of 18%.

Copy from re:SearchTX

4 – The basis for the tax calculation. Brandon previously sent you his receipt from January 31, 2025 for paying the 2024 property tax. I'm attaching it here again. Yet the documents you sent me allege the property taxes for 2024 haven't been paid.

5 – Any other copies of a Loan Delinquent Notice (like the one attached) that were sent to Brandon after January 21, 2025.

6 – A copy of all notices of acceleration sent to Brandon and proof of receipt.

7 – A copy of the written notice, sent by certified mail, stating that the Trust is in default and giving the Trust at least 20 days to cure the default before the notice of sale.

If we don't get these documents, we will assume the Bank does not have them, as Brandon has been asking for documents for months (see his emails to you yesterday) and none were provided. I have asked Brandon for these documents. He is checking his records again but, as of today, does not believe any were sent to him.

A true and correct copy of the foregoing April 16, 2025 correspondence is attached hereto as

**Exhibit R** and incorporated herein by reference,

47.    On April 21, 2025, Mr. Ryan forwarded correspondence to Stockard, requesting

the following:

It's been 5 days and we haven't heard anything back. At this point, I'm taking your silence as an admission by the bank has none of these documents and we will be making that representation to a Court in a motion for temporary restraining order. If you contend otherwise, or if the bank opposes the TRO, please let me know immediately.

A true and correct copy of the foregoing April 21, 2025 correspondence is attached hereto as

**Exhibit S** and incorporated herein by reference

48.    Eventually the posting for the Tuesday May 6, 2025 Foreclosure Sale was taken

down with the agreement of all parties.

**P.    ASB Has Both Accepted Large Amounts of Post-Acceleration Payments and Prevented Plaintiffs from Making Payments on the Promissory Note for Months**

49.    Notably, Defendants' own documents demonstrate that the Promissory Note was

not treated as accelerated in practice. Although Defendants purported to accelerate the loan in early

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                        **Page 19**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4146-8F93-8E3164A3648E

December 2024, they subsequently accepted substantial payments from Plaintiffs, including a payment in excess of $70,000 in December 2024. Thereafter, on January 21, 2025, Defendants issued a "Loan Delinquent Payment Notice" reflecting only a past-due monthly payment of approximately $23,712.21 and expressly stating that no principal balance was due. A true and correct copy of the Loan Delinquent Payment Notice is attached hereto as **Exhibit T** and incorporated herein by reference. This notice is inconsistent with a fully accelerated loan, under which the entire indebtedness would be immediately due and payable. Defendants' acceptance of post-acceleration payments and issuance of a standard delinquency notice demonstrate that Defendants treated the loan as ongoing and not fully accelerated, thereby creating confusion as to the amount owed and preventing Plaintiffs from determining how to cure any alleged default

50.     On February 3, 2026, a conversation took place in the federal bankruptcy courthouse in Tyler, Texas, among Brandon Steele, on behalf of Plaintiffs, Plaintiffs' attorney Sarah Cox, Peter Bennis (CEO of ASB) and Patrick Schurr (ASB's counsel) during which Mr. Steele asked Peter Bennis why he had placed a digital alert on the banks "JackHenry" software system for tellers beginning in November 2024 that instructed bank tellers that they could not accept mortgage payments from Plaintiffs. Mr. Bennis replied , that "no the message says on the system that the teller cannot accept a mortgage payment from you unless they get my personal permission".

51.     On February 3, 2026, Peter Bennis, CEO of ASB then expressly gave Plaintiffs permission to make post-acceleration payments and requested that Mr. Steele, on behalf of Plaintiffs, make two post-acceleration regular monthly payments which equals $47,963.04.

52.     In fact, ASB has accepted over $125,000.00 in payments after acceleration of the Promissory Note on December 6, 2024. A true and correct copy of the Individual Loan Activity

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                    **Page 20**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-46BB-8F5F-738F7306F44C

Statement of ASB dated February 2, 2026, received by Plaintiffs is attached hereto as **Exhibit U** and incorporated herein by reference. On February 4, 2026, two days after the date of the Individual Loan Activity Statement, ASB accepted the wire transfer payment, Bennis had permitted and requested on February 3, 2026, equaling two regular monthly payments by Plaintiffs on February 4, 2026, in the total amount of $47,963.04. A true and correct copy of the foregoing wire transfer is attached hereto as **Exhibit V** and incorporated herein by reference. When ASB has asked for payments after the acceleration of the Promissory Note and Plaintiffs have been permitted and allowed to make payments to ASB, Plaintiffs have promptly made payments. However, ASB has blocked payments on numerous occasions as described herein.

53.     On March 24, 2026, Steele, on behalf of Plaintiffs, forwarded correspondence dated March 24, 2026, to each of the Board Members of ASB which stated, in pertinent part as follows:

> Dear Board Members,
>
> I hope this message finds you well and in good spirits. I wanted to follow up on a matter that Peter and I discussed last month at the courthouse, as I believe we made some progress in clearing up a previous misunderstanding. I am reaching out to request some additional clarification for everyone's benefit.
>
> Peter, as we talked about, **there is a message at the teller line indicating that I am not allowed to make a mortgage payment.** You clarified that the message actually says I can't make a payment without your permission—the last teller I spoke with didn't relay that important detail. On February 6th, you specifically requested that I make two months of mortgage payments by wire transfer, which I was happy to do.
>
> Given these circumstances, I am asking if the board would continue to honor that arrangement and allow me to make my loan payments. For clarity, Peter—based on our conversation in the presence of Sarah and your attorney—**is it now permissible for me to resume making mortgage payments?** As I shared with the judge during the hearing, when asked what I would be willing to pay, I responded, "whatever the bank asks me to do." I am happy to provide a copy of the court transcript if needed.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                              **Page 21**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4546-8FF5-CEAB31AD...

> Since you previously requested that I make two payments, which I did, my question is whether you will allow me to continue making payments and bring my mortgage current, as discussed in the courthouse. I am reaching out now, per your request of February 5th or 6th, to ask for your permission to make my mortgage payments per your request. (emphasis added)

A true and correct copy of the foregoing March 24, 2026 correspondence is attached hereto as

**Exhibit W** and incorporated herein by reference.

**Q.**   **Neither Defendant ASB, nor Its Counsel, Defendant Stockard, Can Be Fair and Impartial with the "Powers of Sale" Reserved to a Trustee or Substitute Trustee, Under the Deed of Trust**

54.   On January 31, 2026, Brandon Steele, on behalf of Plaintiffs forwarded correspondence to Peter Bennis, CEO of ASB entitled "Notice of Conflicted Counsel, Tainted Foreclosure Actions, and Demand to Cease Enforcement and Preserve Evidence", a true and correct copy of which is attached hereto as **Exhibit X** and incorporated herein by reference.  The foregoing correspondence provided in pertinent part as follows:

> This letter serves as formal notice to American State Bank ("ASB") that foreclosure-related actions taken by or on behalf of the Bank against me and my family are tainted by a material and non-waivable conflict of interest arising from the Bank's retention of Scheef & Stone LLP. A detailed conflict and withdrawal demand has been transmitted directly to Scheef & Stone LLP, which this letter expressly incorporates by reference.
>
> **Conflicted Counsel and Tainted Enforcement Actions**
>
> As ASB is now aware, I previously consulted with Scheef & Stone LLP in October 2024 regarding representation in matters directly involving ASB's adverse conduct, threatened foreclosure activity, and related litigation strategy. Notwithstanding that consultation, ASB later retained Scheef & Stone LLP to pursue foreclosure, acceleration, and demand actions against my homestead, including notices issued in December 2024 and subsequent enforcement efforts throughout 2025. Those actions were undertaken through conflicted  counsel and are therefore voidable, unenforceable, and legally infirm.
>
> **Demand to Cease Enforcement and Maintain Status Quo**

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                            **Page 22**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-

ASB is hereby placed on notice and demanded to immediately cease any foreclosure, acceleration, or enforcement activity based on notices or demands issued through conflicted counsel. ASB may not rely upon or enforce such tainted actions and must maintain the status quo unless and until unconflicted counsel is retained, all prior tainted actions are formally withdrawn, and any enforcement efforts are re-initiated in full compliance with applicable law and court supervision.

**R.  Plaintiffs and ASB Have Recently Been, or Are Currently Involved in Numerous Lawsuits as Adversaries Which Magnifies Conflicts in Interest, Impartiality and Fairness Concerns**

55.   Plaintiffs have been or are currently involved in substantial, on-going litigation as adversaries which magnify the conflicts of interest, impartiality and fairness concerns surrounding Mr. Stockard, ASB's attorney, to serve as the person conducting the proposed foreclosure sale of Plaintiffs' Property without the Trustee or the Appointment of a Substitute Trustee. The litigation between Steele, his related business entities, and ASB include, without limitation, the litigation referenced in the following several paragraphs Q. and R below:

1.   Cause No. DC-2023-CV-0607 styled "RT Franklin Holdings, LLC. and Christina Chapman v. Steele West Texas Capital Corporation, ASB, and Steele Bancshares, Inc. in the 72nd District Court of Lubbock County, Texas" filed on May 16, 2023 (the "RT Franklin Lawsuit");

2.   Cause No. A44977-2311 styled Chris Cartwright and Wright-Cart, Ltd., v. Brandon Steele, Steele West Texas Capital Corporation, Steele Bancshares, Inc. and ASB in the 64th Judicial District Court of Hale County, Texas filed on October 31, 2023 (the "Cartwright Lawsuit"). See, Original Petition filed October 31, 2023, and First Amended Petition filed January 2, 2024, which added new parties Plaintiff Donald Ebeling, Jr., Cinde Ebeling, Steven Ebeling, Shannon Ebeling, Robert Edwards, Ken King, in his capacity as Trustee of the King Contribution Trust, Coy Myrick, Jake Dennis Myrick, Daniel Smith, Reeda Smith and Rotom, Inc. Subsequently, approximately 100-120 shareholders of SWTCC were all added as parties; and

3.   Cause No. B44984-2311 styled Rodney Warren v. Steele West Texas Capital Corporation, Steele Bancshares, Inc., Brandon T. Steele and ASB filed in the 242nd Judicial District Court of Hale County, Texas

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                    **Page 23**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-4420-8B65-7C3EB940E9E9

November 3, 2023." (the "Warren Lawsuit') See, also First Amended Petition filed November 8, 2023.

The RT Franklin Lawsuit, the Carwright Lawsuit and the Warren Lawsuit are collectively referred to herein as the "SWTCC Shareholder Lawsuits".

4.    On February 2, 2024, Steele West Texas Capital Corporation ("SWTCC") filed a voluntary Chapter 7 petition in bankruptcy before Judge Joshua Searcy in Chapter 7 Case No. 24-60053 styled, "In Re Steele West Texas Capital Corporation in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division". The SWTCC Shareholder Lawsuits (RT Franklin Lawsuit, Franklin Lawsuit and Warren Lawsuits) were promptly removed to the federal bankruptcy court.

**S.    Most Recent Litigation is a Request for Statutory and Contractual Advancement and Indemnity of Attorneys' Fees and Expenses to Which Brandon Steele is Entitled as the Former CEO of ASB**

56.    Just recently on February 24, 2026, and only three (3) days prior to the execution of the Notice of Foreclosure Sale on February 27, 2026 (see Exhibit D),  Brandon Steele, as the former Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022 filed an Original Petition seeking contractual and statutory indemnity, among other relief,  for recovery of attorneys' fees and expenses incurred as a result of various litigation arising from his tenure as the former Chairman of the Board of Directors and a Director to which is entitled.  A true and correct copy of Plaintiff's Original Petition filed in Cause No. DC-26-03452 styled Brandon T. Steele v. American State Bank in the 298th Judicial District Court of Dallas County Texas is attached hereto as **Exhibit Y** and incorporated herein by reference.  Steele has calculated that he is entitled to in excess of $655,953.57 based upon the legal work performed by 5 different law firms on his behalf in the foregoing litigation. In fact, on Monday March 30, 2026 of last week, Steele's counsel had contacted opposing counsel, Mr. Karl Dial of Greenberg Traurig concerning the filing of an Emergency Motion to recover those fees in the Dallas County Lawsuit.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                                 **Page 24**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-44A1-8FF8-4F4912541B9B

Steele's counsel was in the process of forwarding the Emergency Motion to Mr. Dial for review and conference when the case was unexpectantly Removed to the United States District Court for the Northern District of Texas last week on Thursday April 2, 2026 and then immediately administratively transferred on the same day to the United States District Court for the Eastern District of Texas.

57. Foreclosure is a harsh remedy. Consequently, Texas law requires strict compliance with notice requirements. *See Univ. Sav. Ass'n v. Springwood Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (holding "Texas Courts have consistently held that the terms set out in a deed of trust must be strictly followed"); *see also Houston First Am. Sav v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983) (holding "[c]ompliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale"). A foreclosure sale conducted without strict compliance with the notice provisions of the deed of trust and Texas law is void. *See Musick*, 650 S.W.2d at 769 (because strict compliance is necessary, the foreclosure sale was invalid because the trustee failed to give the debtor the requisite notice pursuant to the statute and the express terms of the deed of trust). Defendants are seeking to foreclose on Lubbock Square, a unique piece of real property, without strict compliance with the Loan Agreement, the Deed of Trust, and Texas law.

58. Plaintiffs seek a temporary restraining order and temporary injunctive relief to stop Defendants' foreclosure and to require Defendants to comply with Texas law.

## V. CAUSES OF ACTION
## WRONGFUL FORECLOSURE

59. Plaintiffs re-allege and incorporate the facts and allegations set forth above.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**         **Page 25**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-B4D5-B4F3-0E2F40CE...

60.     The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) an inadequate proposed selling price; and (3) a causal connection between the defect and the inadequate selling price. *See Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied). "For a party to recover damages for wrongful foreclosure and breach of the deed of trust, he must show that he has suffered a loss or material injury as the result of an irregularity in the foreclosure sale. In general, this is shown where the actions of the lender or note holder have caused the property to be sold for a grossly inadequate price." *Wells Fargo Bank v. Robinson*, 391 S.W.3d 590, 594 (Tex. App.—Dallas 2012, no pet.).

61.     Plaintiffs argue that Defendants intend to wrongfully foreclose on this Property and have made threats against Plaintiffs that have discouraged investors from joining the effort to save the property.

62.     Plaintiffs assert that the proposed sale process is defective and believe that it is unreasonable to not allow Plaintiff to cure the problems that have caused the proposed foreclosure.

63.     If the Property is not returned to Plaintiffs, the Plaintiffs will lose the right to sell or mortgage the Property at some future date and will not obtain the full benefit of the appreciated value of the Property.  Plaintiffs will likely prevail in its cause for consequential and special damages.

## BREACH OF CONTRACT

64.     Plaintiffs reallege and incorporate the facts and allegations set forth above.

65.     Plaintiffs and ASB, by virtue of **its Assignment of Security Interest**, entered

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                                        **Page 26**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-45DF-40FF-5E8F4ACB

into a valid contract. Plaintiffs have complied, or been prevented from complying, with the **loan documents**. ASB has breached the contract and seeks to foreclose on the property without (1) allowing Plaintiffs the opportunity to cure, and (2) strictly complying with the notice provisions required by the Deed of Trust and Texas Property Code.

66. Plaintiffs seek damages for Defendants' breach of contract.

67. In accordance with Tex. Civ. Prac. & Rem. Code §38.001 *et seq.*, Plaintiffs seek recovery of its reasonable and necessary attorneys' fees incurred in prosecuting this lawsuit, as well as all post-judgment proceedings and appellate proceedings.

68. Furthermore, all conditions precedent necessary for Plaintiffs to recover in this action have occurred, have been performed, or have been waived.

## DECLARATORY JUDGMENT

69. Plaintiffs reallege and incorporate the facts and allegations set forth above.

70. A justiciable controversy has arisen between Plaintiffs and ASB. Plaintiffs respectfully request that the Court declare the rights and obligations of the parties to the Promissory Note and Deed of Trust. Specifically, Plaintiffs request that the Court judicially declare that: (1) the Property is Plaintiffs' homestead, (2) the pending foreclosure sale of the Property is wrongful because (a) ASB failed to provide Plaintiff with an opportunity to cure as allowed by the Promissory Note and Deed of Trust; and, (b) Defendants have not provided notice as required by the Deed of Trust and the Texas Property Code as a prerequisite to a non-judicial foreclosure; and, (3) the pending foreclosure sale of the Property is wrongful because Defendants have failed to provide Plaintiffs, as a debtor who, according to the records of ASB, is acknowledged in the Notice of Foreclosure Sale, with proper notice at either as required by Texas Property Code §§ 51.0001(2)(a) and 51.002(b)(3).

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION** **Page 27**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

71. In accordance with Tex. Civ. Prac. & Rem. Code §37.001 *et seq.*, Plaintiffs seek recovery of its reasonable and necessary attorneys' fees incurred in prosecuting this lawsuit, as well as all post-judgment proceedings and appellate proceedings.

72. Furthermore, all conditions precedent necessary for Plaintiffs to recover in this action have occurred, have been performed, or have been waived.

## CONVERSION

73. Plaintiffs reallege and incorporate the facts and allegations set forth above.

74. Plaintiffs contend that Defendants have wrongfully converted to their own use the contents of the Property wrongfully foreclosed. Plaintiffs also sue for damages caused by the conversion.

## BREACH OF DUTY OF COOPERATION

75. Plaintiffs reallege and incorporate the facts and allegations set forth above.

76. Texas law recognizes a duty to cooperate that "is implied in every contract in which cooperation is necessary for performance of the contract." This duty "requires that a party to a contract may not hinder, prevent, or interfere with another party's ability to perform its duties under the contract." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.—Dallas 2005, pet. denied).

77. Defendants' conduct has prevented Plaintiffs from further performing under the Promissory Note and Deed of Trust. Further, Defendants have initiated non-judicial foreclosure proceedings in violation of the terms of the Promissory Note and Deed of Trust and without strict compliance with the notice required by the Texas Property Code and thereby prevented Plaintiffs from curing any alleged default. Defendants have therefore breached the implied duty of cooperation. Plaintiffs have suffered damages as a result.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION** **Page 28**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

78.      Plaintiffs re-allege and incorporate the facts and allegations set forth above.

79.      "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Tex. Bus. & Com. Code Ann. § 1.203 (Tex. U.C.C.) (Vernon 1987). See also *La Sara Grain v. First Nat'l Bank*, 673 S.W.2d 558, 563 (Tex. 1984). Promissory notes are governed by the Texas Uniform Commercial Code. *Southview Corp. v. Kelberg First Nat'l Bank*, 512 S.W.2d 817 (Tex. Civ. App.—Corpus Christi 1974, no writ); *Carter v. South Texas Lumber Co.*, 422 S.W.2d 951 (Tex. Civ. App.—Eastland 1967, no writ); see also *Williams v. Stansbury*, 649 S.W.2d 293 (Tex. 1983). Thus, every promissory note has an implied covenant of good faith and fair dealing by virtue of § 1.203 of the Texas U.C.C. The obligation of good faith pursuant to the Texas U.C.C., requires not only that good faith be evidenced but that a standard of commercial reasonableness be observed. Such obligation permeates all of the dealings between lender and borrower because the promissory note in issue is the primary agreement between the parties. The other documents merely elaborate on the obligation of the promissory note. *State Nat'l Bank v. Farah Mfg. Co., Inc.*, 678 S.W.2d 661 (Tex. App.—El Paso 1984, writ dism'd by agr.) also imposed the duty of dealing in good faith required by the Texas Uniform Commercial Code notwithstanding an earlier decision by the Texas Supreme Court that not every contract contains an implied covenant of good faith and fair dealing. In fact, the Deed of Trust provides that it is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.

80.      Defendants' conduct has prevented Plaintiffs from further performing under the Promissory Note and Deed of Trust. Further, Defendants have initiated non-judicial foreclosure proceedings in violation of the terms of the Promissory Note and Deed of Trust

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                              **Page 29**
**FOR INJUNCTIVE RELIEF**
**1149992**

**EXHIBIT "A" - PAGE 29 of 153**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

and without strict compliance with the notice required by the Texas Property Code and thereby prevented Plaintiffs from curing any alleged default. Defendants have therefore breached the implied duty of cooperation. Plaintiffs have suffered damages as a result.

## PRE-JUDGMENT INTEREST

81.  As a direct and proximate result of the conduct of Defendants, as described hereinabove, Plaintiffs have been damaged and are entitled to recover pre-judgment interest in addition to the other damages and costs to be awarded by this Court. Plaintiffs seek pre-judgment interest at the maximum lawful rate.

## POST-JUDGMENT INTEREST

82.  Plaintiffs are additionally entitled to interest on any judgment received in this action at the highest lawful rate from the date of judgment until paid.

## ATTORNEY'S FEES

83.  Due to the actions and conduct of Defendants, as described hereinabove, Plaintiffs have been compelled to retain the undersigned attorney to represent them and to protect their interests in this action. Consequently, Plaintiffs are entitled to recover reasonable and necessary attorney's fees pursuant to Chapter 38 Texas Civil Practice & Remedies Code.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

84.  Plaintiffs re-allege and incorporate the facts and allegations set forth above.

85.  Plaintiffs have no adequate remedy at law to prevent Defendants from foreclosing on their homestead, a unique piece of real property.

86.  Defendants have failed to strictly comply with the Deed of Trust and the Texas Property Code for noticing and posting the Property for foreclosure sale. Defendants

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION** **Page 30**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-Plaintiffs-Original-State Court Petition Page 31 of 153

failed to provide Plaintiffs, as debtors who, according to the records of ASB, with proper notice *as required by Texas Property Code §§ 51.0001(2)(a) and 51.002(b)(3)*

87.     Plaintiffs have no adequate remedy at law to prevent Defendants from: (i) foreclosing on the Property; (ii) commencing the foreclosure s sale on April 7, 2026 between the hours of 10:00 am and 1:00 p.m; (iii) from posting the Property for a non-judicial foreclosure sale in violation of the notice provisions of Texas Property Code §51.002.

88.     Unless Defendants are enjoined, Plaintiffs will suffer probable harm which is imminent and irreparable. More specifically, if not enjoined, Defendants may sell the Property at any time during the pendency of this matter thus depriving Plaintiffs of ownership of the Property, which constitutes a unique piece of real estate, and potentially causing Plaintiffs to be dispossessed of the Property. Plaintiffs have no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiffs may avail themselves will not give it as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

89.     Plaintiffs will suffer immediate and irreparable harm if the Court does not enter a temporary restraining order with or without notice and a temporary injunction restraining Defendants as requested herein. Such harm will result from the loss of the Property. The Property is unique and cannot be replaced by any other real property. Specifically, Plaintiffs are currently suffering irreparable harm for which no legal remedy can fix because Defendants have not properly noticed the foreclosure sale. Plaintiffs' injury – the wrongful foreclosure of a unique piece of real property – is irreparable. "Irreparable injury" occurs when the injury is of such a nature that the injured party cannot be adequately compensated for it in damages, or the damages cannot be measured by any certain pecuniary standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 911 (Civ. App.--Dallas 1976, ref.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**                    **Page 31**
**FOR INJUNCTIVE RELIEF**
1149992

Copy from re:SearchTX

n.r.e.) (showing of irreparable injury required); *County of Harris v. Southern Pacific Trans. Co.*, 457 S.W.2d 336, 339 (Civ. App.--Houston [1st Dist.] 1970, no writ). Unless enjoined, Plaintiffs will lose the Property.

90. Following entry of a temporary restraining order, a temporary injunction should be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants and their officers, agents, servants, employees, and attorneys, or those persons in active concert or participation with them who receive actual notice of the order, from: (i) foreclosing on the Property; (ii) commencing the foreclosure sale on April 7, 2026 between the hours of 10:00 am and 1:00 p.m; or any other subsequent first Tuesday of the month; (iii) from posting the Property for a non-judicial foreclosure sale in violation of the notice provisions of Texas Property Code §51.002.

91. A permanent injunction should be issued, on final trial of this cause, enjoining Defendants and their officers, agents, servants, employees, and attorneys, or those persons in active concert or participation with them who receive actual notice of the order, from: (i) foreclosing on the Property; (ii) commencing the Substitute Trustee's sale on November 5, 2024 between the hours of 10:00 am and 1:00 p.m.or any other subsequent first Tuesday of the month; (iii) from posting the Property for a non-judicial foreclosure sale in violation of the notice provisions of Texas Property Code §51.002.

92. Plaintiffs have no adequate legal remedy now available to avoid the effect of the foreclosure sale of the Property and will suffer severe irreparable harm if the sale scheduled for Tuesday, November 5, 2024 is not enjoined.

93. Plaintiff is willing to post a bond to support the TRO and temporary injunction it seeks.

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION**       **Page 32**
**FOR INJUNCTIVE RELIEF**
**1149992**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Brandon Trace Steele and Andrea Irene Steele, Trustees of the Arroyo Picosa Revocable Trust respectfully request that citation issue and process be served on American State Bank; that, Plaintiffs be granted a Temporary Restraining Order, that Plaintiffs be granted a Temporary Injunction and that, upon final hearing, Plaintiffs have and recover a Permanent Injunction against the Defendants; judgment from and against the Defendants for Plaintiffs' actual damages in the amounts set forth above, for reasonable attorney's fees incurred by Plaintiffs in prosecuting this action, for costs and expenses of suit herein, for pre-judgment and post-judgment interest on all monetary relief sought herein at the highest rates allowed by law; and, for such other and further relief, both at law or in equity, to which Plaintiffs may be justly entitled.

Dated: April 6, 2026

Respectfully submitted,

**FRIEDMAN & FEIGER, L.L.P.**

By:    /s/ Lawrence J. Friedman
  **LAWRENCE J. FRIEDMAN**
  State Bar No. 07469300
  lfriedman@fflawoffice.com
  **RICHARD W. WINN**
  State Bar No. 21779700
  rwinn@fflawoffice.com
  17304 Preston Road, Suite 300
  Dallas, Texas 75252
  (972) 788-1400 (Telephone)
  (972) 788-2667 (Telecopier)

  **ATTORNEYS FOR PLAINTIFF**
  **BRANDON TRACE STEELE AND**
  **ANDREA IRENE STEELE, TRUSTEES**
  **OF THE ARROYO PICOSA**
  **REVOCABLE TRUST**

Copy from re:SearchTX

Docusign Envelope ID: 69811564-F01F-...

+—+
## VERIFICATION

STATE OF TEXAS     §

                      §

COUNTY OF DALLAS   §

BEFORE ME, the undersigned authority, on this day personally appeared Brandon T. Steele, who, being by me first duly sworn, upon his oath deposes and says that Steele is a Trustee of the Arroyo Picosa Revocable Trust, and one of the Plaintiffs herein and that he has read Paragraphs 11 through 58 of Plaintiffs' Original Petition and Application for Injunctive Relief and that every statement contained therein is within his personal knowledge and is true and correct.

DocuSigned by:

*Brandon Steele*
7F14A3172357418

Brandon T. Steele

SUBSCRIBED AND SWORN TO BEFORE ME on April 6, 2026, to certify which witness my hand and official seal of office.


JEFFREY THOMAS O'DELL
My Notary ID # 11296457
Expires December 20, 2026

Signed by:

*Jeffrey Thomas O'Dell*
1815FF3EA87F4C1

Notary Public in and for the State of Texas

My Commission Expires: 12/20/2026

PLAINTIFF'S ORIGINAL PETITION AND APPLICATION           Page 34
FOR INJUNCTIVE RELIEF
1149992

Copy from re:SearchTX

### EXHIBIT "A"

All that certain lot, tract or parcel of land, part of the Christian Kasten Survey, Abstract No. 540, Smith County, Texas, being all of that certain called 80 acres less and except 10.70 acre First Tract, 29.1 acre Second Tract and part of that certain called 80 acre Third Tract described in a deed from Cecil E. Wiegman and wife, Dorothea P. Wiegman to Walter Connally Powell on August 24, 1981 and recorded in Volume 1896, Page 559 of the Land Records of Smith County, Texas, being more completely described as follows, to wit:

BEGINNING at a crosstie fence corner at the Northeast corner of the above mentioned 80 acre Third Tract, the Northeast corner of said Kasten Survey, an inner corner of that certain called 125.00 acre tract described in a deed from Donald R. Rightsell and wife, Dorthy Rightsell to Clyde A. Weaver and wife Janet S. Weaver and recorded in Volume 2217, Page 297, an inner corner of the W. S. Bickerstaff Survey, Abstract No. 131;

THENCE South 00 deg. 46 min. 28 sec. West with the southerly West line of said 125.00 acre tract and Bickerstaff Survey, the West line of the Nimrod Ragsdale Survey, Abstract No. 804, the East line of said 80 acre tract, the East line of the above mentioned 80 acres less and except 10.70 acre First Tract and the East line of the above mentioned 29.1 acre Second Tract, a distance of 2454.38 ft. to a tie rod end (found) at the Southeast corner of same, the Northeast corner of that certain called 59.675 acre tract described in a deed from the Veterans Land Board of the State of Texas to Martin Lenderman and recorded in Volume 1066, Page 84;

THENCE South 89 deg. 47 min. 16 sec. West with the South line of said 29.1 acre tract, the North line of said 59.675 acre tract, a distance of 2175.00 ft. to a 1/2" iron rod (set) for the Northwest corner of same, the Southwest corner of said 29.1 acre tract, in the East line of that certain called 10.590 acre tract described in a deed from Charles A. Bell to Wayne Parker and Dianne Parker and recorded in S.C.C. File No. R0004787 (2006), in the West edge of County Road No. 2180 (Yarbrough Lane);

THENCE North 00 deg. 12 min. 44 sec. West with the West line of said 29.1 acre tract, the East line of said 10.590 acre tract, a distance of 658.00 ft. to a 1/2" iron rod (set) for the Northeast corner of same, the Northwest corner of said 29.1 acre tract, in the South line of said 80 acres less and except 10.70 acres, near the North right-of-way of a bend in County Road No. 2180;

THENCE North 89 deg. 35 min. 13 sec. West with the North right-of-way of County Road No. 2180, the North line of said 10.590 acre tract, the South line of said 80 acres less and except 10.70 acres, a distance of 409.05 ft. to a cross tie corner post at the Southeast corner of said 10.70 acre tract, said tract also being described in deed from Cecil E. Wiegman and wife, Dorothea Wiegman to Jerry Boyd Boulware and wife, Dorthey Ann Boulware and recorded in Volume 2065, Page 8, from which the Southwest corner of same bears North 89 deg. 35 min. West 1031.12 ft. and witnessed by a 48" hacked red oak bearing South 77 deg. West 19.4 ft.;

THENCE North 00 deg. 20 min. 56 sec. East with the East line of said 10.70 acre tract, a distance of 457.32 ft. to a 1/2" iron rod (set) for the Northeast corner of same;

THENCE North 89 deg. 24 min. 34 sec. West with the easterly North line of said 10.70 acre tract, a distance of 813.41 ft. to a 30" sweet gum at the easterly Northwest corner of same

EXHIBIT

A

1 of 2

Copy from re:SearchTX

THENCE South 02 deg. 38 min. 49 sec. East with the northerly West line of said 10.70 acre tract, a distance of 54.19 ft. to a 1/2" iron rod (found) for an inner corner of same;

THENCE North 89 deg. 28 min. 39 sec. West with the westerly North line of said 10.70 acre tract, a distance of 208.82 ft. to the westerly Northwest corner of same, in the West line of said 80 acre First Tract, the West line of said Kasten Survey, the East line of the Mark Grigsby Survey, Abstract No. 395, the East line of that certain called 91.06 acre tract described in deed from Claudia Mae Barnes Adams to Thomas G. West and recorded in Volume 3273, Page 875, a 40" red oak (found) for witness bears South 89 deg. 28 min. 39 sec. East - 19.92 ft.;

THENCE North 02 deg. 23 min. 19 sec. East with said survey line, the West line of said 80 acre First Tract, the East line of said 91.06 acre tract and the East line of that certain called 228.313 acre tract described in a deed from Sylvia Anna Schronk to Dannat Rental, Inc. and recorded in Volume 7695, Page 106, a distance of 489.95 ft. to a 1/2" iron rod (set) for the Northwest corner of said 80 acre First Tract, the Southwest corner of said 80 acre Third Tract, the easterly Southwest corner of that certain called 22.302 acre Parcel 2 Tract 1 described in S.C.C. File No. R00017213 (2006);

THENCE South 88 deg. 29 min. 49 sec. East with the North line of said 80 acre First Tract, the South line of said 80 acre Third Tract and the easterly South line of said 22.302 acres, a distance of 48.60 ft. to the Southeast corner of same, in the centerline of County Road No. 2180;

THENCE Northerly with the centerline of County Road No. 2180 and the East line of the 22.302 acre tract as follows:

North 07 deg. 22 min. 49 sec. East - 207.44 ft.,
North 04 deg. 31 min. 51 sec. East - 232.35 ft.,
North 03 deg. 09 min. 44 sec. East - 65.82 ft.,
North 04 deg. 09 min. 35 sec. East - 69.13 ft.,
North 00 deg. 07 min. 27 sec. West - 85.03 ft.,
North 06 deg. 07 min. 31 sec. West - 102.72 ft. and
North 11 deg. 44 min. 07 sec. West - 141.85 ft to the Northeast corner of same, in the North lines of said 80 acre Third Tract and the Kasten Survey, in the South line of the Daniel Barcroft Survey, Abstract No. 132;

THENCE South 88 deg. 30 min. 05 sec. East with the North line of said 80 acre Third Tract and Kasten Survey, the South line of the Daniel Barcroft Survey, Abstract No. 132, at 17.67 ft. pass a 1/2" iron rod (found) for reference, and continue a total distance of 231.35 ft. to a 1/2" iron rod (found) for the Southeast corner of the Thomas C. Parker 2.0 acre tract described in Volume 3261, Page 871;

THENCE North 89 deg. 48 min. 00 sec. East with the North line of said 80 acre Third Tract and Kasten Survey, the South line of the Daniel Barcroft Survey, a distance of 3078.90 ft. to a 1/2" iron rod (found) for the Southeast corner of same and the westerly Southwest corner of said Bickerstaff Survey and 125.00 acre tract;

Thence South 89 deg. 14 min. 43 sec. East with the Westerly South lines of the 125.00 acre tract and Bickerstaff Survey, the North lines of the Kasten Survey and 80 acre Third Tract a distance of 243.75 ft. to the place of beginning, containing 169.798 acres of land, more or less

2 OF 2

**EXHIBIT "A" - PAGE 36 of 153**

Copy from re:SearchTX

# PROMISSORY NOTE

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

Loan # 404223470

| May 27, 2022 | Tyler | TX |
|---|---|---|
| [Date] | [City] | [State] |

10693 CR 2180, Whitehouse, TX 75791
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that **Arroyo Picosa Revocable Trust** ("Borrower") has received, Borrower promises to pay U.S. **$4,000,000.00**, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **American State Bank** . Borrower will make all payments under this Note in the form of cash, check, money order or electronic funds transfer. Borrower understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST RATE AND PAYMENTS

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. Borrower will pay interest at a yearly rate of **5.250%**. If Borrower is in default as described later in this Note, interest will accrue at the "Maximum Rate". "Maximum Rate" means at the particular time in question the lesser of eighteen percent (18.000 %) per annum or the maximum rate of interest which, under applicable law, state and federal, may then be charged on this Note.

**(B) Payments**

**(1) Place of Payments**

Borrower will make its **monthly** payments at **5555 Old Jacksonville Highway, Tyler, TX 75703** or at a different place if required by the Note Holder.

**(2) Amount and Time of Payments**

Borrower will make payments as follows:

**Principal and interest are payable in monthly installments of $23,981.52 (based on a 300 month amortization) each month beginning June 27, 2022 and continuing regularly in like installments on the same day of the month in each period. If on November 27, 2027 Borrower still owes amounts under this Note, Borrower will pay those amounts on that date, which is called the "Maturity Date" when all unpaid principal and interest is due and payable. Each installment will be applied first to payment of accrued interest on the unpaid principal, and the remainder will be applied to reduction of unpaid principal.**

**(C) Accrual Method**

**(1) Actual / 365 Method**

All payments of interest shall be computed on the per annum basis of a year of 365 days (or 366, as the case may be) and for the actual number of days elapsed.

Note

1

©PeirsonPatterson, LLP. 2022
221026470532 [Doc Id 7614 M05242010]



**EXHIBIT "A" - PAGE 37 of 153**



EXHIBIT

_B_

Copy from re:SearchTX

**(2) True Daily Earnings Method**

Interest will be computed according to the true daily earnings method. The true daily earnings method is a method to compute an interest charge by applying a daily rate to the unpaid balance of the amount financed. The earned finance charge is computed by multiplying the daily rate by the number of days the actual principal balance is outstanding. The daily rate is the equivalent contract rate for a year with the number of days indicated in (C)(1) above.

## 3.    PREPAYMENT

Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When Borrower makes a Prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the **monthly** payments due under the Note. Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use Borrower's Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Note Holder may apply Borrower's Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying Borrower's Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due dates of Borrower's **monthly** payment unless the Note Holder agrees in writing to those changes.

## 4.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Note Holder may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 5.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Default

If Borrower does not pay the full amount of each **monthly** payment on the date it is due, Borrower will be in default.

### (B) Notice of Default

If Borrower is in default, the Note Holder may send Borrower a written notice telling Borrower that if Borrower does not pay the overdue amount by a certain date, the Note Holder may require Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount. That date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

### (C) No Waiver By Note Holder

Even if, at a time when Borrower is in default, the Note Holder does not require Borrower to pay immediately in full as described above, the Note Holder will still have the right to do so if Borrower is in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required Borrower to pay immediately in full as described above, the Note Holder will have the right to be paid back by Borrower for all reasonable costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### (E) Not Sufficient Funds Fees

If not prohibited by applicable law, Borrower agrees to pay an amount charged by Lender not to exceed $30.00 (or the maximum amount allowed by applicable law if applicable law limits said fee to an amount less than $30.00)

---

Note



2

©PeirsonPatterson, LLP. 2022
221026470532 [Doc Id 7614 M05242010]

**EXHIBIT "A" - PAGE 38 of 153**

Copy from re:SearchTX

for each check, draft, order or other instrument or form of remittance made in payment on this note that is returned to Lender unpaid or dishonored for any reason.

### (F) Late Charges for Overdue Payments

Notwithstanding anything to the contrary set forth in this Note, Security Instrument or the other loan documents, to the extent not prohibited by Texas and applicable federal law, Borrower hereby agrees to the following:

Late Fee. In the event any payment amount, or any part thereof, remains unpaid for more than **Fifteen (15)** days past the due date thereof as provided in this Note, Borrower shall pay to Note Holder, in addition to any other amounts to which Note Holder may be entitled hereunder, a reasonable late payment fee equal to **Five (5.000%)** of the **overdue payment of principal and interest.** This amount is stipulated by Borrower to be reasonable in order to compensate Note Holder for its additional costs incurred as a result of having to attend to such delinquency. This late charge should be paid only once, but promptly, as to each respective late payment. It is further agreed that the imposition of any such late payment fee shall in no way prejudice or limit Note Holder's rights or remedies against Borrower under this Note, Mortgage/Deed of Trust or the other loan documents or any other instrument.

## 6.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower gives the Note Holder a notice of Borrower's different address. Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 2(B) above or at a different address if Borrower is given a notice of that different address.

## 7.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 8.   WAIVERS

Borrower waives Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 9.   SECURITY

This Note is secured by **10693 CR 2180, Whitehouse, TX 75791.** As further security for this Note, Borrower grants to the Note Holder a lien and contractual right of offset in and to all borrower's money and property now or at any time hereafter coming within the custody or control of the Note Holder, including, without limitation, all certificates of deposit and other accounts, whether such certificates or accounts have matured or not and whether exercise of such right of offset results in loss of interest or other penalty under the terms of the certificate or account agreement.

This Note is further secured by a Deed of Trust of even date herewith, to **Kelly M Sanders,** Trustee, covering the real property described to wit:

**All that certain lot, tract or parcel of land, part of the Christian Kasten Survey, Abstract No. 540, Smith County, Texas, being all of that certain called 80 acres less and except 10.70 acre First Tract, 29.1 acre Second Tract and part of that certain called 80 acre Third Tract described in a deed from Cecil E. Wiegman and wife, Dorothea P. Wiegman to Walter Connally Powell on August 24, 1981 and recorded in Volume 1896, Page 559 of the Land Records of Smith County, Texas, being more particularly described by metes and bounds in EXHIBIT "A" attached hereto and made a part hereof for all purposes.**

Note



3

©PeirsonPatterson, LLP. 2022
221026470532 [Doc Id 7614 M05242010]

**EXHIBIT "A" - PAGE 39 of 153**

Copy from re:SearchTX

**10. APPLICABLE LAW**

This Note shall be governed by the law of **Texas** and any applicable federal law. All legal proceedings brought to enforce or interpret this Note shall be in the appropriate court located in **Smith** County, **Texas**. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if Borrower does not keep the promises which Borrower makes in this Note. That Security Instrument describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts Borrower owed under this Note.

**12. DUE ON TRANSFER**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**13. NO ORAL AGREEMENTS**

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Arroyo Picosa Revocable Trust

_____
Signature
Brandon Trace Steele, individually and as Trustee of the Arroyo Picosa
Revocable Trust under trust instrument dated March 29, 2022



_____
Signature
Andrea Irene Steele, individually and as Trustee of the Arroyo Picosa
Revocable Trust under trust instrument dated March 29, 2022                    *[Sign Originals Only]*

MLO Org.: American State Bank (ID: 406376) | MLO Indv: Kelly Marsden Sanders (ID: 504417 )

_____
Note

4                                                    ©PeirsonPatterson, LLP. 2022
                                                     221026470532 [Doc Id 7614 M05242010]

Copy from re:SearchTX

# REGULATION "O" ALLONGE
# TO NOTE

## (For Loans by Member Banks to Their Executive Officers)

**Loan # 404223470**

This Allonge is made this **Twenty-seventh** day of **May, 2022**, and shall, to the extent of the text in this Allonge, amend and supplement that certain Note ("Note") dated the same date in the principal amount of **$4,000,000.00**, payable to **American State Bank** ("Lender").

The sole purpose of this Allonge is to amend and supplement the Note by inserting the following text in the Note:

> **Subject to any federal or state law prohibiting otherwise, this Note will, at the option of Lender, become due and payable at any time that the Executive Officer becomes indebted to any other bank or banks in an aggregate amount greater than the amount specified for a category of credit in 12 C.F.R. 215.5(c).**

Therefore, the above change is hereby incorporated into the Note.

To the extent the terms and covenants of the Note and of this Allonge conflict, this Allonge shall govern.

BY SIGNING BELOW, Borrower accepts and agrees to the changes in the terms and covenants of the Note.

**Arroyo Picosa Revocable Trust**

_____
Signature
Brandon Trace Steele, Individually and as Trustee of the Arroyo Picosa
Revocable Trust under trust instrument dated March 29, 2022



Signature
Andrea Irene Steele, Individually and as Trustee of the Arroyo Picosa
Revocable Trust under trust instrument dated March 29, 2022

*[Sign Originals Only]*

MLO Org.: American State Bank (ID: 406376) | MLO Indv: Kelly Marsden Sanders (ID: 504417 )

---

Regulation "O" Allonge to Note

1

14985MU 10/03
©2016, The Compliance Source, Inc.
221026480532 [Doc Id 7370 M04072017]

**EXHIBIT "A" - PAGE 41 of 153**

Copy from re:SearchTX

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# DEED OF TRUST
### (SECURITY AGREEMENT,
### FINANCING STATEMENT)

Loan # 404223470

After recording, please return to:
**American State Bank**
**1601 S Chestnut**
**Lufkin, TX 75901**
**Attn: Loan Administration**

| | |
|---|---|
| **THE STATE OF TEXAS** } | |
| | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF Smith** } | |

THE UNDERSIGNED, **Brandon Trace Steele and Andrea Irene Steele, Trustees of Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022**, whose mailing address is as set forth opposite the signature of each, being the debtor(s) and hereinafter called "Grantors", (whether one or more), in consideration of TEN AND NO/100 DOLLARS ($10.00), in hand paid, and the debt and trust hereinafter mentioned, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto **Kelly M Sanders**   Trustee(s), whose mailing address is **5555 Old Jacksonville Highway, Tyler, TX 75703**, hereinafter called the "Trustee" (whether one or more), and to his successors in trust, the following described land and other property situated in the County of Smith, State of Texas, to-wit:

All that certain lot, tract or parcel of land, part of the Christian Kasten Survey, Abstract No. 540, Smith County, Texas, being all of that certain called 80 acres less and except 10.70 acre First Tract, 29.1 acre Second Tract and part of that certain called 80 acre Third Tract described in a deed from Cecil E. Wiegman and wife, Dorothea P. Wiegman to Walter Connally Powell on August 24, 1981 and recorded in Volume 1896, Page 559 of the Land Records of Smith County, Texas, being more particularly described by metes and bounds in EXHIBIT "A" attached hereto and made a part hereof for all purposes.

---

Deed of Trust (Security Agreement, Financing Statement)



1

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 42 of 153**



EXHIBIT

*C*

Copy from re:SearchTX

which has an address of:

**10693 CR 2180**
**Whitehouse, TX 75791**
("Property Address"):

together with all heating, plumbing, refrigeration, lighting fixtures, equipment, appliances and/or other personal property used in connection therewith whether or not now or hereafter attached thereto so as to become fixtures, and all accessions and additions thereto, and all buildings and improvements thereon and hereafter placed thereon (however should the Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, the personal property secured by this Deed of Trust/Security Agreement/Financing Statement shall be limited to those items specifically covered (currently or hereafter) by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended)): appurtenances, servitudes, rights, ways, privileges, prescriptions and advantages thereunto belonging or appertaining, hereinafter called the "Mortgaged Premises". To the extent permitted by law, this Deed of Trust shall be construed to be a security agreement and financing statement.

TO HAVE AND TO HOLD the Mortgaged Premises unto the Trustee forever, Grantors hereby bind themselves to warrant and forever defend the title to the Mortgaged Premises unto the Trustee against all persons whomsoever claiming or to claim the same or any part thereof.

     1.    THIS CONVEYANCE, however, is made in trust to secure and enforce the payment of the following described indebtedness, obligations and liabilities:

    (a)    A promissory note (the "Note") of even date herewith in the principal sum of **Four Million and 00/100 Dollars ($4,000,000.00)** executed by Grantors and payable to the order of **American State Bank** , who is the Beneficiary under this Deed of Trust, and whose mailing address is **5555 Old Jacksonville Highway, Tyler, TX 75703** (hereinafter called "Beneficiary"), bearing interest as therein provided. Grantors covenant and agree that Grantors will pay the principal of and interest on the Note in accordance with the terms thereof, and will pay the debt in full not later than **November 27, 2027,**;

    (b)    All sums advanced or costs or expenses incurred by Beneficiary pursuant to or allowed by the terms of this instrument, plus interest thereon at the maximum rate allowed by applicable law from the date paid until reimbursed; and

    (c)    All renewals and extensions of the above, whether or not Grantors execute any renewal or extension agreement.

    All of the described indebtedness being hereinafter sometimes referred to collectively as the "debt" or "indebtedness".

     2.    **ADDITIONAL SECURITY.** As additional security for the payment of said debt, Grantors hereby transfer and assign unto the Beneficiary:

    (a)    All judgments, awards of damages and settlements hereinafter made resulting from condemnation proceedings or the taking of all or any part of the Mortgaged Premises under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Premises or any part thereof, or to any rights appurtenant thereto. The Beneficiary is hereby authorized, but shall not be required, on behalf and in the name of Grantors, to execute and deliver acquittances for, and to appeal from, any such judgments or awards. The Beneficiary may apply all or any part of such sums so received, after the payment of all expenses, including costs and attorney's fees, on the debt in such manner as the Beneficiary elects;

    (b)    All bonuses, rents and royalties accrued or to accrue under all oil, gas or mineral leases, now

**Deed of Trust (Security Agreement, Financing Statement)**



2

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

Copy from re:SearchTX

existing or which may hereafter come into existence. Grantors direct payment of the same to the Beneficiary, at the option of the Beneficiary and upon written demand of the Beneficiary therefor, to be applied to the debt until paid, and either before or after any default under the terms of this Deed of Trust or Note; and

(c) All of the rents, royalties, issues, profits, revenue, income and other benefits derived from the Mortgaged Premises (whether now existing or hereafter arising) or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto (hereinafter called the "Rents and Profits") are hereby absolutely and unconditionally assigned, transferred, conveyed and set over to Beneficiary to be applied by Beneficiary in payment of the principal and interest and all other sums payable on the Note and any other indebtedness secured hereby. Prior to the occurrence of any default hereunder, Grantor shall collect and receive all Rents and Profits as Trustee for the benefit of Beneficiary and Grantor, and Grantor shall apply the funds so collected first to the payment of the principal and interest and all other sums payable on the Note and in payment of all other indebtedness secured hereby, and thereafter, so long as no default hereunder has occurred, the balance shall be distributed to the account of the Grantor. Grantor will not (i) execute an assignment of any of its right, title or interest in the Rents or Profits, or (ii) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Mortgaged Premises or any part thereof, now or hereafter existing, having an unexpired term of one year or more except that any lease may be canceled, provided that promptly after the cancellation or surrender thereof, a new lease is entered into with a new lessee having a credit standing, in the judgment of Beneficiary, at least equivalent to that of lessee whose lease was canceled, on substantially the same terms as the terminated or canceled lease, or (iii) modify any lease of the Mortgaged Premises or any part thereof so as to shorten the unexpired term thereof or so as to decrease the amount of rent payable thereunder, or (iv) accept prepayments of any installments of rent to become due under any of such leases in excess of one month, except prepayments in the nature of security for the performance of the lessee thereunder. Grantor will not execute any lease of all or any substantial portion of the Mortgaged Premises except for actual occupancy by the lessee thereunder, and will at all times promptly and faithfully perform, or cause to be performed, each covenant, condition and agreement contained in each lease of the Mortgaged Premises now or hereafter existing, on the part of lessor thereunder to be kept and performed. Beneficiary shall have no liability or obligation with respect to any lease of the Mortgaged Premises or any part thereof.

(d) All of Grantors interest in, to, and under any other leases, contracts, licenses and permits, whether written or oral, now or hereafter affecting all or any part of the Property, and any agreement for the use or occupancy of all or any part of said Property which may have been made heretofore or which may be made hereafter, including any and all extensions, renewals, and modifications of the foregoing and guaranties of the performance or obligations thereunder, and all other arrangements of any sort resulting in the payment of money to Grantor or in Grantor becoming entitled to the payment of money for the use of the Property or any part thereof, whether such user or occupier is tenant, invitee, or licensee. Grantor agrees to execute and deliver to Beneficiary such additional instruments, in form and substance satisfactory to Beneficiary, as may hereafter be requested by Beneficiary to evidence and confirm said assignment; provided, however, that acceptance of any such assignment shall not be construed as a consent by Beneficiary to any lease, or to impose upon Beneficiary any obligation with respect thereto; and provided, further, that permission is hereby given to Grantor unless and until Grantor is in default as provided herein, to collect the income, rents, issues and profits relating to the Property as they become due and payable but not in advance, except as provided herein.

3. **SUBROGATION.** Beneficiary shall be subrogated to any and all rights, superior titles, liens, and equities owned or claimed by any owner or holder of any outstanding liens and debts to the extent any such outstanding liens are satisfied from the proceeds of the Note, regardless of whether said liens or debts are acquired

**Deed of Trust (Security Agreement, Financing Statement)**



3

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 44 of 153**

Copy from re:SearchTX

by the Beneficiary by assignment or are released by the holder thereof upon payment.

4. Grantors further covenant and agree:

(a) **TITLE TO THE PROPERTY.** Grantors are seized of the Mortgaged Premises and are entitled to convey the same; that Grantors will make such further assurance of title as may be necessary to fully confirm to the Trustee the title to the Mortgage Premises;

(b) **APPLICATION OF PAYMENTS.** All payments accepted by Beneficiary shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Sections 4(d), 4(e), and 4(f), as applicable. Such payments shall be applied to each periodic payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Deed of Trust, and then to reduce the principal balance of the Note. If Beneficiary receives a payment from Grantor for a delinquent periodic payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one periodic payment is outstanding, Beneficiary may apply any payment received from Grantor to the repayment of the periodic payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more periodic payments, such excess may be applied to any late charges due. Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the periodic payments.

(c) **FIXTURES.** All awnings, door and window screens, storm window screens, storm windows and doors, mantels, cabinets, rugs, carpeting, linoleum, wall and in-a-door beds, stoves, shades, blinds, oil and other fuel-burning systems and equipment, water heaters, radiator covers, and all plumbing, heating, lighting, cooking, ventilating, cooling, air-conditioning and refrigerating apparatus and equipment, and such goods and chattels and personal property as are ever furnished by landlords in letting or operating an unfurnished building, or which are or shall be attached to said building by nails, screws, bolts, pipe connections, masonry or in other manner, and all additions thereto and replacements thereof, and such built-in equipment as shown by plans and specifications, are and shall be deemed to be fixtures and accessions to the Mortgaged Premises, being hereby agreed to be immovables and a part of the realty as between the parties hereto, and shall be deemed to be a part and portion of the Mortgaged Premises;

(d) **CHARGES/LIENS/ASSESSMENTS.** Grantors will pay (prior to delinquency) all taxes and assessments levied or assessed upon the Mortgage Premises and exhibit the receipts therefor to the Beneficiary (unless such payments are made by the Beneficiary, as herein provided), to the end that this Deed of Trust shall be and remain a first lien on the Mortgaged Premises until the debt is paid. Grantors will pay all attorney's fees and expenses which may be incurred by the Beneficiary in enforcing the terms of the Note and this Deed of Trust or in any suit which the Beneficiary may become a party where this Deed of Trust or the Mortgaged Premises is in any manner involved, and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt. The word "assessments" as used in this Deed of Trust shall include not only assessments by political subdivisions, but also maintenance charges, and regular and special assessments assessed by subdivision restrictions, homeowner's declarations for planned unit developments and assessments by condominium agreements, if any. Grantor shall pay promptly all bills for labor and materials incurred in connection with the Mortgaged Premises and never permit to be fixed against the Mortgaged Premises or any part thereof, any lien or security interest, even though inferior to the liens and security interests hereof, for any such bill which may be legally due and payable, and never to permit to be created or exist in respect of the Mortgaged Premises, any lien or security interest on a parity with or superior to the liens and security interests hereof;

(e) **PROPERTY INSURANCE.** Grantors will keep the Mortgaged Premises insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as Beneficiary

---

Deed of Trust (Security Agreement, Financing Statement)



4

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 45 of 153**

Copy from re:SearchTX

may require in such manner, in such amounts, and in such companies as the Beneficiary may approve at Beneficiary's sole discretion, and keep the policies therefor, properly endorsed, on deposit with the Beneficiary with standard mortgagees' clauses. If renewal policies are not delivered to the Beneficiary 15 days before the expiration of the existing policy or policies, with evidence of premiums paid, the Beneficiary may, but is not obligated to, obtain the required insurance and pay the premiums thereon. Grantors assign to Beneficiary all right and interest in all such policies of insurance and authorize the Beneficiary to collect for, adjust or compromise any losses under any insurance policy on the Mortgaged Premises, and loss proceeds (less expense of collection) shall, at the Beneficiary's option, be applied on the debt or to the restoration of the Mortgaged Premises, or be released to Grantors, but such application or release shall not cure or waive any default. Beneficiary is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Beneficiary, but might not cover Grantors, Grantors' equity in the Mortgaged Premises, or the contents of the Mortgaged Premises, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. The cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Grantors could have obtained. Any amounts disbursed by Beneficiary to obtain insurance coverage shall become additional debt of Grantors secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Beneficiary to Grantors requesting payment.

In the event of loss, Grantors shall give prompt notice to the insurance carrier and Beneficiary. Beneficiary may make proof of loss if not made promptly by Grantor. Unless Beneficiary otherwise agrees in writing, any insurance proceeds, whether or not the underlying insurance was required by Beneficiary, shall be applied to restoration or repair of the Mortgaged Premises, if the restoration or repair is economically feasible and Beneficiary's security is not lessened. During such repair and restoration period, Beneficiary shall have the right to hold such insurance proceeds until Beneficiary has had an opportunity to inspect the Mortgaged Premises to ensure the work has been completed to Beneficiary's satisfaction, provided that such inspection shall be undertaken promptly. Beneficiary may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Beneficiary shall not be required to pay Grantors any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Grantors shall not be paid out of the insurance proceeds and shall be the sole obligation of Grantors. If the restoration or repair is not economically feasible or Beneficiary's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Grantors. Such insurance proceeds shall be applied in the order provided for in Section 4(b);

(f) **ESCROW ITEMS.** When requested by the Beneficiary, Grantors will pay with and in addition to the payments of principal and interest payable under the terms of the Note, on the same day as the principal and interest installments are due and payable, a sum equal to one-twelfth of the estimated annual ground rents, taxes, hazard insurance premiums and assessments, if any, next due on the Mortgaged Premises. If the amount so paid is not sufficient to pay such ground rents, taxes, hazard insurance premiums and assessments when due, then Grantors will deposit immediately with the Beneficiary an amount sufficient to pay such ground rents, taxes, hazard insurance premiums, and assessments. If there is a default under any of the provisions of this Deed of Trust resulting in a sale of the Mortgaged Premises or foreclosure, or if the Beneficiary acquires the Mortgaged Premises otherwise after default, the Beneficiary shall apply, at the time of commencement of such proceedings or at the time the property is otherwise acquired, the balance then remaining of the funds accumulated under this provision as a credit against the amount then remaining unpaid under the Note. No interest shall accrue or be allowed on any payments made under the provisions of this paragraph. If the amount so paid is in excess of the amount needed to pay such ground rents, taxes, hazard insurance premiums and assessments in any calendar year, such excess shall be applied to the next maturing installments of principal and interest.

**Deed of Trust (Security Agreement, Financing Statement)**



5

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 46 of 153**

Copy from re:SearchTX

Notwithstanding the foregoing, to the extent the debt evidenced by the Note and this Deed of Trust is considered a "federally-related mortgage loan" as defined by the Real Estate Settlement Procedures Act (12 U.S.C. §2601, et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024) (hereinafter "RESPA"), and is not otherwise exempt from the requirements of RESPA pursuant to 12 C.F.R. 1024.5, any amounts paid, collected, held, refunded, and/or disbursed pursuant to this paragraph shall be so paid, collected, held, refunded, and/or disbursed in accordance with all applicable RESPA requirements for escrow accounts, including, but not limited to, all requirements relating to escrow analysis and escrow account statements.

(g) **PRESERVATION AND MAINTENANCE OF THE PROPERTY.** Grantors will not commit or permit any waste on the Mortgaged Premises and will keep the buildings, fences and all other improvements now or hereafter erected on the Mortgaged Premises in sound condition and in good repair and will neither do nor permit to be done anything to the Mortgaged Premises that may impair the value thereof, and the Beneficiary shall have the right of entry upon the Mortgaged Premises at all reasonable times for the purpose of inspecting the same;

(h) **COMPLIANCE WITH LAWS.** Grantors shall comply with all valid governmental laws, ordinances and regulations applicable to the Mortgaged Premises and its ownership, use and operation, and shall comply with all easements, restrictions agreements, covenants and conditions with respect to or affecting the Mortgage Premises or any part thereof;

(i) **DELIVERY OF ADDITIONAL INSTRUMENTS.** At any time, upon request by Beneficiary, Grantors shall execute and deliver to Beneficiary any additional instruments and further assurances, and do all other acts and things as may be necessary or proper in Beneficiary's opinion to effect the intent of these presents, more fully evidence and perfect the rights, titles, liens and security interests herein created or intended to be created and protect the rights, remedies, powers and privileges of Beneficiary hereunder; and

(j) **OTHER AGREEMENTS.** Grantors shall perform punctually and properly all of Grantors' covenants, duties and liabilities under any other security agreement, mortgage, deed of trust, pledge agreement, loan agreement, or assignment of any kind now or hereafter existing as security for or in connection with payment of the debt (herein called "other security instrument");

5.    **RIGHTS OF BENEFICARY.** If any of the indebtedness hereby secured shall become due and payable, the Trustee or the Beneficiary shall have the right and power to proceed by a suit or suits in equity or at law, whether for the specific performance of any covenant or agreement herein contained, or for the enforcement of any other appropriate legal or equitable remedy. The Grantors agree, to the full extent that they or it lawfully may, that in case one or more of the defaults hereunder shall have occurred and shall not have been remedied, then, and in every such case, the Beneficiary shall have the right and power to enter into and upon and take possession of all or any part of the Mortgaged Premises in the possession of Grantors, their or its successors or assigns, or its or their agents or servants and may exclude the Grantors, its or their successors or assigns and all persons claiming under the Grantors, and its or their agents or servants, wholly or partly therefrom; and holding the same, the Beneficiary may use, administer, manage, operate and control the Mortgaged Premises to the same extent as the Grantors, might at the time do and may exercise all rights and powers of the Grantors, in the name, place and stead of the Grantors, or otherwise as the Beneficiary shall deem best; and in the exercise of any of the foregoing rights and powers Beneficiary shall not be liable to Grantors for any loss or damage thereby sustained unless due solely to the willful misconduct or gross negligence of Beneficiary. In the event the ownership of the Mortgaged Premises, or any part thereof, becomes vested in a person other than Grantors, the Beneficiary may, without notice to Grantors, deal with such successor or successors in interest with reference to this Deed of Trust and to the debt in the same manner as with Grantors without in any way vitiating or discharging Grantors' liability hereunder or upon the debt.

6.    **PARTIAL RELEASE OR FOREBEARANCE BY BENEFICIARY NOT A WAIVER.** The Beneficiary, without notice, may release any part of the Mortgaged Premises, or any person liable for the debt, without in any way affecting the lien hereof upon any part of the Mortgaged Premises not expressly released or the liability of any person not expressly released, and may agree with any party obligated on the debt, or having any

Deed of Trust (Security Agreement, Financing Statement)



6

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

Copy from re:SearchTX

interest in the Mortgaged Premises, to extend the time for payment of any part or all of the debt. Such agreement shall not in any way release or impair the lien hereof, but shall extend the lien hereof as against the title of all parties having any interest in the Mortgaged Premises which interest is subject to this Deed of Trust. The taking of additional security, or the extension or renewal of the indebtedness secured hereby, or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby, or affect the liability of any endorser, guarantor or surety. Acceptance by the Beneficiary of any payment in an amount less than the amount then due on said debt shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be a default. At any time thereafter, and until the entire amount then due on said debt has been paid, the Beneficiary shall be entitled to exercise all rights conferred upon it in this instrument upon the occurrence of a default. Neither the exercise of, nor the failure to exercise, any option given under the terms of this Deed of Trust shall be considered as a waiver of the right to exercise the same, or any other option given herein, and the filing of a suit to foreclose this Deed of Trust, either on any matured portion of the debt or for the whole debt, shall never be considered an election so as to preclude foreclosure under the power of sale after a dismissal of the suit; nor shall the filing of the necessary notices for foreclosure, as provided in this Deed of Trust, preclude the prosecution of a later suit thereon. No sale of the Mortgage Premises and no forbearance on the part of the Beneficiary and no extension of the time for the payment of the debt hereby secured, given by the Beneficiary, shall operate to release, modify, change, or affect the original liability of Grantors, either in whole or in part.

7.   **GOVERNING LAW/WAIVERS BY GRANTORS.** Grantors hereby agree and contract that the laws of the State of Texas now in force relative to the collection of the debt and the application to the payment thereof are expressly adopted and made a part hereof. Notwithstanding the foregoing, Grantors waive the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Mortgaged Premises, commonly known as Appraisement Laws, and (ii) an extension of the time for enforcement or collection of said debt or creating or extending a period of redemption from any sale made in collecting said debt, commonly known as Stay Laws and Redemption Laws. To the extent they may lawfully do so, Grantors likewise agree that Grantors hereby expressly waive any right under any statute or rule of law pertaining to the marshalling of assets, the exemption of homestead, or the administration of estates of decedents to defeat, reduce or affect the right of Beneficiary, under the terms of this Deed of Trust, to sell the Mortgaged Premises for the collection of the indebtedness secured hereby (without any prior or different resort for collection) or the right of Beneficiary, under the terms of this Deed of Trust, to the payment of such indebtedness out of the proceeds of sale of the Mortgaged Premises in preference to every other person and claimant whatever (only reasonable expenses of such sale being first deducted). Grantors expressly waive and relinquish any right or remedy which it or they may have or be able to assert by reason of the provisions of Chapter 43 of the Civil Practices and Remedies Code of the State of Texas, pertaining to the rights and remedies of sureties.

8.   **PROTECTION OF BENEFICIARY'S INTEREST IN THE PROPERTY.** The Beneficiary may, at the Beneficiary's option, without demand or notice and without waiver of any right, pay or discharge any lien or claim upon the Mortgaged Premises or pay any delinquent tax or assessment, and, upon such payment the Beneficiary shall be subrogated respectively to the rights of the holder of such lien or claim or to the rights of the taxing authority; the Beneficiary may advance any unpaid insurance premiums, and whenever Grantors have failed properly to maintain the improvements, the Beneficiary may make repairs necessary for the proper preservation of the security. Grantors agree to pay to the Beneficiary, upon demand, any and all disbursements made under the provisions of the Deed of Trust together with interest thereon at the rate which the principal of the Note shall bear after default from the respective dates of such disbursements, and all such disbursements shall become a part of the debt, payable at the same place specified in the Note, and shall be secured by this Deed of Trust.

9.   **EVENTS OF DEFAULT.** Grantors shall be in default hereunder if Grantors shall default in the prompt payment when due of the indebtedness secured hereby, or any part thereof; or shall fail to keep and perform any of the covenants or agreements contained herein or in any other document securing the Note or any other security instrument; or if Beneficiary discovers that any statement, representation, or warranty in the Note, this Deed of Trust or in any writing delivered to Beneficiary in connection with the indebtedness secured hereby is false,

**Deed of Trust (Security Agreement, Financing Statement)**

   7

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

Copy from re:SearchTX

misleading or erroneous in any material respect; or if Grantors, or any person liable for the indebtedness secured hereby, or any part thereof, including any guarantor of or any surety for the performance of any obligation hereunder, files a voluntary petition in bankruptcy; makes an assignment for the benefit of any creditor, is adjudicated as bankrupt or insolvent; admits in writing its inability to pay its debts generally as they become due, applies for or consents to the appointment of a receiver, trustee, or liquidator of Grantors or of any such guarantor or surety or of all or a substantial part of its assets; takes advantage of or seeks any relief under any bankruptcy, reorganization, debtor's relief or other insolvency law now or hereafter existing; files an answer admitting the material allegations of, or consenting to, or defaulting in, a petition against Grantors or any such guarantor or surety, in any bankruptcy, reorganization, or other insolvency proceedings; institutes or voluntarily is or becomes a party to any other judicial proceedings intended to effect a discharge of the debts of Grantors or of any guarantor or surety, in whole or in part, or to effect a postponement of the maturity or the collection thereof, or to effect a suspension of any of the right or powers of Beneficiary granted in the Note, this Deed of Trust or in any other instrument evidencing or securing the indebtedness secured hereby; or if an order, judgment or decree shall be entered by any court of competent jurisdiction appointing a receiver, trustee or liquidator of Grantors or of any guarantor or surety or of all or any substantial part of the assets of Grantors or any such guarantor or surety or if Grantors or any guarantor or surety shall fail to pay any money judgment against it at least ten (10) days prior to the date on which the assets of Grantors or any such guarantor or surety may be sold to satisfy such judgment; or if Grantors or any such guarantor or surety shall fail to have discharged within a period of ten (10) days after the commencement thereof any attachments, sequestration, or similar proceedings against any assets of Grantors or of any guarantor or surety; or if the Mortgaged Premises are placed under control or in the custody of any court, or if Grantors abandon any of the Mortgaged Premises. Upon the occurrence of any such default, Beneficiary, at its option, without notice, may pursue any rights and remedies it may have hereunder or at law, or in equity and Beneficiary may, without limitation and without notice of any kind (including notice of intention to accelerate maturity), declare the entire indebtedness secured hereby immediately due and payable, whereupon it shall be so due and payable.

10.    **RELEASE.** If Grantors shall perform faithfully each of the covenants and agreements herein contained, then, and only then, this conveyance shall become null and void and shall be released in due form, at Grantors' expense; otherwise, it shall remain in full force and effect. No release of this conveyance, or of the lien, security interest of assignment created and evidenced hereby, shall be valid unless executed by Beneficiary.

11.    **POWER OF SALE.** If Grantors shall default hereunder, Grantors hereby authorize and empower the Trustee, at the request of Beneficiary, at any time during the continuance of any default, to sell all or any portion of the Mortgaged Premises, at public auction, to the highest bidder, for cash. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time.

Notice of such proposed sale shall be given by posting written notice thereof as provided by applicable law. In addition, Beneficiary shall, at least twenty-one days preceding the date of sale, serve written notice of the proposed sale by certified mail on each debtor obligated to pay the debt secured hereby according to the records of Beneficiary in the manner prescribed by applicable law.

Any notice that is required or permitted to be given to Grantors may be addressed to Grantors at Grantors' address as stated herein. Any notice that is to be given by certified mail to any other debtor may, if no address for such other debtor is shown by the records of Beneficiary, be addressed to such other debtor at the address of Grantors as is shown by the records of Beneficiary. Notwithstanding the foregoing provisions of this paragraph, notice of such sale given in accordance with the requirements of applicable law in effect at the time of such sale shall constitute sufficient notice of such sale. Grantors hereby authorize and empower the Trustee to sell all or any portion of the Mortgaged Premises, together or in lots of parcels, as the Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such property, good and sufficient deeds of conveyance of fee simple title with covenants of general warranty made on behalf of the Grantors. In no event shall the Trustee be required to exhibit, present or display at any such sale any of the personality described herein to be sold at such sale. The

Deed of Trust (Security Agreement, Financing Statement)



8

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

Copy from re:SearchTX

Trustee making such sale shall receive the proceeds thereof and shall apply the same as follows: (i) first, he shall pay the reasonable expense of executing this trust including a reasonable Trustee's fee for commission and attorney's fees and costs of title evidence; (ii) second, he shall pay, so far as may be possible, the indebtedness secured hereby, discharging first that portion of the indebtedness arising under the covenants or agreements herein contained and not evidenced by the Note; (iii) third, he shall pay the residue, if any, to the person or persons legally entitled thereto. Payment of the purchase price to the Trustee shall satisfy the obligation of the purchaser at such sale therefor, and such purchaser shall not be bound to look after the application thereof. The sale or sales by the Trustee of less than the whole of the Mortgaged Premises shall not exhaust the power of sale herein granted, and the Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Mortgaged Premises shall be sold; and if the proceeds of such sale or sales of less than the whole of such Mortgaged Premises shall be less than the aggregate of the indebtedness secured hereby and the expense of executing this trust, this Deed of Trust and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Mortgaged Premises just as though no sale or sales had been made; provided, however, that Grantors shall never have any right to require the sale or sales of less than the whole of the Mortgaged Premises but Beneficiary shall have the right, at its sole election, to request the Trustee to sell less than the whole of the Mortgaged Premises. If default is made hereunder, the holder of the indebtedness or any part thereof on which the payment is delinquent shall have the option to proceed with foreclosure in satisfaction of such item either through judicial proceedings or by directing the Trustee to proceed as if under a full foreclosure, conducting the sale as herein provided without declaring the entire indebtedness secured hereby due and if sale is made because of default of an installment, or a part of an installment, such sale may be made subject to the unmatured part of the Note and other indebtedness secured by this Deed of Trust; and it is agreed that such sale, if so made, shall not in any manner affect the unmatured part of the indebtedness secured by this Deed of Trust, but as to such unmatured part, this Deed of Trust shall remain in full force and effect as though no sale had been made under the provisions of this paragraph. Several sales may be made hereunder without exhausting the right of sale for any unmatured part of the indebtedness secured hereby.

In case of any sale hereunder, all prerequisites to the sale shall be presumed to have been performed, and in any conveyance given hereunder, all statements of facts, or other recitals made as to the nonpayment of money secured, or as to the request to the Trustee to enforce this trust, or as to the proper and due appointment of any substitute trustee, or as to the advertisement of sale, or time, place, and manner of sale, or as to any other preliminary matter, shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true. The purchaser at any trustee's or foreclosure sale hereunder may disaffirm any easement granted, or rental, lease or other contract made, in violation of any provision of this Deed of Trust, and may take immediate possession of the Mortgage Premises free from, and despite the terms of, such grant of easement and rental or lease contract.

12.     **SUBSTITUTE/SUCCESSOR TRUSTEE.** At the option of the Beneficiary, with or without any reason, a successor substitute trustee may be appointed by the Beneficiary without any formality other than a designation in writing of a successor or substitute trustee, who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named, the same as if the successor or substitute trustee had been named original Trustee herein; and such right to appoint a successor substitute trustee shall exist as often and whenever the Beneficiary desires.

13.     **TENANCY UPON TRUSTEE'S SALE.** In the event of a trustee's sale hereunder and if at the time of such sale the Grantors occupy the portion of the Mortgaged Premises so sold, or any part thereof, Grantors shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either tenant or landlord, at a reasonable rental per day based upon the value of the portion of the Mortgaged Premises so occupied, such rental to be due and payable daily to the purchaser. An action of forcible detainer shall lie if the tenant holds over after a demand in writing for possession of such Mortgaged Premises; and this agreement and any trustee's deed shall constitute a lease and agreement under which the tenant's possession, each and all, arose and continued.

**Deed of Trust (Security Agreement, Financing Statement)**



9

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 50 of 153**

Copy from re:SearchTX

14.    **SUBORDINATE LIENS.** Grantors will not, without the prior written consent of Beneficiary, execute or deliver any pledge, security agreement, mortgage or deed of trust covering all or any portion of the Mortgaged Premises (hereinafter called "Subordinate Mortgage"). In the event of consent by Beneficiary to the foregoing or in the event the foregoing prohibition is determined by a court of competent jurisdiction to be unenforceable by the provisions of any applicable law, Grantors will not execute or deliver any Subordinate Mortgage unless there shall have been delivered to Beneficiary not less than ten (10) days prior to the date thereof a copy thereof which shall contain express covenants to the effect:

(a)    That the Subordinate Mortgage is in all respects unconditionally subject and subordinate to the lien, security interest and assignment evidenced by this Deed of Trust and each term and provision hereof;

(b)    That the Rents and Profits, if collected through a receiver or by the holder of the Subordinate Mortgage, shall be applied first to the obligations secured by this Deed of Trust, including principal and interest due and owing on or to become due and owing on the Note and the other indebtedness secured hereby and then to the payment of maintenance, operating charges, taxes, assessments, and disbursements incurred in connection with the ownership, operating and maintenance of the Mortgaged Premises; and

(c)    That if any action or proceedings shall be brought to foreclose the Subordinate Mortgage, written notice of the commencement thereof will be given to Beneficiary contemporaneously with the commencement of such action or proceeding.

15.    **DEFENSE OF BENEFICIARY INTEREST.** If the title of the Trustee to, or the interest of Beneficiary in, the Mortgaged Premises shall be endangered or shall be attached directly, or indirectly, Grantors hereby authorize Beneficiary, at Grantors' expense, to take all necessary and proper steps for the defense of such title or interest, including the employment of counsel, the prosecution or defense of litigation, and the compromise or discharge of claims made against such title or interest. At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, titles, liens, or security interests created hereby, or upon the Note, or any part thereof, or any other indebtedness secured hereby, Grantors shall immediately pay all such taxes; provided that, in the alternative Grantors may, in the event of the enactment of such a law, and must, if it is unlawful for Grantors to pay such taxes, prepay the Note, and any other indebtedness secured hereby, in full with sixty (60) days after demand therefor by Beneficiary.

16.    **FLOOD INSURANCE.** Unless Beneficiary's flood hazard determination provides information to the contrary, Grantors represent and warrant that none of the Mortgaged Premises, or any part thereof, is situated within a flood plain, flood prone areas, special flood hazardous areas or the like, as so designated by the applicable Flood Hazard Boundary Map or any such similar map or plat issued or controlled by The Flood Insurance Administration and/or any other federal agency appointed to regulate such matters under the Federal Flood Disaster Protection Act, as amended, and Grantors hereby indemnify and hold Beneficiary harmless, from any claims and/or costs arising against or waived by Beneficiary if the Mortgaged Premises are, in fact, determined to be in such an area. In the event that the Mortgaged Premises are in such an area, Grantors will keep the Mortgaged Premises insured for the protection of Beneficiary against loss by flood, and the provisions of this Deed of Trust concerning amounts of coverage, payment of premiums, endorsements, payment and application of insurance proceeds, and other matters regarding hazard insurance shall apply with equal force to Grantors' obligation herein to obtain flood insurance.

17.    **UNSECURED DEBT.** If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt or any part of the Mortgaged Premises, the unsecured or partially secured portion of the debt shall be completely paid prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not

---

Deed of Trust (Security Agreement, Financing Statement)



10

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

Copy from re:SearchTX

secured or fully secured by the lien of this Deed of Trust.

18.   **DOCUMENT CONSTRUCTION.** Whenever used the singular number shall include the plural, the plural the singular, the use of any gender shall include all genders. The words "Grantors" and "Beneficiary" shall include their heirs, executors, administrators, successors and assigns and the word "Trustee" shall include his successors and substitute trustees.

19.   **ATTORNEY'S FEES AND EXPENSES.** Grantors will pay all reasonable attorney's fees and expenses which may be incurred by the Beneficiary or Trustee, in enforcing the terms of the Note and this Deed of Trust, or in any suit to which the Beneficiary or Trustee may become a party where the Deed of Trust or the Mortgaged Premises are in any manner involved and all expenses incurred in presenting a claim against the estate of a decedent or a bankrupt and will also pay any attorney's fees and expenses reasonably incurred in connection with the assignment to Beneficiary of any leases subsequently entered into by Grantors as well as any and all such fees and expenses reasonably incurred prior to full and final payment of such indebtedness relating to future advances, transfer of title to the premises and similar matters not otherwise provided for herein.

20.   **SECURITY AGREEMENT/FINANCING STATEMENT.** With respect to any personal property herein described this Deed of Trust shall constitute a Security Agreement between Grantors and Beneficiary, and, cumulative of all other rights of Beneficiary hereunder, Beneficiary shall have all of the rights conferred upon secured partied by the Uniform Commercial Code, as amended, as to this property. This Deed of Trust, as a Financing Statement, covers the following types of property: Minerals, crops and goods that are, or are to become, fixtures as more fully described herein, and related to the real estate described herein, and it is intended that as to those goods and the proceeds thereof, this Deed of Trust shall be effective as a Financing Statement filed as a mineral, crop and fixture filing from the date of its filing for record in the Real Estate Records of the County in which the land is located. Until the lien of this Deed of Trust is released or satisfied of record, Grantors agree, if requested by Beneficiary so to do, to execute one or more Financing Statements covering such personal property, in the manner and form required by law and to the satisfaction of Beneficiary. Grantors agree to pay Beneficiary's charge, to the maximum amount permitted by law, for any statement by Beneficiary regarding the obligations secured by this Deed of Trust, requested by Grantors or on behalf of Grantors. On demand, Grantors will promptly pay all costs and expenses of filing Financing Statements, continuation statements, partial releases and termination statements deemed necessary or appropriate by Beneficiary to establish and maintain the validity and priority of the security interest of Beneficiary or any modification thereof, and all costs and expenses of any searches reasonably required by Beneficiary. Beneficiary may exercise any or all of the remedies of a secured party available to it under the Uniform Commercial Code, as amended, with respect to such personal property, and it is expressly agreed that if upon default Beneficiary should proceed to dispose of the collateral in accordance with the provisions of the Uniform Commercial Code, as amended, ten (10) days notice by Beneficiary to Grantors shall be deemed to be reasonable notice under any provision of the Uniform Commercial Code, as amended, requiring such notice; provided, however, that Beneficiary may at its option dispose of the collateral in accordance with Beneficiary's rights and remedies in respect of the real property pursuant to the provisions of this Deed of Trust, in lieu of proceeding under the Uniform Commercial Code, as amended. **TO THE EXTENT THIS SECURITY INSTRUMENT SECURES AN OBLIGATION INCURRED FOR THE CONSTRUCTION OF AN IMPROVEMENT ON LAND, INCLUDING THE ACQUISITION COST OF THE LAND, THIS SECURITY INSTRUMENT CONSTITUTES A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF SECTION 9.334 OF THE TEXAS BUSINESS & COMMERCE CODE.**

21.   **TRANSFER OF THE PROPERTY.** It shall be a default hereunder if Grantors should sell (by executory Contract for Deed or otherwise), assign or convey any part or all of the Mortgaged Premises (regardless of whether the buyer or assignee "assumes" the indebtedness hereby secured or takes "subject to" such indebtedness) without first obtaining the written Consent of Beneficiary.

22.   **EXPENSES/INDEMNIFICATON.** To the extent not prohibited by applicable law, Grantors

**Deed of Trust (Security Agreement, Financing Statement)**



11

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 52 of 153**

Copy from re:SearchTX

will pay all costs and expenses and reimburse Beneficiary for any and all expenditures of every character, including, but not limited to, the fees and expenses of counsel for Beneficiary, incurred or expended from time to time, regardless of whether a default or event of default shall have occurred in connection with: (a) Beneficiary's evaluating, monitoring, administering and protecting the Mortgaged Premises; and (b) Beneficiary's creating, perfecting or realizing upon Beneficiary's security interest in and liens on the Mortgaged Premises, and all costs and expenses relating to Beneficiary's exercising any of its rights and remedies under this or any of the other security instruments or at law, including, without limitation, all appraisal fees, consulting fees, filing fees, taxes, brokerage fees and commissions, title review and abstract fees, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, attorneys' fees, legal expenses, court costs, fees and expenses incurred in connection with it. Grantors agree to indemnify, defend and hold Beneficiary, its directors, officers and employees (collectively, "Indemnified Parties") harmless from and against any and all loss, liability, obligation, damage, penalty, judgment, claim, deficiency and expense (including interest, penalties, attorneys' fees and amount paid in settlement), regardless of whether the same was caused in whole or in part by the negligence of any of the Indemnified Parties, to which the Indemnified Parties may become subject arising out of or in connection with this Agreement, the Note, any other security instruments hereto or any transaction contemplated herein to therein (other than those which arise by reason of the gross negligence of the Beneficiary). Any amount to be paid hereunder by the Grantors to the Beneficiary shall be a demand obligation owing by the Grantors to the Beneficiary and shall bear interest from the date of expenditure at the highest lawful rate.

23.     **ENVIRONMENTAL MATTERS.** Without Beneficiary's prior written consent, Grantors shall not use, store, treat, generate, release, discharge, dispose or transport any Hazardous Materials on, under, in, above, to or from the Mortgaged Premises. For the purposes of this section, "Hazardous Materials" shall refer to any underground storage tank, petroleum, polychlorinated biphenyls or other substances, materials and wastes that are or become regulated as hazardous or toxic substances under any applicable local, state or federal law, regulation or order, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act and the Resource Conservation and Recovery Act, each as amended from time to time (herein collectively called "Environmental Laws"). Grantors shall indemnify, defend and hold Beneficiary harmless from and against; (a) any loss, costs, expense, claim or liability arising out of any investigation, monitoring, clean-up, containment, removal, storage, remedial or restoration work ("Remedial Work") required by Beneficiary, or any non-governmental entity or person, or any governmental agency or political subdivision which requires Remedial Work upon a reasonable belief that the Remedial Work is required by the Environmental Laws; and (b) any claims of third parties for loss, injury, expense or damage arising out of the use, presence, treatment, generation, release, discharge, disposal or transportation of any Hazardous Materials on, under, in, above, to or from the Mortgaged Premises. In the event any Remedial Work is so required under applicable Environmental Laws, Grantors shall perform or cause to be performed the Remedial Work in compliance with all Environmental Laws. In the event Grantors shall fail to commence the Remedial Work in a timely fashion or fail to prosecute diligently the Remedial Work to completion, Beneficiary may, but shall not be required to, cause the Remedial Work to be performed, subject fully to the indemnification provisions of this section. The indemnification contained herein shall survive repayment of the Note and release of the lien of this Deed of Trust and shall be fully applicable notwithstanding any negligence on the part of any Indemnified Party. The liabilities and covenants of Grantors hereunder may not be assigned and any such assignment shall be null and void without the Beneficiary's prior written consent.

24.     **SECURITY INTEREST IN MINERALS.** Grantor also grants to Trustee a security interest in all oil, gas, and other minerals that might be produced from the land covered by this deed of trust. This deed of trust (i) is to be filed in the real property records of the county in which the land is located, (ii) covers all "as-extracted collateral," as defined in Texas Business and Commerce Code §9.102, attributable to the land, (iii) serves as a security agreement covering the as-extracted collateral, (iv) serves as an assignment of all payments made for damages or anticipated damages to the land, and (v) serves as a financing statement covering as-extracted collateral and fixtures as provided in Texas Business and Commerce Code §9.502. The provisions of this paragraph are cumulative of all other provisions of this deed of trust.

**Deed of Trust (Security Agreement, Financing Statement)**



12

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 53 of 153**

Copy from re:SearchTX

25.     **TAX LIEN LOANS PROHIBITED.** Grantors shall not enter into any agreement with any third party for the payment of the ad valorem taxes imposed on the Property or authorize, in any manner, the transfer of the lien for such taxes to any third-party.

ADDITIONAL PROVISIONS: **Revocable Trust Rider and Balloon Rider attached hereto.**

☒     The note secured hereby is primarily secured by the Vendor's Lien retained in the Deed of even date herewith conveying the property to Grantors, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefore.

☐     The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐     The note secured hereby is in renewal and extension, but not in extinguishment of that certain indebtedness described on Renewal and Extension Exhibit attached hereto.

☐     **Acknowledgment of Cash Advanced Against Non-Homestead Property.** The Note represents funds advanced to Borrower on this day at Grantor's request and Grantor acknowledges receipt of such funds. Borrower states that Grantor does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Grantor disclaims all homestead rights, interests and exemptions related to the Property.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Deed of Trust (Security Agreement, Financing Statement)



13

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

Copy from re:SearchTX

EXECUTED this **Twenty-seventh** day of **May, 2022**

GRANTOR(S) AND MAILING ADDRESS(ES):

**Arroyo Picosa Revocable Trust**

_____    5-27-22
Signature                          Date
**Brandon Trace Steele, Trustee of the Arroyo-Picosa Revocable Trust
under trust instrument dated March 29, 2022**

_____    5-27-2022
Signature                          Date
**Andrea Irene Steele, Trustee of the Arroyo Picosa Revocable Trust under
trust instrument dated March 29, 2022**
Mailing address:
300 Crescent Ct. Suite 1350
Dallas, TX 75201

*[Sign Originals Only]*

BY SIGNING BELOW, the undersigned, Settlor(s) of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____
Brandon Trace Steele, Trust Settlor

_____
Andrea Irene Steele, Trust Settlor

STATE OF TEXAS
COUNTY OF SMITH _____

The foregoing instrument was acknowledged before me this __27th__ day of __May_____, 20__22__ by **Andrea Irene Steele, Trustee of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022 and Brandon Trace Steele, Trustee of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022.**

_____
Notary Public

Printed Name:_____
My commission expires:_____

APRIL KEYWORTH
Notary Public
STATE OF TEXAS
ID# 1194147-4
My Comm. Exp. May. 06, 2026

**Deed of Trust (Security Agreement, Financing Statement)**

14

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 55 of 153**

Copy from re:SearchTX

EXHIBIT "A" - PAGE 56 of 153

MLO Org.: American State Bank (ID: 406376) | MLO Indv: Kelly Marsden Sanders (ID: 504417 )

---

**Deed of Trust (Security Agreement, Financing Statement)**



15

©PeirsonPatterson, LLP. 2022
221026480532 [Doc Id 7566 M05262021]

**EXHIBIT "A" - PAGE 56 of 153**

Copy from re:SearchTX

## EXHIBIT "A"

All that certain lot, tract or parcel of land, part of the Christian Kasten Survey, Abstract No. 540, Smith County, Texas, being all of that certain called 80 acres less and except 10.70 acre First Tract, 29.1 acre Second Tract and part of that certain called 80 acre Third Tract described in a deed from Cecil E. Wiegman and wife, Dorothea P. Wiegman to Walter Connally Powell on August 24, 1981 and recorded in Volume 1896, Page 559 of the Land Records of Smith County, Texas, being more completely described as follows, to wit:

BEGINNING at a crosstie fence corner at the Northeast corner of the above mentioned 80 acre Third Tract, the Northeast corner of said Kasten Survey, an inner corner of that certain called 125.00 acre tract described in a deed from Donald R. Rightsell and wife, Dorthy Rightsell to Clyde A. Weaver and wife Janet S. Weaver and recorded in Volume 2217, Page 297, an inner corner of the W. S. Bickerstaff. Survey, Abstract No. 131;

THENCE South 00 deg. 46 min. 28 sec. West with the southerly West line of said 125.00 acre tract and Bickerstaff Survey, the West line of the Nimrod Ragsdale Survey, Abstract No. 804, the East line of said 80 acre tract, the East line of the above mentioned 80 acres less and except 10.70 acre First Tract and the East line of the above mentioned 29.1 acre Second Tract, a distance of 2454.38 ft. to a tie rod end (found) at the Southeast corner of same, the Northeast corner of that certain called 59.675 acre tract described in a deed from the Veterans Land Board of the State of Texas to Martin Lenderman and recorded in Volume 1066, Page 84;

THENCE South 89 deg. 47 min. 16 sec. West with the South line of said 29.1 acre tract, the North line of said 59.675 acre tract, a distance of 2175.00 ft. to a 1/2" iron rod (set) for the Northwest corner of same, the Southwest corner of said 29.1 acre tract, in the East line of that certain called 10.590 acre tract described in a deed from Charles A. Bell to Wayne Parker and Dianne Parker and recorded in S.C.C. File No. R0004787 (2006), in the West edge of County Road No. 2180 (Yarbrough Lane);

THENCE North 00 deg. 12 min. 44 sec. West with the West line of said 29.1 acre tract, the East line of said 10.590 acre tract, a distance of 658.00 ft. to a 1/2" iron rod (set) for the Northeast corner of same, the Northwest corner of said 29.1 acre tract, in the South line of said 80 acres less and except 10.70 acres, near the North right-of-way of a bend in County Road No. 2180;

THENCE North 89 deg. 35 min. 13 sec. West with the North right-of-way of County Road No. 2180, the North line of said 10.590 acre tract, the South line of said 80 acres less and except 10.70 acres, a distance of 409.05 ft. to a cross tie corner post at the Southeast corner of said 10.70 acre tract, said tract also being described in deed from Cecil E. Wiegman and wife, Dorothea Wiegman to Jerry Boyd Boulware and wife, Dorthey Ann Boulware and recorded in Volume 2065, Page 8, from which the Southwest corner of same bears North 89 deg. 35 min. West 1031.12 ft. and witnessed by a 48" hacked red oak bearing South 77 deg. West 19.4 ft.;

THENCE North 00 deg. 20 min. 56 sec. East with the East line of said 10.70 acre tract, a distance of 457.32 ft. to a 1/2" iron rod (set) for the Northeast corner of same;

THENCE North 89 deg. 24 min. 34 sec. West with the easterly North line of said 10.70 acre tract, a distance of 813.41 ft. to a 30" sweet gum at the easterly Northwest corner of same

1 of 2

**EXHIBIT "A" - PAGE 57 of 153**

Copy from re:SearchTX

THENCE South 02 deg. 38 min. 49 sec. East with the northerly West line of said 10.70 acre tract, a distance of 54.19 ft. to a 1/2" iron rod (found) for an inner corner of same;

THENCE North 89 deg. 28 min. 39 sec. West with the westerly North line of said 10.70 acre tract, a distance of 208.82 ft. to the westerly Northwest corner of same, in the West line of said 80 acre First Tract, the West line of said Kasten Survey, the East line of the Mark Grigsby Survey, Abstract No. 395, the East line of that certain called 91.06 acre tract described in deed from Claudia Mae Barnes Adams to Thomas G. West and recorded in Volume 3273, Page 875, a 40" red oak (found) for witness bears South 89 deg. 28 min. 39 sec. East - 19.92 ft.;

THENCE North 02 deg. 23 min. 19 sec. East with said survey line, the West line of said 80 acre First Tract, the East line of said 91.06 acre tract and the East line of that certain called 228.313 acre tract described in a deed from Sylvia Anna Schronk to Dannat Rental, Inc. and recorded in Volume 7695, Page 106, a distance of 489.95 ft. to a 1/2" iron rod (set) for the Northwest corner of said 80 acre First Tract, the Southwest corner of said 80 acre Third Tract, the easterly Southwest corner of that certain called 22.302 acre Parcel 2 Tract 1 described in S.C.C. File No. R00017213 (2006);

THENCE South 88 deg. 29 min. 49 sec. East with the North line of said 80 acre First Tract, the South line of said 80 acre Third Tract and the easterly South line of said 22.302 acres, a distance of 48.60 ft. to the Southeast corner of same, in the centerline of County Road No. 2180;

THENCE Northerly with the centerline of County Road No. 2180 and the East line of the 22.302 acre tract as follows:

North 07 deg. 22 min. 49 sec. East - 207.44 ft.,
North 04 deg. 31 min. 51 sec. East - 232.35 ft.,
North 03 deg. 09 min. 44 sec. East - 65.82 ft.,
North 04 deg. 09 min. 35 sec. East - 69.13 ft.,
North 00 deg. 07 min. 27 sec. West - 85.03 ft.,
North 06 deg. 07 min. 31 sec. West - 102.72 ft. and
North 11 deg. 44 min. 07 sec. West - 141.85 ft to the Northeast corner of same, in the North lines of said 80 acre Third Tract and the Kasten Survey, in the South line of the Daniel Barcroft Survey, Abstract No. 132;

THENCE South 88 deg. 30 min. 05 sec. East with the North line of said 80 acre Third Tract and Kasten Survey, the South line of the Daniel Barcroft Survey, Abstract No. 132, at 17.67 ft. pass a 1/2" iron rod (found) for reference, and continue a total distance of 231.35 ft. to a 1/2" iron rod (found) for the Southeast corner of the Thomas C. Parker 2.0 acre tract described in Volume 3261, Page 871;

THENCE North 89 deg. 48 min. 00 sec. East with the North line of said 80 acre Third Tract and Kasten Survey, the South line of the Daniel Barcroft Survey, a distance of 3078.90 ft. to a 1/2" iron rod (found) for the Southeast corner of same and the westerly Southwest corner of said Bickerstaff Survey and 125.00 acre tract;

Thence South 89 deg. 14 min. 43 sec. East with the Westerly South lines of the 125.00 acre tract and Bickerstaff Survey, the North lines of the Kasten Survey and 80 acre Third Tract a distance of 243.75 ft. to the place of beginning, containing 169.798 acres of land, more or less

2 of 2

**EXHIBIT "A" - PAGE 58 of 153**

Copy from re:SearchTX

# BALLOON RIDER

LO Company NMLS ID 406376
LO NMLS ID 504417

This BALLOON RIDER is made this **Twenty-seventh** day of **May, 2022** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **American State Bank** (the "Lender") of the same date and covering the property described in the Security Instrument and located at **10693 CR 2180, Whitehouse, TX 75791** (Property Address).

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who take the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

**Balloon Rider - Multistate**

**JBLNTRUER (12/08)**

   1

221026490532 [Doc Id 5973 M01282014]

**EXHIBIT "A" - PAGE 59 of 153**

Copy from re:SearchTX

**Arroyo Picosa Revocable Trust**

5-27-22

Signature          Date

Brandon Trace Steele, Trustee of the Arroyo Picosa Revocable Trust under
trust instrument dated March 29, 2022

5-27-2022

Signature          Date

Andrea Irene Steele, Trustee of the Arroyo Picosa Revocable Trust under
trust instrument dated March 29, 2022

*[Sign Originals Only]*

BY SIGNING BELOW, the undersigned, Settlor(s) of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____

Brandon Trace Steele, Trust Settlor



_____

Andrea Irene Steele, Trust Settlor

---

**Balloon Rider - Multistate**          **JBLNTRUER (12/08)**

2

221026490532 [Doc Id 5973 M01282014]

**EXHIBIT "A" - PAGE 60 of 153**

Copy from re:SearchTX

# REVOCABLE TRUST RIDER

LO Company NMLS ID 406376
LO NMLS ID 504417

## DEFINITIONS USED IN THIS RIDER

(A) "Revocable Trust." **Arroyo Picosa Revocable Trust** created under trust instrument dated **March 29, 2022.**

(B) "Revocable Trust Trustees." **Brandon Trace Steele and Andrea Irene Steele**, trustees of the Revocable Trust.

(C) "Revocable Trust Settlor(s)." **Brandon Trace Steele and Andrea Irene Steele**, settlor(s) of the Revocable Trust signing below.

(D) "Lender." **American State Bank** .

(E) "Security Instrument." The mortgage, deed of trust or security deed and any riders thereto of the same date as this Rider given to secure the Note to the Lender of the same date and covering the Property (as defined below).

(F) "Property." The property described in the Security Instrument and located at:

**10693 CR 2180**
**Whitehouse, Texas  75791**
[Property Address]

**THIS REVOCABLE TRUST RIDER** is made this **Twenty-seventh** day of **May, 2022**, and is incorporated into and shall be deemed to amend and supplement the Security Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), the Revocable Trust Settlor(s) and the Lender further covenant and agree as follows:

**ADDITIONAL BORROWER(S).** The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein or by acknowledging all of the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by the Lender as if such party were named as "Borrower" in the Security Instrument.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Revocable Trust Rider.

---

Revocable Trust Rider (Multistate)



1

221026500532 [Doc Id 6750 M04282014]

Copy from re:SearchTX

**Arroyo Picosa Revocable Trust**

_____  5-27-22
Signature                              Date
Brandon Trace Steele, Trustee of the Arroyo Picosa Revocable Trust under
trust instrument dated March 29, 2022

_____  5-27-2022
Signature                              Date
Andrea Irene Steele, Trustee of the Arroyo Picosa Revocable Trust under
trust instrument dated March 29, 2022                    _[Sign Originals Only]_

BY SIGNING BELOW, the undersigned, Settlor(s) of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022, acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.

_____
Brandon Trace Steele, Trust Settlor


_____
Andrea Irene Steele, Trust Settlor

---

Revocable Trust Rider (Multistate)

2

221026500532 [Doc Id 6750 M04282014]

**EXHIBIT "A" - PAGE 62 of 153**

Copy from re:SearchTX

## NOTICE OF FORECLOSURE SALE

Notice is hereby given of a public nonjudicial foreclosure sale.

1.  Property To Be Sold. The property to be sold is described as follows:

All property (real, personal or otherwise) described in the Deed of Trust, including, but not limited to, the real property described as being **situated in Smith County, Texas, as more particularly described on Exhibit "A" attached hereto and made a part hereof,** together with the rights, appurtenances and improvements thereto and certain other personal property as more particularly described in the Deed of Trust referenced herein.

2.  Date, Time, and Place of Sale. The sale is scheduled to be held at the following date, time, and place:

Date:  **Tuesday, April 7, 2026**

Time:  The sale shall be held between the hours of **10:00 A.M. and 1:00 P.M.**

Place:  In the area designated by the Commissioners Court of such County, pursuant to § 51.002 of the Texas Property Code as the place where foreclosure sales are to take place (if no such place is so designated, the sale will take place in the area where this Notice of Substitute Trustee's Sale is posted).

The Deed of Trust permits the beneficiary to postpone, withdraw, or reschedule the sale for another day. In that case, the trustee or substitute trustee under the Deed of Trust need not appear at the date, time, and place of a scheduled sale to announce the postponement, withdrawal, or rescheduling. Notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Texas Property Code. Such reposting or refiling may be after the date originally scheduled for this sale.

3.  Terms of Sale. The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the Deed of Trust permitting the beneficiary thereunder to have the bid credited to the note up to the amount of the unpaid debt secured by the Deed of Trust at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the sale will necessarily be made subject

Notice of Foreclosure Sale – Page 1



EXHIBIT "A" - Notice of Foreclosure Sale-Rox Smith County-[borrower]-21898-0102

Copy from re:SearchTX

to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the Deed of Trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

4. <u>Type of Sale</u>. The sale is a nonjudicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by the Deed of Trust, Security Agreement and Financing Statement. ("Deed of Trust") executed by Brandon Trace Steele and Andrea Irene Steele, Trustees of Arroyo Picosa Revocable Trust (the "Borrower"), to Kelly Sanders, Trustee for the benefit of American State Bank dated effective as of May 27, 2022, and filed for record in the Real Property Records of Smith County, Texas ("Deed of Trust").

5. <u>Obligations Secured</u>. The Deed of Trust provides that it secures the payment of the indebtedness and obligations therein described (collectively the "Obligations") including but not limited to a Promissory Note in the original principal amount of $4,000,000.00 ("Note"), executed by Borrower, and payable to the order of American State Bank, and all renewals, modifications and extensions of the Note. American State Bank is the current owner and holder of the Note and the Obligations and is the beneficiary under the Deed of Trust.

6. <u>Default and Request To Act</u>. Default has occurred in the payment of the Indebtedness under the Note and the Deed of Trust, and the beneficiary has requested me, or other Substitute Trustee, to conduct this sale. Notice is given that before the sale the beneficiary may appoint another person as substitute trustee to conduct the sale.

**Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active military duty, including active duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

<u>Notice of Foreclosure Sale – Page 2</u>

EXHIBIT "A" - PAGE 64 of 153 Notice of Foreclosure Sale.docx Smith County-[borrower]-21898-0102

Copy from re:SearchTX

DATED: _____2-27_____, 2026.



Bruce A. Stockard
500 N. Akard, Suite 2700
Dallas, Texas 75201
Telephone: (214) 706-4226

STATE OF TEXAS      §
                          §
COUNTY OF DALLAS    §

    The foregoing instrument was acknowledged before me by Bruce A. Stockard on the 27 day of _____February_____, 2026.

> LORETTA S. FORBEY
> My Notary ID # 125170438
> Expires January 19, 2029

_____
Notary Public, State of Texas

[S E A L]

**Notice of Foreclosure Sale – Signature Page**

**EXHIBIT "A" - PAGE 65 of 153**

Copy from re:SearchTX

# EXHIBIT "A"

All that certain lot, tract or parcel of land, part of the Christian Kasten Survey, Abstract No. 540, Smith County, Texas, being all of that certain called 80 acres less and except 10.70 acre First Tract, 29.1 acre Second Tract and part of that certain called 80 acre Third Tract described in a deed from Cecil E. Wiegman and wife, Dorothea P. Wiegman to Walter Connally Powell on August 24, 1981 and recorded in Volume 1896, Page 559 Or the Land Records of Smith County, Taas, being more completely described as follows, to wit:

BEGINNING at a crosstie fence corner at the Northeast corner of the above mentioned 80 acre Third Tract, the Northeast corner of said Kasten Survey, an inner corner of that certain called 125.00 acre tract described in a deed from Donald R. Rightsell and wife, Dorthy Rightsell to Clyde A. Weaver and wife Janet S. Weaver and recorded in Volume 2217, Page 297, an inner corner of the W. S. Bickerstaff Survey, Abstract No.131;

THENCE South 00 deg. 46 min. 28 sec. West with the southerly West line of said 125.00 acre tract and Bickerstaff Survey, the West line of the Nimrod Ragsdale Survey, Abstract No. 804, the East line of said 80 acre tract, the East line of the above mentioned 80 acres less and except 10.70 acre First Tract and the East line of the above mentioned 29.1 acre Second Tract, a distance of 2454.38 ft. to a tie rod end (found) at the Southeast corner of same, the Northeast corner of that certain called 59.675 acre tract described in a deed from the Veterans Land Board of the State of Texas to Martin Lenderman and recorded in Volume 1066, Page 84;

THENCE South 89 deg. 47 min. 16 sec. West with the South line of said 29.1 acre tract, the North line of said 59.675 acre tract, a distance of 2175.00 ft. to a 1/2" iron rod (set) for the Northwest corner of same, the Southwest corner of said 29.1 acre tract, in the East line of that certain called 10.590 acre tract described in a deed from Charles A. Bell to Wayne Parker and Dianne Parker and recorded in S.C.C. File No. R0004787 (2006), in the West edge of County Road No. 2180 (Yarbrough Lane);

THENCE North 00 deg. 12 min. 44 sec. West with the West line of said 29.1 acre tract, the East line of said 10.590 acre tract, a distance of 658.00 ft. to a 1/2" iron rod (set) for the Northeast corner of same, the Northwest corner of said 29.1 acre tract, in the South line of said 80 acres less and except 10.70 acres, near the North right-of-way of a bend in County Road No. 2180;

THENCE North 89 deg. 35 min. 13 sec. West with the North right-of-way of County Road No. 2180, the North line of said 10.590 acre tract, the South line of said 80 acres less and except 10.70 acres, a distance of 409.05 ft. to a cross tie corner post at the Southeast corner of said 10.70 acre tract, said tract also being described in deed from Cecil E. Wiegman and wife, Dorothea Wiegman to Jerry Boyd Boulware and wife, Dorthey Ann Boulware and recorded in Volume 2065, Page 8, from which the Southwest corner of same bears North 89 deg. 35 min. West 1031.12 ft. and witnessed by a 48" hacked red oak bearing South 77 deg. West 19.4 ft.;

THENCE North 00 deg. 20 min. 56 sec. East with the East line of said 10.70 acre tract, a distance of 457.32 ft. to a 1/2" iron rod (set) for the Northeast corner of same;

THENCE North 89 deg. 24 min. 34 sec. West with the easterly North line or said 10.70 acre tract, a distance of 813.41 ft. to a 30" sweet gum at the easterly Northwest corner of same.

THENCE South 02 deg. 38 min. 49 sec. East with the northerly West line of said 10.70 acre tract, a distance of 54.19 ft. to a 1/2" iron rod (found) for an inner corner of same;

THENCE North 89 deg. 28 min. 39 sec. West with the westerly North line of said 10.70 acre tract, a distance of 208.82 ft. to the westerly Northwest corner of same, in the West line of said 80 acre First Tract, the West line of said Kasten Survey, the East line of the Mark Grigsby Survey, Abstract No. 395, the East line of that certain called 91.06 acre tract described in deed from Claudia Mae Barnes Adams to Thomas G. West and recorded In Volume 3273, Page 875, a 40" red oak (found) for witness bears South 89 deg. 28 min. 39 sec. East - 19.92 ft.;

**EXHIBIT "A" - PAGE 66 of 153**

Copy from re:SearchTX

THENCE North 02 deg. 23 min. 19 sec. East with said survey line, the West line of said 80 acre First Tract, the East line of said 91.06 acre tract and the East line of that certain called 228.313 acre tract described in a deed from Sylvia Anna Schronk to Dannat Rental, Inc. and recorded in Volume 7695, Page 106, a distance of 489.95 ft. to a 1/2" iron rod (set) for the Northwest corner of said 80 acre First Tract, the Southwest corner of said 80 acre Third Tract, the easterly Southwest corner of that certain called 22.302 acre Parcel 2 Tract 1 described in S.C.C. File No. R00017213 (2006);

THENCE South 88 deg. 29 min. 49 sec. East with the North line of said 80 acre First Tract, the South line of said 80 acre Third Tract and the easterly South line of said 22.302 acres, a distance of 48.60 ft. to the Southeast corner of same, in the centerline of County Road No. 2180;

THENCE Northerly with the centerline of County Road No. 2180 and the East line of the 22.302 acre tract as follows:

> North 07 deg. 22 min. 49 sec. East -207.44 ft.,
> North 04 deg. 31 min. 51 sec. East - 232.35 ft.,
> North 03 deg. 09 min. 44 sec. East- 65.82 ft.,
> North 04 deg. 09 min.35sec. East - 69.13 ft.,
> North 00 deg. 07 min. 27 sec. West - 85.03 ft.,
> North 06 deg. 07 min.31 sec. West-102.72 ft. and
> North 11 deg. 44 min. 07 sec. West-141.85 ft to the Northeast corner of same, in the North lines of said 80 acre Third Tract and the Kasten Survey, in the South line of the Daniel Barcroft Survey, Abstract No. 132;

THENCE South 88 deg. 30 min. 05 sec. East with the North line of said 80 acre Third Tract and Kasten Survey, the South line of the Daniel Barcroft Survey, Abstract No. 132, at 17.67 ft. pass a 1/2" iron rod (found) for reference, and continue a total distance of 231.35 ft. to a 1/2" iron rod (found) for the Southeast corner of the Thomas C. Parker 2.0 acre tract described in Volume 3261, Page 871;

THENCE North 89 deg. 48 min. 00 sec. East with the North line of said 80 acre Third Tract and Kasten Survey, the South line of the Daniel Barcroft Survey, a distance of 3078.90 ft. to a 1/2" iron rod (found) for the Southeast corner of same and the westerly Southwest corner of said Bickerstaff Survey and 125.00 acre tract;

Thence South 89 deg. 14 min. 43 sec. East with the Westerly South lines of the 125.00 acre tract and Bickerstaff Survey, the North lines of the Kasten Survey and 80 acre Third Tract a distance or 243.7S ft. to the place of beginning, containing 169.798 acres of land, more or less.

**EXHIBIT "A" - PAGE 67 of 153**

Copy from re:SearchTX

**Richard Winn**

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Monday, March 30, 2026 2:05 PM |
| **To:** | Richard Winn |
| **Subject:** | [EXTERNAL]This was what was posted at the courthouse. |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.







Copy from re:SearchTX





**EXHIBIT "A" - PAGE 69 of 153**

Copy from re:SearchTX



**EXHIBIT "A" - PAGE 70 of 153**

Copy from re:SearchTX



**SCHEEF & STONE**

SOLID COUNSEL

Bruce A. Stockard
Direct Dial: (214) 706-4226
bruce.stockard@solidcounsel.com

November 29, 2024

**VIA FIRST CLASS MAIL**

Andrea Irene Steele and Brandon Trace Steele, Trustees of
the Arroyo Picosa Revocable Trust
300 Crescent Ct., Ste 1350
Dallas, Texas  75201

Andrea Irene Steele and Brandon Trace Steele, Trustees of
the Arroyo Picosa Revocable Trust
10693 CR 2180
Whitehouse, Texas  75791

Re:   Promissory Note of May 27, 2022 (the "Note") by and between American State
Bank ("Lender") and the Arroyo Picosa Revocable Trust dated March 29, 2022
("Borrower"), Loan #404223470 (the "Loan")

Dear Andrea and Brandon:

This firm represents Lender in the above-referenced transaction. Thank you for your recent payment. Unfortunately, the Note is in default again. The monthly payments due in October and November have not been timely made. In order for the Borrower to become current on the Note $49,162.12 must be remitted to Lender within thirty (30) days from the date of this letter. The amount due includes Late Fees as set forth in the Note in the case of a payment default. In the event the above amount is not remitted within thirty (30) days, the Note will be accelerated, and Lender shall initiate any and all legal action available to it.

Please feel free to contact me or Joe Sowell at (972) 679-7464 if you have any questions.

Sincerely,

SCHEEF & STONE, L.L.P.

Bruce A. Stockard

21898.0102

cc:   Joe Sowell, American State Bank (*via email*)



500 North Akard • Suite 2700 • Dallas, Texas 75201 • Tel (214) 706-4200 • Fax (214) 706-4242
www.solidcounsel.com

**EXHIBIT "A" - PAGE 71 of 153**



EXHIBIT

F

Copy from re:SearchTX

## Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Friday, November 22, 2024 7:14 PM |
| **To:** | 'Peter Bennis' |
| **Cc:** | 'James W. Bowen' |
| **Subject:** | Mortgage Payment |

Peter,

Hope this message finds you well. I was making my mortgage payment in the drive through at the Beckham branch today at 5:45, ironically I was also on the phone with James and the lady in the window said that her supervisor told her that she could not accept my mortgage payment at this time. She was very polite and her name was Stacy Smith. Definitely nothing you need to worry about this weekend but please let me know when you can what I need to do to make my payment. Thanks so much, Brandon

All the best,

Brandon



Copy from re:SearchTX



**SCHEEF & STONE**
SOLID COUNSEL

Bruce A. Stockard
Direct Dial: (214) 706-4226
bruce.stockard@solidcounsel.com

December 6, 2024

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
AND
VIA FIRST CLASS MAIL**

Andrea Irene Steele and Brandon Trace Steele,
Trustees of the Arroyo Picosa Revocable Trust
300 Crescent Ct., Ste 1350
Dallas, Texas 75201

Andrea Irene Steele and Brandon Trace Steele,
Trustees of the Arroyo Picosa Revocable Trust
10693 CR 2180
Whitehouse, Texas 75791

Re:    Notice of Acceleration – Promissory Note of May 27, 2022 (the "Note") by and
between American State Bank ("Lender") and the Arroyo Picosa Revocable Trust
dated March 29, 2022 ("Borrower"), Loan #404223470 (the "Loan")

Dear Andrea and Brandon:

As you know, we represent the Lender.

We sent you a letter on behalf of the Lender dated October 22, 2024, notifying you of an Event of Default under the Note and giving you thirty (30) days to cure the default. More than thirty (30) days have passed and you have not cured the default. Additionally, the October and November monthly payments have not been made.

Please accept this letter as formal notice to you, that the maturity of the Note has been accelerated and the entire outstanding principal balance, together with all accrued but unpaid interest and other amounts lawfully owing under the Note, is now fully due and payable. Accordingly, demand is hereby made for the immediate payment of all such amounts. If the full amount of all outstanding obligations owed under the Note is not received within fifteen (15) days after the date of this letter, then the Lender shall initiate any and all legal action available to it.

500 North Akard • Suite 2700 • Dallas, Texas 75201 • Tel: (214) 706-4200 • Fax: (214) 706-4242
www.solidcounsel.com

**EXHIBIT "A" PAGE 73 of 153**


EXHIBIT
_H_

Copy from re:SearchTX

Andrea Irene Steele and Brandon Trace Steele, Trustees of
the Arroyo Picosa Revocable Trust
December 6, 2024
Page 2

Please feel free to contact Peter Bennis or Joe Sowell at (972) 679-7464 if you have any
questions.

Sincerely,

SCHEEF & STONE, L.L.P.

Bruce A. Stockard

21898.0102

cc:    Joe Sowell, American State Bank (*via email*)
       Peter Bennis, American State Bank (*via email*)

**EXHIBIT "A" - PAGE 74 of 153**                                    21898.0102

Copy from re:SearchTX

## SCHEEF & STONE
### SOLID COUNSEL

Bruce A. Stockard
Direct Dial: (214) 706-4226
bruce.stockard@solidcounsel.com

January 13, 2025

**VIA FIRST CLASS MAIL
AND EMAIL: BSTEELE@STEELERESOURCES.COM**

Andrea Irene Steele and Brandon Trace Steele,
Trustees of the Arroyo Picosa Revocable Trust
300 Crescent Ct., Ste 1350
Dallas, Texas  75201

Andrea Irene Steele and Brandon Trace Steele,
Trustees of the Arroyo Picosa Revocable Trust
10693 CR 2180
Whitehouse, Texas  75791

Re: Promissory Note of May 27, 2022 (the "Note") by and between American State Bank ("Lender") and the Arroyo Picosa Revocable Trust dated March 29, 2022 ("Borrower"), Loan #404223470 (the "Loan")

Dear Andrea and Brandon:

As you know, this firm represents Lender in the above-referenced matter.  Thank you for the most recent payment.  However, it does not satisfy the conditions required by the Lender for reinstatement of the Note and which was set forth in my letter dated December 23, 2024.

However, I have been instructed by Lender that it would still be willing to consider reinstating the Note if you were to meet certain conditions as a requirement before reinstatement would be put into effect.  As a condition to reinstatement and which will be set forth in the form of a Reinstatement and Modification Agreement with terms acceptable to the Lender in its  sole and absolute direction, you shall be required to send Lender $64,700.30, before January 31, 2025. Additionally, as a condition to reinstatement, you must produce evidence satisfactory to Lender of payment of the 2024 property taxes on the collateral for the Loan prior to January 30, 2025. Finally, upon request, you must allow Lender access to the Property for inspection and appraisal. As noted above, the amount due varies slightly on a per-diem basis.

As set forth above, it is a requirement of Lender that any and all required conditions to reinstatement be contained in a Modification and Reinstatement Agreement acceptable to Lender and if it is not executed by February 1, 2025, then Lender shall continue with all legal actions available to it at the current time.

**EXHIBIT
I**

Copy from re:SearchTX

Andrea Irene Steele and Brandon Trace Steele,
Trustees of the Arroyo Picosa Revocable Trust
January 13, 2025
Page 2

       If you have any questions regarding this letter, please do not hesitate to contact me if you have any questions.

                  Very truly yours,

                  SCHEEF & STONE, L.L.P.

                  Bruce A. Stockard

21898.0102

cc:    Peter Bennis, American State Bank (*via email*)

Copy from re:SearchTX

## Wire Transfer Instructions:

Receiving Bank:    **American State Bank**, (Arp, TX)
*Branch*:    5205 Old Jacksonville Hwy
Tyler, TX 75703

Receiving Bank:    **American State Bank**
Routing #:    **111 909 210**
Bank Location:    Arp, TX 75750

Credit Name:    _____

Credit Acct#:    _____

Special Instructions: **Attn: Ms. Jill Mason**

Copy from re:SearchTX

**Richard Winn**

---

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Monday, January 13, 2025 2:30 PM |
| **To:** | Bruce Stockard |
| **Subject:** | RE: |

I accept the terms of this letter, thank you. Would you mind also sending me a copy of the loans lender for 2024 please ? where the payments where applied etc. please? I no longer receive statements and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this ,matter.

All the best,

Brandon

---

**From:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Sent:** Monday, January 13, 2025 2:25 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Subject:**



**Bruce Stockard** PARTNER

**Scheef & Stone, LLP**

[www.solidcounsel.com](http://www.solidcounsel.com) | **214.706.4226**

Office: 214.706.4200 | Fax: 214.706.4242

500 North Akard Street, Suite 2700, Dallas, Texas 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxe

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are

EXHIBIT
J

Copy from re:SearchTX

hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**EXHIBIT "A" - PAGE 79 of 153**

Copy from re:SearchTX

**Richard Winn**

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Monday, January 13, 2025 2:31 PM |
| **To:** | Bruce Stockard |
| **Subject:** | RE: |

Additionally, could you please show me how this new payment request will be applied? thank you, Brandon

All the best,

Brandon

**From:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Sent:** Monday, January 13, 2025 2:25 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Subject:**

**Bruce Stockard** PARTNER

**Scheef & Stone, LLP**
**www.solidcounsel.com** | **214.706.4226**
Office: 214.706.4200  |  Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, Texas 75201


SCHEEF & STONE
SOLID COUNSEL

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxe


SCHEEF & STONE
SOLID COUNSEL

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

1

**EXHIBIT "A" - PAGE 80 of 153**

**EXHIBIT**
**K**

Copy from re:SearchTX

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

Copy from re:SearchTX

**Richard Winn**

| | |
|---|---|
| From: | Brandon Steele <bsteele@steeleresources.com> |
| Sent: | Friday, January 17, 2025 12:34 PM |
| To: | Bruce Stockard |
| Subject: | FW: |

Just following up here on the request of the 2024 payments  ledger/breakdown of past payments and the sources and uses of how the requested January payment will be applied. Thank you for the information. Brandon

All the best,

Brandon

**From:** Brandon Steele
**Sent:** Monday, January 13, 2025 2:30 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** RE:

I accept the terms of this letter, thank you. Would you mind also sending me a copy of the loans lender for 2024 please ? where the payments where applied etc. please? I no longer receive statements and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this ,matter.

All the best,

Brandon

**From:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Sent:** Monday, January 13, 2025 2:25 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Subject:**

**Bruce Stockard** PARTNER

**Scheef & Stone, LLP**
**www.solidcounsel.com** | **214.706.4226**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, Texas 75201



**SCHEEF & STONE**
SOLID COUNSEL

**EXHIBIT "A" - PAGE 82 of 153**



EXHIBIT
7

Copy from re:SearchTX

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxe



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

Copy from re:SearchTX

# Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Thursday, January 30, 2025 11:31 AM |
| **To:** | Bruce Stockard |
| **Subject:** | FW: |
| **Attachments:** | Loan Delinquent Notice - Arroyo Picosa Rev Trust (1.21.25).pdf |

Bruce,

This is my third request asking for basic information regarding my attached loan payment and to date I have not receive the requested information or even an acknowledgement of my email. As you know, ASB evidently stopped sending out loan payment request or statements last year to save dollars which I respect. However, I have simply asked for an allocation of payments for 2024 as well as a sources and uses for your payment request from your letter dated 1/13/25. As you can see, my estate attorneys received the attached requested voucher on January 21st after your letter that was sent on January 13th. As you can see, there is no allocation of principal to the payment, it deviated from your payment request of 1/13/25 and additionally the payment does not match the requested loan payment on the loan agreement. And since ASB no longer sends any kind of loan statements to its customers , or payment vouchers the only way I know to acquire this information is to ask for it. To date based on your lack of response ASB appears to be withholding this information from me which leaves me baffled. Additionally,  this payment request deviates from your request in your letter dated January 13th.

Finally, as I have requested several times before I am simply trying to reconcile the payments ASB received in 2024 and additionally , I have three different payment requests in my possession for the month of January. *As in most all my interactions with the banks management team in 2024 I am not asking for any special treatment as the 93% owner of American State Bank but merely the same level of courtesy, respect, access to basic information and communication that any customer/investor should receive.* Additionally, you not responding to my three emails leaves me confused based on pure professional courtesy. I look forward to your response.

All the best,

Brandon

**From:** Brandon Steele
**Sent:** Friday, January 17, 2025 12:34 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** FW:

Just following up here on the request of the 2024 payments  ledger/breakdown of past payments and the sources and uses of how the requested January payment will be applied. Thank you for the information. Brandon

All the best,

Brandon

**EXHIBIT
M**

Copy from re:SearchTX

**From:** Brandon Steele
**Sent:** Monday, January 13, 2025 2:30 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** RE:

I accept the terms of this letter, thank you. Would you mind also sending me a copy of the loans lender for 2024 please ? where the payments where applied etc. please? I no longer receive statements and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this ,matter.

All the best,

Brandon

**From:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Sent:** Monday, January 13, 2025 2:25 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Subject:**

**Bruce Stockard** PARTNER
**Scheef & Stone, LLP**
**www.solidcounsel.com | 214.706.4226**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, Texas 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxe



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

Copy from re:SearchTX

## Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Friday, January 31, 2025 12:50 PM |
| **To:** | Bruce Stockard; Peter Bennis |
| **Subject:** | FW: |
| **Attachments:** | Loan Delinquent Notice - Arroyo Picosa Rev Trust (1.21.25).pdf; Receipt_2025-01-31_125158.pdf |

Bruce/Peter,

My 4th attempt to get communication as your letter of 1/21 offered. Attached please see the receipt of paid property taxes per your request. Again, I have attached a loan payment notice after the letter dated on 1/13 and the numbers differ. Which is correct? Can I please see the breakdown of your requested amount and why it differs. The banks internal system has a number that differs from the other. Not saying it's wrong just want to know what the discrepancy is and a breakdown which by law I am entitled to. If I don't get a response by 2:00 Peter ill just come by your office and you can maybe pull it up on the computer and we can walk thought it. Please advise, Brandon

All the best,

Brandon

**From:** Brandon Steele
**Sent:** Thursday, January 30, 2025 11:31 AM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** FW:

Bruce,

This is my third request asking for basic information regarding my attached loan payment and to date I have not receive the requested information or even an acknowledgement of my email. As you know, ASB evidently stopped sending out loan payment request or statements last year to save dollars which I respect. However, I have simply asked for an allocation of payments for 2024 as well as a sources and uses for your payment request from your letter dated 1/13/25. As you can see, my estate attorneys received the attached requested voucher on January 21st after your letter that was sent on January 13th. As you can see, there is no allocation of principal to the payment, it deviated from your payment request of 1/13/25 and additionally the payment does not match the requested loan payment on the loan agreement. And since ASB no longer sends any kind of loan statements to its customers , or payment vouchers the only way I know to acquire this information is to ask for it. To date based on your lack of response ASB appears to be withholding this information from me which leaves me baffled. Additionally,  this payment request deviates from your request in your letter dated January 13th.

Finally, as I have requested several times before I am simply trying to reconcile the payments ASB received in 2024 and additionally , I have three different payment requests in my possession for the month of January.
*As in most all my interactions with the banks management team in 2024 I am not asking for any special treatment as the 93% owner of American State Bank but merely the same level of courtesy, respect, access to basic information and communication that any customer/investor should receive.* Additionally, you not

EXHIBIT "A" - PAGE 86 of 153

Copy from re:SearchTX

EXHIBIT

N

responding to my three emails leaves me confused based on pure professional courtesy. I look forward to your response.

All the best,

Brandon

---

**From:** Brandon Steele
**Sent:** Friday, January 17, 2025 12:34 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** FW:

Just following up here on the request of the 2024 payments ledger/breakdown of past payments and the sources and uses of how the requested January payment will be applied. Thank you for the information. Brandon

All the best,

Brandon

---

**From:** Brandon Steele
**Sent:** Monday, January 13, 2025 2:30 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** RE:

I accept the terms of this letter, thank you. Would you mind also sending me a copy of the loans lender for 2024 please ? where the payments where applied etc. please? I no longer receive statements and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this ,matter.

All the best,

Brandon

---

**From:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Sent:** Monday, January 13, 2025 2:25 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Subject:**

**Bruce Stockard** PARTNER
**Scheef & Stone, LLP**
**www.solidcounsel.com | 214.706.4226**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, Texas 75201

**EXHIBIT "A" - PAGE 87 of 153**

Copy from re:SearchTX



**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxe



**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

Copy from re:SearchTX

L O A N   D E L I N Q U E N T   P A Y M E N T   N O T I C E   PGB

AMERICAN STATE BANK
P.O. BOX 100
ARP, TX 75750
(903) 859-2211

NOTICE DATE 1/21/25
LOAN#       404223470

PAYMENT DUE DATE: 12/27/24

OUR RECORDS INDICATE YOUR PAYMENT STILL HAS NOT BEEN RECEIVED. THE AMOUNT PAST
DUE IS INDICATED BELOW. TO AVOID FURTHER ACTION, MAKE YOUR PAYMENT IMMEDIATELY

WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS,
MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR
CREDIT REPORT.

ARROYO PICOSA REVOCABLE TRUST
BRANDON STEELE
300 CRESCENT CT STE 1350
DALLAS TX  75201

| | |
|---|---:|
| CURRENT BALANCE | $3,807,599.92 |
| PRINCIPAL DUE | $0.00 |
| INTEREST DUE | $13,039.81 |
| LATE CHG/MISC DUE | $10,672.40 |
| TOTAL AMOUNT DUE | $23,712.21 |

YOU MAY OBTAIN HOME OWNERSHIP COUNSELING THROUGH (HUD) BY CALLING 1-800-569-4287
FOR A LIST OF HUD APPROVED NONPROFIT ORGANIZATIONS THAT SERVE YOUR AREA.

**EXHIBIT "A" - PAGE 89 of 153**

Copy from re:SearchTX

# Smith County Tax Office

Printed: 1/31/2025    12:17:31PM

Multiple Account Receipt

| Remitted By: | Cash/Check #: 1057 | Amount Paid: $60046.24 |
|---|---|---|

BTS ENTERPRISESES INC
5555 OLD JACKSONVILLE HWY
TYLER, TX 75703

---

**100000054000003000**    Acres: 166.79800    Property Location: 0010693 C R 2180

Owner: PICOSA ARROYO REVOCABLE TRUST BRANDON TRACE &
ANDREA IRENE STEEL CO-TRUSTEES
10693 COUNTY ROAD 2180
WHITEHOUSE,TX 75791

Legal: ABST A0540 C KASTEN|TRACT 3 (PT 169.798AC/ SEE TR 3.2 & 3.3)

| Year | Tax Unit | Taxable Value | Tax Rate Per $100 | Payment Date | Amount Paid |
|---|---|---|---|---|---|
| 2024 | SMITH CO EMER SERV#2 | $1,195,576.00 | $0.070364 | 01/31/2025 | $841.26 |
| 2024 | SMITH COUNTY | $1,195,576.00 | $0.364231 | 01/31/2025 | $4,354.66 |
| 2024 | WHITEHOUSE I.S.D. | $1,195,576.00 | $0.924900 | 01/31/2025 | $11,057.88 |

Exemptions:

$16,253.80

---

**100000054000003002**    Acres: 1.00000    Property Location: 0010693 C R 2180

Owner: PICOSA ARROYO REVOCABLE TRUST BRANDON TRACE &
ANDREA IRENE STEEL CO-TRUSTEES
10693 COUNTY ROAD 2180
WHITEHOUSE,TX 75791

Legal: ABST A0540 C KASTEN|TRACT 3.2 (PT 169.798AC/ SEE TR 3 & 3.3)

| Year | Tax Unit | Taxable Value | Tax Rate Per $100 | Payment Date | Amount Paid |
|---|---|---|---|---|---|
| 2024 | SMITH CO EMER SERV#2 | $521,098.00 | $0.070364 | 01/31/2025 | $366.67 |
| 2024 | SMITH COUNTY | $521,098.00 | $0.364231 | 01/31/2025 | $1,898.00 |
| 2024 | WHITEHOUSE I.S.D. | $521,098.00 | $0.924900 | 01/31/2025 | $4,819.63 |

Exemptions:

$7,084.30

---

**100000054000003003**    Acres: 2.00000    Property Location: 0010693 C R 2180

Owner: PICOSA ARROYO REVOCABLE TRUST BRANDON TRACE &
ANDREA IRENE STEEL CO-TRUSTEES
10693 COUNTY ROAD 2180
WHITEHOUSE,TX 75791

Legal: ABST A0540 C KASTEN|TRACT 3.3 (PT 169.798AC/ SEE TR 3 & 3.2)

| Year | Tax Unit | Taxable Value | Tax Rate Per $100 | Payment Date | Amount Paid |
|---|---|---|---|---|---|
| 2024 | SMITH CO EMER SERV#2 | $2,768,163.00 | $0.070364 | 01/31/2025 | $1,947.79 |
| 2024 | SMITH COUNTY | $2,768,163.00 | $0.364231 | 01/31/2025 | $10,082.51 |
| 2024 | WHITEHOUSE I.S.D. | $2,668,163.00 | $0.924900 | 01/31/2025 | $24,677.84 |

Exemptions:

$36,708.14

---

MultipleReceipts.rpt    V1.2

Copy from re:SearchTX

| Property Account Number | | Gary B. Barber | Property Description | |
|---|---|---|---|---|
| 100000054000003000 | | Smith County<br>Tax Assessor-Collector | **Location:** 0010693 C R 2180 | |

**Owner**

PICOSA ARROYO REVOCABLE TRUST
BRANDON TRACE & ANDREA IRENE STEEL
CO-TRUSTEES
10693 COUNTY ROAD 2180
WHITEHOUSE TX 75791

**Acres:** 166.798
**Legal:** ABST A0540 C KASTEN TRACT 3 (P T 169.798AC/ SEE TR 3.2 & 3.3)

## 2024 Property Tax Statement   Appraisal District Number: R097339

**Exemptions:**

**Assessment Ratio: 100%**

| Improvement Market Value | Land Market Value | Non-Homesite Improvement | Non-homesite Land | Ag Value | Mineral Value | Personal Property | Total Market Value |
|---|---|---|---|---|---|---|---|
| 0 | 0 | 61,016 | 1,134,560 | 0 | 0 | 0 | 1,195,576 |

| Taxing Entities | Exemption/Value Limits | Taxable Value | Tax Rate Per $100 | Base Tax |
|---|---|---|---|---|
| SMITH CO EMER SERV#2 | 0 | 1,195,576 | 0.070364 | 841.26 |
| SMITH COUNTY | 0 | 1,195,576 | 0.364231 | 4,354.66 |
| WHITEHOUSE I.S.D. | 0 | 1,195,576 | 0.924900 | 11,057.88 |

*ADDITIONAL COUNTY SALES TAX REDUCED YOUR COUNTY AD VALOREM TAX BY $1447.42.

| TOTAL BASE TAX | 16,253.80 |
|---|---|
| **TOTAL AMOUNT DUE** | **$16,253.80** |

IF YOU ARE 65 YEARS OF AGE OR ARE DISABLED, AND YOU OCCUPY THE PROPERTY  DESCRIBED IN THIS DOCUMENT AS YOUR RESIDENCE HOMESTEAD, YOU SHOULD  CONTACT THE APPRAISAL DISTRICT REGARDING ANY ENTITLEMENT YOU MAY HAVE TO A POSTPONEMENT IN THE PAYMENT OF THESE TAXES.

PARTIAL PAYMENTS ARE ACCEPTED. THE SMITH COUNTY TAX OFFICE DOES NOT DETERMINE LEGAL OWNERSHIP OF PROPERTY, ESTABLISH APPRAISED VALUE OF PROPERTY, GRANT EXEMPTIONS OR ADOPT TAX RATES.

The deadline for paying 2024 property taxes without penalty & interest is January 31, 2025.

Scan the QR code below or visit our website for echeck and credit card payments

echeck  **VISA**  mastercard  DISC@VER

https://publictax.smith-county.com
There is no charge for eChecks. Debit cards have a flat rate convenience fee of $3.95 and credit cards a 2.5% convenience fee of which the county retains no portion.

If a mortgage company pays your property taxes, please forward this statement so they can make payment before the deadline.

This statement reflects the 2024 tax year only.  Delinquent taxes (if any) are not included.

The Post Office cancellation mark is considered the date of payment if it is sent properly addressed with postage prepaid.
If it is near the deadline, you may want to take the envelope inside the Post Office to ensure it receives a cancellation mark of January 31 or prior. If payment is made by common carrier such as UPS or FedEx, the receipt date shown by the carrier of when it was in their possession will determine the date of payment.

Property owners who qualify under the Tax Code for an Over 65 exemption, disabled exemption, or disabled veteran's exemption have the option to pay their current taxes due on their residence homestead in four equal installments. You must pay 1/4 of the amount of taxes due by the deadline and note "installment payment" on the payment. If paying online, please select the "Quarter Pay" option. The second payment is due by March 31, the third payment is due by May 31 and the last payment by July 31 to

**EXHIBIT "A" - PAGE 91 of 153**

Copy from re:SearchTX

| Property Account Number | | Gary B. Barber | Property Description | |
|---|---|---|---|---|
| **100000054000003003** | | Smith County | Location: 0010693 C R 2180 | |

**Gary B. Barber**
Smith County
**Tax Assessor-Collector**

| Owner |
|---|
| PICOSA ARROYO REVOCABLE TRUST |
| BRANDON TRACE & ANDREA IRENE STEEL |
| CO-TRUSTEES |
| 10693 COUNTY ROAD 2180 |
| WHITEHOUSE TX 75791 |

Location: 0010693 C R 2180

Acres: 2

Legal: ABST A0540 C KASTEN TRACT 3.3
(PT 169.798AC/ SEE TR 3 & 3.2)

**2024 Property Tax Statement** Appraisal District Number: R199181

| Exemptions: General Homestead | Assessment Ratio: 100% |
|---|---|

| Improvement Market Value | Land Market Value | Non-Homesite Improvement | Non-homesite Land | Ag Value | Mineral Value | Personal Property | Total Market Value |
|---|---|---|---|---|---|---|---|
| 2,754,955 | 13,208 | 0 | 0 | 0 | 0 | 0 | 2,768,163 |

| Taxing Entities | Exemption/Value Limits | Taxable Value | Tax Rate Per $100 | Base Tax |
|---|---|---|---|---|
| SMITH CO EMER SERV#2 | 0 | 2,768,163 | 0.070364 | 1,947.79 |
| SMITH COUNTY | 0 | 2,768,163 | 0.364231 | 10,082.51 |
| WHITEHOUSE I.S.D. | 100,000 | 2,668,163 | 0.924900 | 24,677.84 |

---

*ADDITIONAL COUNTY SALES TAX REDUCED YOUR COUNTY AD VALOREM TAX BY $3351.28.

| TOTAL BASE TAX | 36,708.14 |
|---|---|
| **TOTAL AMOUNT DUE** | **$36,708.14** |

IF YOU ARE 65 YEARS OF AGE OR ARE DISABLED, AND YOU OCCUPY THE PROPERTY DESCRIBED IN THIS DOCUMENT AS YOUR RESIDENCE HOMESTEAD, YOU SHOULD CONTACT THE APPRAISAL DISTRICT REGARDING ANY ENTITLEMENT YOU MAY HAVE TO A POSTPONEMENT IN THE PAYMENT OF THESE TAXES.

PARTIAL PAYMENTS ARE ACCEPTED. THE SMITH COUNTY TAX OFFICE DOES NOT DETERMINE LEGAL OWNERSHIP OF PROPERTY, ESTABLISH APPRAISED VALUE OF PROPERTY, GRANT EXEMPTIONS OR ADOPT TAX RATES.

The deadline for paying 2024 property taxes without penalty & interest is January 31, 2025.

Scan the QR code below or visit our website
for echeck and credit card payments

echeck   VISA   mastercard   DISCOVER

https://publictax.smith-county.com
There is no charge for eChecks. Debit cards have a flat rate convenience fee of $3.95 and credit cards a 2.5% convenience fee of which the county retains no portion.

If a mortgage company pays your property taxes, please forward this statement so they can make payment before the deadline.

This statement reflects the 2024 tax year only. Delinquent taxes (if any) are not included.

**The Post Office cancellation mark is considered the date of payment if it is sent properly addressed with postage prepaid.**
If it is near the deadline, you may want to take the envelope inside the Post Office to ensure it receives a cancellation mark of January 31 or prior. If payment is made by common carrier such as UPS or FedEx, the receipt date shown by the carrier of when it was in their possession will determine the date of payment.

Property owners who qualify under the Tax Code for an Over 65 exemption, disabled exemption, or disabled veteran's exemption have the option to pay their current taxes due on their residence homestead in four equal installments. You must pay 1/4 of the amount of taxes due by the deadline and note "installment payment" on the payment. If paying online, please select the "Quarter Pay" option. The second payment is due by March 31, the third payment is due by May 31 and the last payment by July 31 to

**EXHIBIT "A" - PAGE 92 of 153**

Copy from re:SearchTX

Bruce Stockard

500 N. Akard, Suite 2700

Dallas, TX 75201


Mr. Stockard,


Per your request I am attaching this letter to the four other correspondence that I have sent to you and to Mr. Bennis. I have requested clarification to my balance as well as asking for correct monthly payment amount of my mortgage as you can see it appears to be incorrect. Finally, after not responding to you I spoke to Peter Bennis on February 1st and he apologized for you not responding to my correspondence. He also said there was a payment discrepancy due to the fact that the loan was on non-accrual and that he would get back to me with a reconciliation and payment information. To date I have received nothing.

I have received no payment notice nor balance information and as I told Mr. Bennis I have no idea what the payment amount should be. As I told you on the phone there is no reference to an amount owed or even a balance owed in this letter. I am blind and need the banks assistance int telling me what is owed for the 5th request. Please immediately take the foreclosure notice down to avoid escalation.


Thantk you,


Brandon Steele



**EXHIBIT "A" - PAGE 93 of 153**

Copy from re:SearchTX

## <u>NOTICE OF FORECLOSURE SALE</u>

Notice is hereby given of a public nonjudicial foreclosure sale.

1.　<u>Property To Be Sold</u>.  The property to be sold is described as follows:

All property (real, personal or otherwise) described in the Deed of Trust, including, but not limited to, the real property described as being **situated in Smith County, Texas, as more particularly described on Exhibit "A" attached hereto and made a part hereof,** together with the rights, appurtenances and improvements thereto and certain other personal property as more particularly described in the Deed of Trust referenced herein.

2.　<u>Date, Time, and Place of Sale.</u>  The sale is scheduled to be held at the following date, time, and place:

Date:　**Tuesday, May 6, 2025**

Time:　The sale shall be held between the hours of **10:00 A.M. and 1:00 P.M.**

Place:　**On the steps of the Smith County Courthouse in Tyler, Texas**

The Deed of Trust permits the beneficiary to postpone, withdraw, or reschedule the sale for another day.  In that case, the trustee or substitute trustee under the Deed of Trust need not appear at the date, time, and place of a scheduled sale to announce the postponement, withdrawal, or rescheduling. Notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Texas Property Code.  Such reposting or refiling may be after the date originally scheduled for this sale.

3.　<u>Terms of Sale</u>.  The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the Deed of Trust permitting the beneficiary thereunder to have the bid credited to the note up to the amount of the unpaid debt secured by the Deed of Trust at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the Deed of Trust.  Prospective bidders

<u>Notice of Foreclosure Sale – Page 1</u>

**EXHIBIT "A" - PAGE 94 of 153**


EXHIBIT
P

Copy from re:SearchTX

are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

4.   Type of Sale. The sale is a nonjudicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by the Deed of Trust, Security Agreement and Financing Statement. ("Deed of Trust") executed by Brandon Trace Steele and Andrea Irene Steele, Trustees of Arroyo Picosa Revocable Trust (the "Borrower"), to Kelly Sanders, Trustee for the benefit of American State Bank dated effective as of May 27, 2022, and filed for record in the Real Property Records of Smith County, Texas ("Deed of Trust").

5.   Obligations Secured. The Deed of Trust provides that it secures the payment of the indebtedness and obligations therein described (collectively the "Obligations") including but not limited to a Promissory Note in the original principal amount of $4,000,000.00 ("Note"), executed by Borrower, and payable to the order of American State Bank, and all renewals, modifications and extensions of the Note. American State Bank is the current owner and holder of the Note and the Obligations and is the beneficiary under the Deed of Trust.

6.   Default and Request To Act. Default has occurred in the payment of the Indebtedness under the Note and the Deed of Trust, and the beneficiary has requested me, or other Substitute Trustee, to conduct this sale. Notice is given that before the sale the beneficiary may appoint another person as substitute trustee to conduct the sale.

**Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active military duty, including active duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Notice of Foreclosure Sale – Page 2   **EXHIBIT "A" - PAGE 95 of 153**

Copy from re:SearchTX

DATED _April 10_____, 2025.

_Bruce A. Stockard_

Bruce A. Stockard
500 N. Akard, Suite 2700
Dallas, Texas 75201
Telephone: (214) 706-4226

STATE OF TEXAS           §
                         §
COUNTY OF DALLAS         §

     The foregoing instrument was acknowledged before me by Bruce A. Stockard on the __10__ day of ____April____, 2025.



LORETTA S. FORBEY
My Notary ID # 125170438
Expires January 19, 2029

_Loretta S. Forbey_
Notary Public, State of Texas

[S E A L]

Notice of Foreclosure Sale – Signature Page

Copy from re:SearchTX

**Richard Winn**

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Wednesday, March 25, 2026 1:14 PM |
| **To:** | Richard Winn |
| **Subject:** | [EXTERNAL]Foreclosure Steele Correspondence |

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

All the best,

Brandon

**From:** Andrew Ryan <andy@ryanlawpartners.com>
**Sent:** Tuesday, April 15, 2025 5:05 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Cc:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>; Peter Bennis <pbennis@asb.com>; Ken Baxter <baxter75703@gmail.com>
**Subject:** Re: FW:

Bruce,

I just left you a voicemail.  I represent Brandon Steele.  I'm calling to find out: (1) what amount ASB claims is owed so that Brandon can pay it and have the foreclosure notice taken down; and (2) resolve the reconciliation and auto-debit issues so that lawyers don't have to get involved in what should be the routine auto-debit of his mortgage.  Please give me a call back at 214.347.7360 (office) or 214.417.0076 (cell).  As you know, time is of the essence given the foreclosure notice.  If we don't receive a prompt response, Brandon will have to pursue all other available options, including seeking a TRO against the foreclosure sale.

Best,
Andy

On Tue, Apr 15, 2025 at 4:30 PM Brandon Steele <bsteele@steeleresources.com> wrote:

Mr. Stockard,

Please see the letter per your request.

1

**EXHIBIT "A" - PAGE 97 of 153**

EXHIBIT
Q
tabbies

Copy from re:SearchTX

All the best,


Brandon

---

**From:** Brandon Steele
**Sent:** Friday, January 31, 2025 12:50 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>; Peter Bennis <pbennis@asb.com>
**Subject:** FW:


Bruce/Peter,


My 4th attempt to get communication as your letter of 1/21 offered. Attached please see the receipt of paid property taxes per your request. Again, I have attached a loan payment notice after the letter dated on 1/13 and the numbers differ. Which is correct? Can I please see the breakdown of your requested amount and why it differs. The banks internal system has a number that differs from the other. Not saying it's wrong just want to know what the discrepancy is and a breakdown which by law I am entitled to. If I don't get a response by 2:00 Peter ill just come by your office and you can maybe pull it up on the computer and we can walk thought it. Please advise, Brandon


All the best,


Brandon

---

**From:** Brandon Steele
**Sent:** Thursday, January 30, 2025 11:31 AM

Copy from re:SearchTX

**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** FW:

Bruce,

This is my third request asking for basic information regarding my attached loan payment and to date I have not receive the requested information or even an acknowledgement of my email. As you know, ASB evidently stopped sending out loan payment request or statements last year to save dollars which I respect. However, I have simply asked for an allocation of payments for 2024 as well as a sources and uses for your payment request from your letter dated 1/13/25. As you can see, my estate attorneys received the attached requested voucher on January 21st after your letter that was sent on January 13th. As you can see, there is no allocation of principal to the payment, it deviated from your payment request of 1/13/25 and additionally the payment does not match the requested loan payment on the loan agreement. And since ASB no longer sends any kind of loan statements to its customers , or payment vouchers the only way I know to acquire this information is to ask for it. To date based on your lack of response ASB appears to be withholding this information from me which leaves me baffled. Additionally,  this payment request deviates from your request in your letter dated January 13th.

Finally, as I have requested several times before I am simply trying to reconcile the payments ASB received in 2024 and additionally , I have three different payment requests in my possession for the month of January.

*As in most all my interactions with the banks management team in 2024* I am not asking for any special treatment as the 93% owner of American State Bank but merely the same level of courtesy, respect, access to basic information and communication that any customer/investor should receive. Additionally, you not responding to my three emails leaves me confused based on pure professional courtesy. I look forward to your response.

All the best,

Brandon

3

**EXHIBIT "A" - PAGE 99 of 153**

Copy from re:SearchTX

**From:** Brandon Steele
**Sent:** Friday, January 17, 2025 12:34 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** FW:

Just following up here on the request of the 2024 payments ledger/breakdown of past payments and the sources and uses of how the requested January payment will be applied. Thank you for the information. Brandon

All the best,

Brandon

---

**From:** Brandon Steele
**Sent:** Monday, January 13, 2025 2:30 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Subject:** RE:

I accept the terms of this letter, thank you. Would you mind also sending me a copy of the loans lender for 2024 please ? where the payments where applied etc. please? I no longer receive statements and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this ,matter.

All the best,

Brandon

Copy from re:SearchTX

**From:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Sent:** Monday, January 13, 2025 2:25 PM
**To:** Brandon Steele <bsteele@steeleresources.com>
**Subject:**

## Bruce Stockard PARTNER

**Scheef & Stone, LLP**

**www.solidcounsel.com** | **214.706.4226**

Office: 214.706.4200  |  Fax: 214.706.4242

500 North Akard Street, Suite 2700, Dallas, Texas 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxe



Copy from re:SearchTX

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

--
Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Boulevard, Suite 1450
Dallas, Texas 75219
(214) 347-7377 (office)
(214) 347-7360 (direct)
(214) 417-0076 (mobile)

Copy from re:SearchTX

## Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Wednesday, March 25, 2026 1:15 PM |
| **To:** | Richard Winn |
| **Subject:** | [EXTERNAL]Foreclosure Steele Correspondence |
| **Attachments:** | Loan Delinquent Notice - Arroyo Picosa Rev Trust (1.21.25).pdf; Receipt_2025-01-31_ 125158.pdf |

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

All the best,

Brandon

**From:** Andrew Ryan <andy@ryanlawpartners.com>
**Sent:** Wednesday, April 16, 2025 12:17 PM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Cc:** Brandon Steele <bsteele@steeleresources.com>
**Subject:** Re: Payoff Statements and Tax Statements

Bruce,

Could you please also provide the following documents?

1 – The reconciliation statements that Brandon's emails have previously asked for.

2 – The amount currently past due on the loan. Not the accelerated amount, but the amount related to allegedly missed payments.

3 – The basis for the interest calculation. Neither the payoff statement nor the daily rate makes much sense. From the payoff statement, there's around $260,000 in interest that is supposedly due. The loan is for roughly $4M; that's about 1 year's interest at 6.25%. But the documents attached to Brandon's prior email show (re-attached here), as of the payment due on 12/27/24, the interest outstanding was $13,039.81—and no principal, so the principal had not been accelerated. So how did a year's worth of interest accrue between January 21st and today? Also, the daily interest amount is over $1,800, which would suggest an interest rate on this mortgage of 18%.

4 – The basis for the tax calculation. Brandon previously sent you his receipt from January 31, 2025 for paying the 2024 property tax. I'm attaching it here again. Yet the documents you sent me allege the property taxes for 2024 haven't been paid.

5 – Any other copies of a Loan Delinquent Notice (like the one attached) that were sent to Brandon after January 21, 2025.

**EXHIBIT**

**B**

Copy from re:SearchTX

6 - A copy of all notices of acceleration sent to Brandon and proof of receipt.

7 – A copy of the written notice, sent by certified mail, stating that the Trust is in default and giving the Trust at least 20 days to cure the default before the notice of sale.

If we don't get these documents, we will assume the Bank does not have them, as Brandon has been asking for documents for months (see his emails to you yesterday) and none were provided.  I have asked Brandon for these documents.  He is checking his records again but, as of today, does not believe any were sent to him.

Best,
Andy

On Wed, Apr 16, 2025 at 11:15 AM Bruce Stockard <Bruce.Stockard@solidcounsel.com> wrote:

Per your request .Thanks.

**Bruce Stockard** PARTNER

**Scheef & Stone, LLP**

**www.solidcounsel.com** | **214.706.4226**

Office: 214.706.4200  |  Fax: 214.706.4242

500 North Akard Street, Suite 2700, Dallas, Texas 75201



**SCHEEF & STONE**
SOLID COUNSEL

**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

Copy from re:SearchTX

**From:** Sharon Warren <Sharon.Warren@


SCHEEF & STONE
SOLID COUNSEL

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

--

Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Boulevard, Suite 1450
Dallas, Texas 75219
(214) 347-7377 (office)
(214) 347-7360 (direct)
(214) 417-0076 (mobile)

**EXHIBIT "A" - PAGE 105 of 153**

Copy from re:SearchTX

## Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Wednesday, March 25, 2026 1:15 PM |
| **To:** | Richard Winn |
| **Subject:** | [EXTERNAL]Foreclosure Steele Correspondence |

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

All the best,

Brandon

**From:** Andrew Ryan <andy@ryanlawpartners.com>
**Sent:** Monday, April 21, 2025 10:38 AM
**To:** Bruce Stockard <Bruce.Stockard@solidcounsel.com>
**Cc:** Brandon Steele <bsteele@steeleresources.com>
**Subject:** Re: Payoff Statements and Tax Statements

Bruce,

It's been 5 days and we haven't heard anything back.  At this point, I'm taking your silence as an admission by the bank has none of these documents and we will be making that representation to a Court in a motion for temporary restraining order.  If you contend otherwise, or if the bank opposes the TRO, please let me know immediately.

Best,
Andy

On Wed, Apr 16, 2025 at 12:16 PM Andrew Ryan <andy@ryanlawpartners.com> wrote:

Bruce,

Could you please also provide the following documents?

1 – The reconciliation statements that Brandon's emails have previously asked for.

2 – The amount currently past due on the loan.  Not the accelerated amount, but the amount related to allegedly missed payments.

3 – The basis for the interest calculation.  Neither the payoff statement nor the daily rate makes much sense.  From the payoff statement, there's around $260,000 in interest that is supposedly due.  The loan is for roughly $4M; that's about 1 year's interest at 6.25%.  But the documents attached to Brandon's prior email show (re-attached here), as of the payment due on 12/27/24, the interest outstanding was $13,039.81—and no

EXHIBIT
S

1

**EXHIBIT "A" - PAGE 106 of 153**

Copy from re:SearchTX

principal, so the principal had not been accelerated.  So how did a year's worth of interest accrue between January 21st and today?  Also, the daily interest amount is over $1,800, which would suggest an interest rate on this mortgage of 18%.

4 – The basis for the tax calculation.  Brandon previously sent you his receipt from January 31, 2025 for paying the 2024 property tax.  I'm attaching it here again.  Yet the documents you sent me allege the property taxes for 2024 haven't been paid.

5 – Any other copies of a Loan Delinquent Notice (like the one attached) that were sent to Brandon after January 21, 2025.

6 - A copy of all notices of acceleration sent to Brandon and proof of receipt.

7 – A copy of the written notice, sent by certified mail, stating that the Trust is in default and giving the Trust at least 20 days to cure the default before the notice of sale.

If we don't get these documents, we will assume the Bank does not have them, as Brandon has been asking for documents for months (see his emails to you yesterday) and none were provided.  I have asked Brandon for these documents.  He is checking his records again but, as of today, does not believe any were sent to him.

Best,
Andy

On Wed, Apr 16, 2025 at 11:15 AM Bruce Stockard <Bruce.Stockard@solidcounsel.com> wrote:

Per your request .Thanks.

**Bruce Stockard** PARTNER

**Scheef & Stone, LLP**

**www.solidcounsel.com | 214.706.4226**

Office: 214.706.4200 | Fax: 214.706.4242

500 North Akard Street, Suite 2700, Dallas, Texas 75201



Copy from re:SearchTX

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Sharon Warren <Sharon.Warren@



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

--
Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Boulevard, Suite 1450
Dallas, Texas 75219
(214) 347-7377 (office)
(214) 347-7360 (direct)
(214) 417-0076 (mobile)

--
Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Boulevard, Suite 1450
Dallas, Texas 75219
(214) 347-7377 (office)

Copy from re:SearchTX

(214) 347-7360 (direct)
(214) 417-0076 (mobile)

Copy from re:SearchTX

L O A N   D E L I N Q U E N T   P A Y M E N T   N O T I C E   PGB

AMERICAN STATE BANK
P.O. BOX 100
ARP, TX 75750
(903) 859-2211

NOTICE DATE  1/21/25
LOAN#      404223470

PAYMENT DUE DATE:  12/27/24
OUR RECORDS INDICATE YOUR PAYMENT STILL HAS NOT BEEN RECEIVED.  THE AMOUNT PAST
DUE IS INDICATED BELOW.  TO AVOID FURTHER ACTION, MAKE YOUR PAYMENT IMMEDIATELY

WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS,
MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR
CREDIT REPORT.

ARROYO PICOSA REVOCABLE TRUST
BRANDON STEELE
300 CRESCENT CT STE 1350
DALLAS TX  75201

| | |
|---|---|
| CURRENT BALANCE | $3,807,599.92 |
| PRINCIPAL DUE | $0.00 |
| INTEREST DUE | $13,039.81 |
| LATE CHG/MISC DUE | $10,672.40 |
| TOTAL AMOUNT DUE | $23,712.21 |

YOU MAY OBTAIN HOME OWNERSHIP COUNSELING THROUGH(HUD) BY CALLING 1-800-569-4287
FOR A LIST OF HUD APPROVED NONPROFIT ORGANIZATIONS THAT SERVE YOUR AREA.



EXHIBIT
7

**EXHIBIT "A" - PAGE 110 of 153**

Copy from re:SearchTX

**AMERICAN STATE BANK**
P.O. BOX 100
ARP, TX 75750
(903)859-2211



## INDIVIDUAL LOAN ACTIVITY STATEMENT

**ARROYO PICOSA REVOCABLE TRUST**
BRANDON STEELE
300 CRESCENT CT STE 1350
DALLAS TX  75201

### General Information

| | | | |
|---|---|---|---|
| Account Number: | ▮470 | Customer Number: | A0017550 |
| Main Phone: | | Alternate Phone: | |
| Loan Term: | 66 | Loan Type: | HOME MORTGAGE INSTAL |
| Interest Rate: | 18.0000 % | Origination Date: | 05/27/2022 |

Loan Officer:  PETER G. BENNIS
Collateral:  377 - RRE 1-4 FAMILY (PRIMARY RESIDENCE)
Call Report:  ALL OTHERS LOANS SECURED BY 1-4 FAMILY RESIDENTIAL PROPERTY
Loan Purpose:  PURCHASE PRIMARY RESIDENCE (P)  *Trust Loan*

### Balance & Payment Information

| | | | |
|---|---|---|---|
| Original Amount: | $4,000,000.00 | Payment Due Date: | ▮ |
| Current Balance: | $3,877,883.09 | Payment Amount: | ▮ |
| Accrued Interest: | $814,683.71 | Payment Type: | ▮ |
| Daily Per Diem: | $1,912.38070 | | |

### Loan History

| Posting Date | Transaction Description | | Amount | Principal Balance |
|---|---|---|---|---|
| 05/27/2022 | PRINCIPAL ADVANCE | 0.0000 % | $4,000,000.00 | $4,000,000.00 |
| 05/27/2022 | PAYMENT AMOUNT | 0.0000 % | ($23,981.52) | $4,000,000.00 |
| 06/30/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $4,000,000.00 |
| 06/30/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,835.61) | $4,000,000.00 |
| 06/30/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,145.91) | $3,993,854.09 |
| 07/29/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,993,854.09 |
| 07/29/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,236.41) | $3,993,854.09 |
| 07/29/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,745.11) | $3,987,108.98 |
| 09/12/2022 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,987,108.98 |
| 09/19/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($25,180.60) | $3,987,108.98 |

February 2, 2026

EXHIBIT
**4**

Page: 1

**EXHIBIT "A" - PAGE 111 of 153**

Copy from re:SearchTX

| Date | Description | Rate | Amount | Balance |
|---|---|---|---|---|
| 09/19/2022 | LATE CHARGE SPLIT OUT | 0.0000 % | ($1,199.08) | $3,987,108.98 |
| 09/19/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,780.07) | $3,987,108.98 |
| 09/19/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,201.45) | $3,980,907.53 |
| 10/11/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,980,907.53 |
| 10/11/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,778.14) | $3,980,907.53 |
| 10/11/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,203.38) | $3,974,704.15 |
| 10/17/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,974,704.15 |
| 10/17/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,156.48) | $3,974,704.15 |
| 10/17/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,825.04) | $3,967,879.11 |
| 10/19/2022 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $7.13 | $3,967,879.11 |
| 10/19/2022 | INTEREST PAYMENT REVERSAL | 0.0000 % | $17,778.14 | $3,967,879.11 |
| 10/19/2022 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $6,203.38 | $3,974,082.49 |
| 11/14/2022 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,974,082.49 |
| 11/30/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($48,540.46) | $3,974,082.49 |
| 11/30/2022 | LATE CHARGE SPLIT OUT | 0.0000 % | ($577.42) | $3,974,082.49 |
| 11/30/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,156.48) | $3,974,082.49 |
| 11/30/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,203.38) | $3,967,879.11 |
| 11/30/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($18,346.16) | $3,967,879.11 |
| 11/30/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($5,635.36) | $3,962,243.75 |
| 11/30/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($621.66) | $3,961,622.09 |
| 11/30/2022 | ENDING PARTIAL PAY AMOUNT | 0.0000 % | ($621.66) | $3,961,622.09 |
| 12/08/2022 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $7.13 | $3,961,622.09 |
| 12/08/2022 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $6.48 | $3,961,622.09 |
| 12/08/2022 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $0.71 | $3,961,622.09 |
| 12/08/2022 | INTEREST PAYMENT REVERSAL | 0.0000 % | $17,156.48 | $3,961,622.09 |
| 12/08/2022 | INTEREST PAYMENT REVERSAL | 0.0000 % | $18,346.16 | $3,961,622.09 |
| 12/08/2022 | LATE CHARGE REVERSAL | 0.0000 % | $577.42 | $3,961,622.09 |
| 12/08/2022 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $6,203.38 | $3,967,825.47 |
| 12/08/2022 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $5,635.36 | $3,973,460.83 |
| 12/08/2022 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $621.66 | $3,974,082.49 |
| 12/12/2022 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,974,082.49 |
| 12/30/2022 | LATE CHARGE PAYMENT | 0.0000 % | ($2,398.16) | $3,974,082.49 |
| 12/30/2022 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($48,531.06) | $3,974,082.49 |
| 12/30/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($18,346.16) | $3,974,082.49 |
| 12/30/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($5,635.36) | $3,968,447.13 |
| 12/30/2022 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($23,981.52) | $3,968,447.13 |
| 12/30/2022 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($568.02) | $3,967,879.11 |
| 12/30/2022 | ENDING PARTIAL PAY AMOUNT | 0.0000 % | ($568.02) | $3,967,879.11 |
| 01/10/2023 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $8.91 | $3,967,879.11 |
| 01/10/2023 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $0.89 | $3,967,879.11 |
| 01/10/2023 | INTEREST PAYMENT REVERSAL | 0.0000 % | $18,346.16 | $3,967,879.11 |
| 01/10/2023 | INTEREST PAYMENT REVERSAL | 0.0000 % | $23,981.52 | $3,967,879.11 |
| 01/10/2023 | LATE CHARGE REVERSAL | 0.0000 % | $2,398.16 | $3,967,879.11 |
| 01/10/2023 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $5,635.36 | $3,973,514.47 |
| 01/10/2023 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $568.02 | $3,974,082.49 |
| 01/11/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,974,082.49 |
| 01/26/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($99,523.32) | $3,974,082.49 |

February 2, 2026

Page: 2

**EXHIBIT "A" - PAGE 112 of 153**

Copy from re:SearchTX

| Date | Description | Rate | Amount | Balance |
|---|---|---|---|---|
| 01/26/2023 | LATE CHARGE SPLIT OUT | 0.0000 % | ($1,199.08) | $3,974,082.49 |
| 01/26/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($52,651.06) | $3,974,082.49 |
| 01/26/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($19,293.50) | $3,954,788.99 |
| 01/26/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,720.04) | $3,954,788.99 |
| 01/26/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,261.48) | $3,948,527.51 |
| 01/26/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($2,398.16) | $3,946,129.35 |
| 01/26/2023 | ENDING PARTIAL PAY AMOUNT | 0.0000 % | ($2,398.16) | $3,946,129.35 |
| 01/27/2023 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $0.34 | $3,946,129.35 |
| 01/27/2023 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $2,398.16 | $3,948,527.51 |
| 01/27/2023 | LATE CHARGE PAYMENT | 0.0000 % | ($2,398.16) | $3,948,527.51 |
| 02/28/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,948,527.51 |
| 02/28/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,602.42) | $3,948,527.51 |
| 02/28/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,379.10) | $3,942,148.41 |
| 04/11/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,942,148.41 |
| 05/12/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,942,148.41 |
| 06/12/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,942,148.41 |
| 07/12/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,942,148.41 |
| 07/31/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,942,148.41 |
| 07/31/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($15,877.52) | $3,942,148.41 |
| 07/31/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($8,104.00) | $3,934,044.41 |
| 08/11/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,934,044.41 |
| 09/11/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,934,044.41 |
| 10/12/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,934,044.41 |
| 10/19/2023 | PRINCIPAL ONLY PAYMENT NO DATE BUMP | 0.0000 % | ($107.19) | $3,933,937.22 |
| 10/20/2023 | LATE CHARGE PAYMENT | 0.0000 % | ($8,393.56) | $3,933,937.22 |
| 10/20/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,933,937.22 |
| 10/20/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,577.66) | $3,933,937.22 |
| 10/20/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,403.86) | $3,927,533.36 |
| 10/20/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,927,533.36 |
| 10/20/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,010.64) | $3,927,533.36 |
| 10/20/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,970.88) | $3,920,562.48 |
| 10/20/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,920,562.48 |
| 10/20/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,577.66) | $3,920,562.48 |
| 10/20/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,403.86) | $3,914,158.62 |
| 10/20/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,914,158.62 |
| 10/20/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,010.64) | $3,914,158.62 |
| 10/20/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,970.88) | $3,907,187.74 |
| 10/20/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,907,187.74 |
| 10/20/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,546.19) | $3,907,187.74 |
| 10/20/2023 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,435.33) | $3,900,752.41 |
| 10/20/2023 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($3,788.01) | $3,900,752.41 |
| 10/20/2023 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,900,752.41 |
| 11/13/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,900,752.41 |

February 2, 2026

**EXHIBIT "A" - PAGE 113 of 153**

Copy from re:SearchTX

| 12/08/2023 | PRINCIPAL ADVANCE | 0.0000 % | $1,841.50 | $3,902,593.91 |
| 12/08/2023 | PRINCIPAL ADVANCE | 0.0000 % | $3,313.65 | $3,905,907.56 |
| 12/08/2023 | PRINCIPAL ADVANCE | 0.0000 % | $570.82 | $3,906,478.38 |
| 12/12/2023 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,906,478.38 |
| 01/11/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,906,478.38 |
| 01/17/2024 | PRINCIPAL ADVANCE | 0.0000 % | $61,750.70 | $3,968,229.08 |
| 02/12/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,968,229.08 |
| 03/13/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,968,229.08 |
| 03/28/2024 | PRINCIPAL ADVANCE | 0.0000 % | $64,661.25 | $4,032,890.33 |
| 04/05/2024 | PRINCIPAL ONLY PAYMENT NO DATE BUMP | 0.0000 % | ($61,750.70) | $3,971,139.63 |
| 04/05/2024 | PRINCIPAL ONLY PAYMENT NO DATE BUMP | 0.0000 % | ($64,661.25) | $3,906,478.38 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,906,478.38 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($13,753.52) | $3,906,478.38 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,439.99) | $3,900,038.39 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,900,038.39 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,900,038.39 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($13,187.66) | $3,900,038.39 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($7,005.85) | $3,893,032.54 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,893,032.54 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,893,032.54 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($13,571.54) | $3,893,032.54 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,621.97) | $3,886,410.57 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,886,410.57 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,886,410.57 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($13,059.65) | $3,886,410.57 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($7,133.86) | $3,879,276.71 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,879,276.71 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,879,276.71 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($13,630.60) | $3,879,276.71 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,562.91) | $3,872,713.80 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,872,713.80 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,872,713.80 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($13,994.76) | $3,872,713.80 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,198.75) | $3,866,515.05 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,866,515.05 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,866,515.05 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($12,764.40) | $3,866,515.05 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($7,429.11) | $3,859,085.94 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($3,788.01) | $3,855,297.93 |
| 04/05/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($23,981.52) | $3,855,297.93 |
| 04/05/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($5,211.36) | $3,855,297.93 |
| 04/05/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($18,770.16) | $3,836,527.77 |

February 2, 2026

Page: 4

**EXHIBIT "A" - PAGE 114 of 153**

Copy from re:SearchTX

| Date | Description | Rate | Amount | Balance |
|---|---|---|---|---|
| 04/05/2024 | ENDING PARTIAL PAY AMOUNT | 0.0000 % | ($3,788.01) | $3,836,527.77 |
| 04/18/2024 | EFFECTIVE DATE CREDIT INTEREST ADJ. | 0.0000 % | ($10.70) | $3,836,527.77 |
| 04/18/2024 | PRINCIPAL ONLY PAYMENT NO DATE BUMP | 0.0000 % | ($5,725.97) | $3,830,801.80 |
| 04/30/2024 | LATE CHARGE PAYMENT | 0.0000 % | ($2,517.48) | $3,830,801.80 |
| 06/11/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,830,801.80 |
| 07/12/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,830,801.80 |
| 08/12/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,830,801.80 |
| 08/19/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($51,862.22) | $3,830,801.80 |
| 08/19/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($20,193.51) | $3,830,801.80 |
| 08/19/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($23,981.52) | $3,830,801.80 |
| 08/19/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($7,687.19) | $3,830,801.80 |
| 09/11/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,830,801.80 |
| 09/23/2024 | PRINCIPAL ADVANCE | 0.0000 % | $3,508.16 | $3,834,309.96 |
| 09/23/2024 | PRINCIPAL ADVANCE | 0.0000 % | $3,888.82 | $3,838,198.78 |
| 09/30/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($49,162.12) | $3,838,198.78 |
| 09/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($10,401.43) | $3,838,198.78 |
| 09/30/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($5,892.90) | $3,832,305.88 |
| 09/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,081.18) | $3,832,305.88 |
| 09/30/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,900.34) | $3,825,405.54 |
| 09/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($8,886.27) | $3,825,405.54 |
| 10/15/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,825,405.54 |
| 11/12/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,825,405.54 |
| 11/22/2024 | INTEREST RATE CHANGE | 18.0000 % | $0.00 | $3,825,405.54 |
| 11/26/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($33,454.32) | $3,825,405.54 |
| 11/26/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($8,194.91) | $3,825,405.54 |
| 11/26/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,900.34) | $3,818,505.20 |
| 11/26/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($16,516.66) | $3,818,505.20 |
| 11/26/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($1,842.41) | $3,816,662.79 |
| 11/29/2024 | PRINCIPAL ADVANCE | 0.0000 % | $1,734.44 | $3,818,397.23 |
| 12/05/2024 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $30.62 | $3,818,397.23 |
| 12/05/2024 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | $8.17 | $3,818,397.23 |
| 12/05/2024 | INTEREST PAYMENT REVERSAL | 0.0000 % | $8,194.91 | $3,818,397.23 |
| 12/05/2024 | INTEREST PAYMENT REVERSAL | 0.0000 % | $16,516.66 | $3,818,397.23 |
| 12/05/2024 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $6,900.34 | $3,825,297.57 |
| 12/05/2024 | REVERSED PRINCIPAL CREDIT | 0.0000 % | $1,842.41 | $3,827,139.98 |
| 12/12/2024 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,827,139.98 |
| 12/26/2024 | PRINCIPAL ADVANCE | 0.0000 % | $1,749.55 | $3,828,889.53 |
| 12/30/2024 | REGULAR PAYMENT-WITH COMPUTER SPLIT | 0.0000 % | ($74,000.00) | $3,828,889.53 |
| 12/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($8,194.91) | $3,828,889.53 |
| 12/30/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,900.34) | $3,821,989.19 |
| 12/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($16,516.66) | $3,821,989.19 |
| 12/30/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($7,464.86) | $3,814,524.33 |
| 12/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($17,057.11) | $3,814,524.33 |
| 12/30/2024 | PRINCIPAL PAYMENT SPLIT OUT | 0.0000 % | ($6,924.41) | $3,807,599.92 |
| 12/30/2024 | INTEREST PAYMENT SPLIT OUT | 0.0000 % | ($10,941.71) | $3,807,599.92 |
| 01/13/2025 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,807,599.92 |

February 2, 2026

Page: 5

**EXHIBIT "A" - PAGE 115 of 153**

Copy from re:SearchTX

| | | | | |
|---|---|---|---|---|
| 01/29/2025 | PRINCIPAL ADVANCE | 0.0000 % | $4,927.04 | $3,812,526.96 |
| 02/06/2025 | PRINCIPAL ADVANCE | 0.0000 % | $2,948.88 | $3,815,475.84 |
| 02/11/2025 | LATE CHARGE ASSESSED | 0.0000 % | ($1,199.08) | $3,815,475.84 |
| 03/05/2025 | DECREASE LATE CHARGES ASSESSED | 0.0000 % | $1,199.08 | $3,815,475.84 |
| 03/05/2025 | DECREASE LATE CHARGES ASSESSED | 0.0000 % | $1,199.08 | $3,815,475.84 |
| 03/05/2025 | DECREASE LATE CHARGES ASSESSED | 0.0000 % | $1,199.08 | $3,815,475.84 |
| 03/13/2025 | PRINCIPAL ADVANCE | 0.0000 % | $1,057.50 | $3,816,533.34 |
| 04/03/2025 | PRINCIPAL ADVANCE | 0.0000 % | $2,362.50 | $3,818,895.84 |
| 04/25/2025 | INCREASE OTHER CHARGES | 0.0000 % | $4,927.04 | $3,818,895.84 |
| 04/25/2025 | INCREASE OTHER CHARGES | 0.0000 % | $2,948.88 | $3,818,895.84 |
| 04/25/2025 | INCREASE OTHER CHARGES | 0.0000 % | $1,057.50 | $3,818,895.84 |
| 04/25/2025 | INCREASE OTHER CHARGES | 0.0000 % | $2,362.50 | $3,818,895.84 |
| 04/25/2025 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | ($25.63) | $3,818,895.84 |
| 04/25/2025 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | ($22.42) | $3,818,895.84 |
| 04/25/2025 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | ($113.43) | $3,818,895.84 |
| 04/25/2025 | GENERATED ACCRUAL ADJUSTMENT | 0.0000 % | ($208.96) | $3,818,895.84 |
| 04/25/2025 | REVERSED PRINCIPAL DEBIT | 0.0000 % | ($2,362.50) | $3,816,533.34 |
| 04/25/2025 | REVERSED PRINCIPAL DEBIT | 0.0000 % | ($1,057.50) | $3,815,475.84 |
| 04/25/2025 | REVERSED PRINCIPAL DEBIT | 0.0000 % | ($2,948.88) | $3,812,526.96 |
| 04/25/2025 | REVERSED PRINCIPAL DEBIT | 0.0000 % | ($4,927.04) | $3,807,599.92 |
| 04/29/2025 | INCREASE OTHER CHARGES | 0.0000 % | $8,533.50 | $3,807,599.92 |
| 06/09/2025 | INCREASE OTHER CHARGES | 0.0000 % | $5,427.52 | $3,807,599.92 |
| 06/10/2025 | INCREASE OTHER CHARGES | 0.0000 % | $13,502.73 | $3,807,599.92 |
| 06/30/2025 | PRINCIPAL ADVANCE | 0.0000 % | $69,083.17 | $3,876,683.09 |
| 10/16/2025 | INCREASE OTHER CHARGES | 0.0000 % | $7,045.00 | $3,876,683.09 |
| 11/12/2025 | EFFECTIVE DATE DEBIT INT. ADJ. | 0.0000 % | $7.69 | $3,876,683.09 |
| 11/12/2025 | PRINCIPAL ADVANCE | 0.0000 % | $1,200.00 | $3,877,883.09 |
| 11/13/2025 | INCREASE OTHER CHARGES | 0.0000 % | $4,729.29 | $3,877,883.09 |
| 12/09/2025 | INCREASE OTHER CHARGES | 0.0000 % | $3,336.25 | $3,877,883.09 |
| 12/30/2025 | INCREASE OTHER CHARGES | 0.0000 % | $1,578.53 | $3,877,883.09 |
| 01/08/2026 | INCREASE OTHER CHARGES | 0.0000 % | $2,916.51 | $3,877,883.09 |

February 2, 2026

**EXHIBIT "A" - PAGE 116 of 153**

Copy from re:SearchTX

Loan Payoff Inquiry

404223470 - ARROYO PICOSA REVOCABLE
TRUST - HOME MORTGAGE INSTAL

1/21/2026

| Description | Amounts | Rebates | Payoffs |
|---|---|---|---|
| Current balance | $3,877,883.09 | | $3,877,883.09 |
| Accrued interest | $816,596.09 | | $4,694,479.18 |
| Pre/Payoff penalties | | | $4,694,479.18 |
| Dealer discount | | | $4,694,479.18 |
| CR life insurance | | | $4,694,479.18 |
| A & H insurance | | | $4,694,479.18 |
| LEVEL LIFE C/L | | | $4,694,479.18 |
| Late charges | $10,672.40 | | $4,705,151.58 |
| Other charges/fees | $58,365.25 | | $4,763,516.83 |
| Totals | | | $4,763,516.83 |

American State Bank - Arp, TX

**EXHIBIT "A" - PAGE 117 of 153**

Page 1

Copy from re:SearchTX

## Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Friday, April 3, 2026 3:03 PM |
| **To:** | Richard Winn |
| **Cc:** | Brandon Steele |
| **Subject:** | [EXTERNAL] |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.





Copy from re:SearchTX

## Richard Winn

| | |
|---|---|
| **From:** | Brandon Steele <bsteele@steeleresources.com> |
| **Sent:** | Tuesday, March 24, 2026 8:17 PM |
| **To:** | Richard Winn |
| **Subject:** | [EXTERNAL]Fwd: Arroyo Loan Payments |

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

FYI.


Begin forwarded message:

> **From:** Brandon Steele <bsteele@steeleresources.com>
> **Date:** March 24, 2026 at 7:26:00 PM CDT
> **To:** Sarah Cox <sarah@spectorcox.com>
> **Subject: FW: Arroyo Loan Payments**




All the best,


Brandon

---

**From:** Brandon Steele <bsteele@steeleresources.com>
**Sent:** Tuesday, March 24, 2026 7:12 PM
**To:** bthomson66@yahoo.com; kellysanders1957@gmail.com; sherrykday@gmail.com; Ken Baxter <baxter75703@gmail.com>; Peter Bennis <pbennis@asb.com>; Kyle McCoy <kmccoy@asb.com>
**Cc:** Brandon Steele <bsteele@steeleresources.com>
**Subject:** Arroyo Loan Payments

Dear Board Members,

I hope this message finds you well and in good spirits. I wanted to follow up on a matter that Peter and I discussed last month at the courthouse, as I believe we made some progress in clearing up a previous misunderstanding. I am reaching out to request some additional clarification for everyone's benefit.

Peter, as we talked about, there is a message at the teller line indicating that I am not allowed to make a mortgage payment. You clarified that the message actually says I can't make a payment without your permission—the last teller I spoke with didn't relay that important detail. On February 6th, you specifically requested that I make two months of mortgage payments by wire transfer, which I was happy to do.

Copy from re:SearchTX

**EXHIBIT "A" - PAGE 119 of 153**

EXHIBIT

W

Given these circumstances, I am asking if the board would continue to honor that arrangement and allow me to make my loan payments. For clarity, Peter—based on our conversation in the presence of Sarah and your attorney—is it now permissible for me to resume making mortgage payments? As I shared with the judge during the hearing, when asked what I would be willing to pay, I responded, "whatever the bank asks me to do." I am happy to provide a copy of the court transcript if needed.

Since you previously requested that I make two payments, which I did, my question is whether you will allow me to continue making payments and bring my mortgage current, as discussed in the courthouse. I am reaching out now, per your request of February 5th or 6th, to ask for your permission to make my mortgage payments per your request.

Thank you all for your time and consideration. I hope everyone is doing well, and I look forward to your response.

All the best,
Brandon

**EXHIBIT "A" - PAGE 120 of 153**

Copy from re:SearchTX

January 31, 2026

Peter Bennis
President and Chief Executive Officer
American State Bank
5555 Old Jacksonville Highway
Tyler, Texas 75703

Via Email and U.S. Mail

**Re: Notice of Conflicted Counsel, Tainted Foreclosure Actions, and Demand to Cease Enforcement and Preserve Evidence**

Dear Mr. Bennis:

This letter serves as formal notice to American State Bank ("ASB") that foreclosure-related actions taken by or on behalf of the Bank against me and my family are tainted by a material and non-waivable conflict of interest arising from the Bank's retention of Scheef & Stone LLP. A detailed conflict and withdrawal demand has been transmitted directly to Scheef & Stone LLP, which this letter expressly incorporates by reference.

**Conflicted Counsel and Tainted Enforcement Actions**

As ASB is now aware, I previously consulted with Scheef & Stone LLP in October 2024 regarding representation in matters directly involving ASB's adverse conduct, threatened foreclosure activity, and related litigation strategy. Notwithstanding that consultation, ASB later retained Scheef & Stone LLP to pursue foreclosure, acceleration, and demand actions against my homestead, including notices issued in December 2024 and subsequent enforcement efforts throughout 2025. Those actions were undertaken through conflicted counsel and are therefore voidable, unenforceable, and legally infirm.

**Demand to Cease Enforcement and Maintain Status Quo**

ASB is hereby placed on notice and demanded to immediately cease any foreclosure, acceleration, or enforcement activity based on notices or demands issued through conflicted counsel. ASB may not rely upon or enforce such tainted actions and must maintain the status quo unless and until unconflicted counsel is retained, all prior tainted actions are formally withdrawn, and any enforcement efforts are re-initiated in full compliance with applicable law and court supervision.

**Litigation Hold and Preservation of Evidence**

Please further consider this letter a formal litigation-hold notice. ASB must immediately preserve all documents, communications, electronically stored information, and tangible materials relating to: retention and communications with Scheef & Stone LLP; any communications with Hunton Andrews Kurth LLP; foreclosure, acceleration, and enforcement decisions affecting me or my homestead; internal analyses of conflicts of interest or litigation risk; any coordination or strategy discussions concerning settlement leverage or enforcement posture. These materials are directly relevant to pending and forthcoming litigation involving ASB and Hunton Andrews Kurth LLP and will be sought through subpoena and discovery. Any failure to preserve such materials may result in sanctions and adverse inferences.

**Reservation of Rights**



**EXHIBIT "A" - PAGE 121 of 153**

Copy from re:SearchTX

This notice is provided without waiver of any rights, claims, defenses, or remedies, all of which are expressly reserved. ASB is urged to govern itself accordingly to avoid further exposure.

Sincerely,

Brandon T. Steele

cc:
Kelly Sanders, Chairman of the Board

Copy from re:SearchTX

2/24/2026 3:37 PN
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Cheryl Watts DEPUTY

CAUSE NO. ___DC-26-03452___

| | | |
|---|---|---|
| **BRANDON T. STEELE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **298th JUDICIAL DISTRICT** |
| | § | |
| **AMERICAN STATE BANK,** | § | |
| | § | |
| **Defendant.** | § | **DALLAS COUNTY, TEXAS** |

---

## PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Brandon T. Steele ("Steele"), files this his Plaintiff's Original Petition in the above-styled and numbered cause against Defendant American State Bank ("ASB or "Defendant") and, for cause of action, would respectfully show unto the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Steele intends to conduct discovery under Level 3. *See* TEX. R. CIV. P. 190.4.

### II.
### PARTIES

2. Plaintiff Brandon T. Steele is an individual residing in Smith County, Texas.

3. American State Bank is a Texas chartered bank with its headquarters and principal place of business at 102 W. Front Street, Arp, Texas, in Smith County, Texas. American State Bank has failed to appoint or does not maintain a registered agent in the state of Texas. Accordingly, Tex. Bus. Org. C.§ 5.251(1) provides that the Secretary of State of Texas shall be an agent of the corporation upon whom process may be served. The Secretary of State of Texas shall immediately cause one copy of the citation with petition attached to be forwarded by registered mail addressed

EXHIBIT
Y

PLAINTIFF'S ORIGINAL PETITION                                                                PAGE 1

Copy from re:SearchTX

to the corporation at its registered office, pursuant to Tex. Bus. Org. C. § 5.251. Alternatively, American State Bank may be served with process by serving its President Peter Bennis at its headquarters and principal place of business at 102 W. Front Street, Arp, Texas, in Smith County, Texas.

### III.
#### JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter because the amount in controversy exceeds the minimum jurisdiction of the Court.

5.      Venue is proper in Dallas County, Texas because all or a substantial part of the events or omissions giving rise to Steele's causes of action occurred in Dallas County, Texas. Venue is, therefore, proper in Dallas County, Texas pursuant to Texas Civil Practice & Remedies Code §15.002(a)(1). Venue is also proper in this Court pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(3) because American State Bank had offices and did business in Dallas County, Texas.

### IV.
#### CLAIMS FOR RELIEF

6.      Steele seeks monetary relief in excess of $1,000,000. *See* TEX. R. CIV. P. 47(c)(3).

### V.
#### INTRODUCTION

A.      This is an action by the former Executive Chairman and member of the Board of Directors of ASB for numerous civil claims including, but not limited to, breach of indemnification contract, violation of the Texas Deceptive Trade Practices Act ("TDPA"), violation of the Texas Debt Collection Act found in Chapter 392 of the Texas Finance Code ("TDCA"), fair debt collection, declaratory relief, violation of various state banking laws and specifically including the wrongful denial of mandatory contractual and/or statutory indemnification and advancement obligations in

---

PLAINTIFF'S ORIGINAL PETITION                                                    PAGE 2

Copy from re:SearchTX

ASB's Amended and Restated Certificate of Formation and Bylaws. Specifically, ASB used unlawful coercion, threats and intimidation to compel Steele to act against his will and best interests. Moreover, ASB used unlawful duress involving threats to foreclose on Steele's homestead and evict Steele and his family from his home and acquire Steele's property. And, ASB pursued personal economic damages against Steele in order to interfere with, and breach, contractual protections guaranteed to Steele under ASB's Amended and Restated Certificate of Formation and Second Amended and Restated Bylaws.

B.     Steele does not sue as a shareholder. He sues to enforce personal contractual duties breached by ASB and owed to him individually and for personal damages distinct from any diminution in shareholder value.

C.     The indemnification damages pleaded for herein represents the economic equivalent of defense and liability costs that ASB was contractually required to bear on Steele's behalf, and do not constitute a claim for diminution of shareholder value or derivative injury.

D.     Steele believes and hereby alleges, on information and belief, that at all times mentioned herein, ASB was the agent, servant, employee, and/or partner, of one or more third-parties, and acted within the scope and authority of such agency, master-servant relationship, employer-employee relationship, and/or partnership, joint venture or co-venture, and with the knowledge, consent, approval, direction, understanding, agreement, and/or ratification of one or more or all of the third-parties.

E.     Unless a particular third-party is named, whenever this Petition references the acts of the ASB, such allegation shall be deemed to mean the acts of the Defendant named in the particular cause of action and each third-party acting individually, jointly and severally.

## VI.
### FACTUAL BACKGROUND

---

Copy from re:SearchTX

## A.     Steele Was an Officer, Director and Controlling Shareholder of ASB

7.     Steele was the Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022, when he resigned from ASB's Board of Directors.

8.     Steele currently is the owner of 100% of the shares of Steele Texas Bancshares, Inc. ("SBI"), the parent of ASB. SBI was formerly the owner of 100% of the shares of ASB until 2022 when its percentage of ownership was reduced to approximately 93% of the shares of ASB as a result of the sale of 7% of ASB stock to Steele West Texas Capital Corporation ("SWTCC"). SBI owned and held this approximately 93% of the shares of ASB until May 2025, when ASB resolved indemnifiable claims asserted against Steele by issuing equity rather than honoring its contractual obligation to indemnify him, causing Steele to suffer personal economic harm exceeding $25 million.

9.     Steele does not assert a claim for diminution of shareholder value. Rather, ASB's issuance of equity in leu of honoring its mandatory indemnification obligations operated as a substitution of corporate equity for indemnification funds that ASB was contractually obligated to pay on Steele's behalf. The foregoing substitution imposed direct and personal economic harm on Steele because it extinguished his contractual right to have ASB bear defense and settlement costs and instead shifted the economic burden to him. Thereafter, SBI's percentage of ownership was reduced to approximately 67% of the shares of ASB.

## B.     $36 Million Dollar Capital Raise Campaign on behalf of SWTCC and American State Bank

10.     In or about the summer of 2022, Steele, SBI and ASB were involved in a Capital Raise Campaign for ASB through the sale of stock to new minority shareholders and investors in the new entity, Steele West Texas Capital Corporation ("SWTCC"), a Texas corporation formed in

Copy from re:SearchTX

May of 2022, in order to raise capital for the expansion of ASB into West Texas. (the "Capital Raise Campaign"). The Capital Raise Campaign for ASB was successful with approximately $36 Million Dollars of stock sold as of the closing of the campaign in the Fall of 2022. The law firm of Bradley Arant Boult Cummings, LLP (the "BABC Law Firm) was the principal architect of the Capital Raise Campaign.

## C.    SWTCC Securities Offering

11.    Pursuant to the Capital Raise Campaign, ASB and SWTCC issued a Securities Offering. SWTCC was originally a wholly owned subsidiary of ASB until 2022, when 100% of the shares of SWTCC were sold to approximately 130 prospective investors and shareholders who attempted to invest in SWTCC as part of the Capital Raise Campaign.  The BABC Law Firm structured, controlled, drafted and revised the securities offering including the Confidential Offering Term Sheet, entity formation, transaction structure, subscription agreements, investor presentations, and risk-factor disclosures made to potential minority investors and shareholders for the Capital Raise Campaign. The BABC Law Firm closely coordinated closings, closing mechanics, and capital-raise mechanics and exercised direct control over disclosure content provided to potential shareholders and investors. Nevertheless, the BABC Law Firm erroneously failed to disclose Steele's personal debt obligations to Texas Capital Bank ("TCB") and mistakenly failed to include such material information in the Confidential Offering Term Sheet and disclosures despite possessing actual, contemporaneous knowledge of the omitted information.

12.    Specifically, the BABC Law Firm obtained actual knowledge that Steele had substantial personal indebtedness to TCB through (a) direct involvement in refinancing and lender-transition discussions, (b) introductions to alternative lenders, (c) communications with TCB and its counsel, and (d) ongoing advice and discussions concerning Steele's liquidity, leverage, and

Copy from re:SearchTX

exposure. The BABC Law Firm, also communicated directly with senior TCB executives, including Jeff Parilla and Bruce Shilcutt, regarding Steele's personal debt and, at TCB's request, provided regular updates concerning ASB's Capital Raise Campaign for SWTCC. Steele facilitated and encouraged these direct communications to ensure transparency and alignment among counsel and lenders and reasonably believed that all material risks were fully understood and appropriately addressed by the BABC Law Firm.

**D.      Cascade of Lawsuits Filed by Potential Minority Shareholders and Investors against (a) ASB and (b) Steele, SBI and SWTCC Arising from Securities Offering**

13.      As a result of certain disclosures and/or omissions in the Securities Offering, there were numerous lawsuits filed, including the lawsuits listed below, which were eventually joined by all of the approximately 130 concerned potential minority investors and shareholders in SWTCC:

> Cause No. DC-2023-CV-0607 styled "RT Franklin Holdings, LLC. and Christina Chapman v. Steele West Texas Capital Corporation, ASB, and Steele Bancshares, Inc. in the 72nd District Court of Lubbock County, Texas" filed on May 16, 2023 (the "RT Franklin Lawsuit");

> Cause No. A44977-2311 styled Chris Cartwright and Wright-Cart, Ltd., v. Brandon Steele, Steele West Texas Capital Corporation, Steele Bancshares, Inc. and ASB in the 64th Judicial District Court of Hale County, Texas filed on October 31, 2023 (the "Cartwright Lawsuit"). See, Original Petition filed October 31, 2023, and First Amended Petition filed January 2, 2024, which added new parties Plaintiff Donald Ebeling, Jr., Cinde Ebeling, Steven Ebeling, Shannon Ebeling, Robert Edwards, Ken King, in his capacity as Trustee of the King Contribution Trust, Coy Myrick, Jake Dennis Myrick, Daniel Smith, Reeda Smith and Rotom, Inc. Subsequently, approximately 100-120 shareholders of SWTCC were all added as parties; and

> Cause No. B44984-2311 styled "Rodney Warren v. Steele West Texas Capital Corporation, Steele Bancshares, Inc., Brandon T. Steele and ASB in the 242nd Judicial District Court of Hale County, Texas November 3, 2023." (the "Warren Lawsuit') See, also First Amended Petition filed November 8, 2023.

---

**PLAINTIFF'S ORIGINAL PETITION** PAGE 6

Copy from re:SearchTX

The RT Franklin Lawsuit, the Carwright Lawsuit and the Warren Lawsuit are collectively referred to herein as the "SWTCC Shareholder Lawsuits".

14.     The foregoing lawsuits were filed as a direct result of the public disclosure of confidential and/or proprietary information that TCB had been required to keep confidential under the terms of a Confidentiality Agreement, which provided for contractual indemnification of damages in the event of a breach.

15.     In December 2023, after the filing of the SWTCC Shareholder Lawsuits, the law firm of Hunton, Andrews Kurth (the "HAK Law Firm"), representing ASB simply abandoned Steele, SBI, and other entities owned and/or controlled by Steele while retaining its lucrative professional relationship with ASB. This abandonment occurred despite the fact the HAK Law Firm had represented Steele and/or his related entities since on or before October 2009. Thereafter, both ASB and the HAK Law Firm became adverse to Steele, SBI, and other entities controlled by Steele in certain "substantially related" matters. It is important to note that Steele, SBI and SWTCC remained parties in each of the SWTCC Shareholder Lawsuits in which the HAK Law Firm continued representing ASB through May of 2025. During these SWTCC Shareholder Lawsuits, ASB defended against claims asserting securities fraud, rescission and fiduciary misconduct arising from the SWTCC Securities Offering.

**E.     Steele West Texas Capital Corporation (SWTCC) files for Ch. 7 Bankruptcy and the SWTCC Shareholder Lawsuits Were Removed to Such Bankruptcy Proceeding**

16.     On February 2, 2024, Steele West Texas Capital Corporation ("SWTCC") filed a voluntary Chapter 7 petition in bankruptcy before Judge Joshua Searcy in Chapter 7 Case No. 24-60053 styled, "In Re Steele West Texas Capital Corporation in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division".

Copy from re:SearchTX

17.    The SWTCC Shareholder Lawsuits (RT Franklin Lawsuit, Franklin Lawsuit and Warren Lawsuits) were promptly removed to the federal bankruptcy court.

18.    On May 19, 2025, the Bankruptcy Court signed an Order Granting Motion for Approval of Compromise Under Rule 9019. Attached as Exhibit 1 to this Order was a Settlement Agreement settling the claims originally raised in the SWTCC Lawsuits (RT Franklin Lawsuit, Cartwright Lawsuit, and Warren Lawsuit).

**F.      ASB's Contractual Duty to Indemnify and Advance Funds**

19.    ASB's governing documents including (a) Section EIGHTH of the Amended and Restated Certificate of Formation of ASB effective May 12, 2022 and (b) Section 7.08 of the Second Amended and Restated Bylaws, obligate ASB to indemnify and advance reasonable attorneys' fees and expenses incurred by Steele in connection with claims arising from Steele's service as an officer or director, subject to any applicable undertaking.

20.    In particular, Section "EIGHTH" (a)  of the Amended and Restated Certificate of Formation of ASB provides, in pertinent part,

> (a)    The Association **shall indemnify and hold harmless** any person for reasonable expenses actually incurred by him, in connection with any action, to which he is a party by reason of his having been a director, officer or employee of the Association or having served as a director, officer, partner, venturer, proprietor, trustee, agent, or similar functionary of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, at the request of the Association…The indemnification herein provided shall be to the fullest extent authorized or permitted by applicable law, as such law exists or may hereafter be amended (but only to the extent that such amendment permits the Association to provide broader indemnification rights than permitted prior to the amendment). (Emphasis added).

21.    Further Section "EIGHTH" (c) of the Amended and Restated Certificate of Formation of ASB provides, in pertinent part,

---

PLAINTIFF'S ORIGINAL PETITION                                                                                    PAGE 8

Copy from re:SearchTX

(c)     Any director or officer may enforce his rights to indemnification or advance payments for expenses in a suit brought against the Association if his request for indemnification or advance payments for expenses is wholly or partially refused by the Association or if there is no determination with respect to such request within 60 days from receipt by the Association of a written notice from the director or officer for such a determination. If a director or officer is successful in establishing in a suit his entitlement to receive or recover an advancement of expenses or a right to indemnification, in whole or in part, he shall also be indemnified by the Association for costs and expenses incurred in such suit.

22.     The burden is on ASB to prove that Steele is not entitled to enforce his rights under Section "EIGHTH" (c) of the Amended and Restated Certificate of Formation of ASB:

...In a suit brought by a director or officer to enforce a right under this Section (c) or by the Association to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that a director or officer is not entitled to be indemnified or is not entitled to an advancement of expenses under this Section (c) or otherwise, shall be on the Association.

23.     Finally, Section "EIGHTH" (d) of the Amended and Restated Certificate of Formation of ASB provides in pertinent part

...The right to indemnification under Section (a) hereof shall continue for a person who has ceased to be a director or officer and shall inure to the benefit of his heirs, next of kin, executors, administrators and legal representatives.

**G.     ASB's Knowing Refusal to Indemnify and Advance Funds Caused Steele's Loss of Counsel and Fatal Prejudice**

24.     While representing Steele personally in 2023, the HAK Law Firm, Steele's long-time counsel since 2009, directly advised Steele regarding the scope and strength of the indemnification and advancement protections contained in Article EIGHTH of American State Bank's Certificate of Formation. The HAK Law Firm affirmatively represented that the indemnification and advancement provisions were broad and mandatory in nature.

Copy from re:SearchTX

25. Mere months later, after multiple lawsuits were filed against Steele arising from acts taken in his official capacity at ASB, Steele attempted to invoke those same mandatory indemnification protections. At this time, the HAK Law Firm asserted for the first time that it could not act in a manner adverse to TCB on behalf of Steele, SBI or ASB due to a prior undisclosed agreement. Notwithstanding the HAK Law Firm's prior representations regarding the breadth and mandatory nature of Article EIGHTH—and despite the absence of any applicable amendment to the governing documents—the ASB Board of Directors, acting upon the advice of the HAK Law Firm, refused to honor ASB's mandatory indemnity and advancement obligations. ASB's conduct was knowing and intentional. It was done with malice.

26. The consequences of ASB's refusal to honor its indemnification and advancement obligations were immediate and severe. In January 2024, Steele retained Beck Redden, LLP.— one of Texas's most respected litigation firms—and its founding partner David J. Beck to defend him in the pending shareholder litigation. The engagement expressly included Steele individually as a client. However, because ASB refused to honor its mandatory indemnity and advancement obligations, Beck Redden's invoices could not be paid in a timely manner, and Beck Redden was ultimately forced to withdraw, leaving Steele without his chosen trial counsel during a critical phase of the complex litigation

27. The same pattern repeated itself in the bankruptcy proceedings. On March 13, 2025, as negotiations intensified among the SWTCC Chapter 7 Trustee, ASB, and TCB—negotiations that directly implicated Steele's personal property rights, pledged interests, and individual exposure—Steele retained Squire Patton Boggs LLP at his own personal expense. Steele understood the stakes and, therefore, assembled a senior team led by James Barresi (Partner and Global Financial Services Practice Leader), Jon Mureen (Managing Partner, Dallas Office),

---

**PLAINTIFF'S ORIGINAL PETITION** PAGE 10

EXHIBIT "A" - PAGE 132 of 153

Copy from re:SearchTX

Christopher Giamo (Bankruptcy Partner), and Derrick Cephas (Bank Regulatory Partner) to negotiate, investigate conflicts, and protect his personal rights. Despite repeated requests for indemnity and advancement, ASB refused to fund Steele's defense. On April 30, 2025, during the pendency of the Bankruptcy Court's twenty-one (21)-day negative notice objection period, Squire Patton Boggs withdrew. Without funded counsel, Steele was unable to meaningfully object to the proposed Rule 9019 settlement before the objection deadline expired. The compromise was presented to the Bankruptcy Court as unopposed and was approved by Order entered May 19, 2025. The loss of counsel during this narrow window of dispute was fatal to Steele's ability to protect his personal property rights and interests. ASB's conduct was intentional, reckless and malicious.

28. ASB knew that its governing documents required mandatory indemnity and advancement of defense expenses. It was foreseeable that withholding advancement in high-stakes litigation and bankruptcy negotiations would impair Steele's ability to retain and maintain counsel. It was equally foreseeable that sophisticated firms would withdraw if invoices went unpaid. ASB's refusal to indemnify and advance funds directly caused the loss of counsel at successive critical stages and foreseeably resulted in Steele's inability to object to settlement terms affecting Steele's personal rights. The repeated loss of nationally recognized counsel at successive critical stages of the litigation and settlement process was not coincidental—it was the foreseeable and cumulative consequence of ASB's continued refusal to honor its mandatory indemnity and advancement obligations. ASB's conduct was intentional, reckless and malicious.

**H.     Enforcement Actions by Texas Capital Bank in Dallas County Proceedings**

29. At the same time of the SWTCC disputes, TCB pursued enforcement actions against Steele and BTS Enterprises, Inc. in a pending Dallas County district court proceeding, and

Copy from re:SearchTX

the parties' posture in that litigation materially impacted Steele's financial and foreclosure exposure. During 2023, the HAK Law Firm, including Peter Weinstock and Josh McNulty, continued to communicate with and negotiate directly with TCB and its counsel concerning Steele's personal obligations and related confidentiality arrangements, including a confidentiality agreement with TCB executed in or about March 2023.

## I.      The HAK Law Firm's Conflicts of Interest

30.      Steele has since obtained documentary evidence establishing that the HAK Law Firm was simultaneously engaged in communications and negotiations affecting both Steele and TCB, while withholding from Steele and his counsel material facts bearing on the HAK Law Firm's ability to provide independent advice, free of any conflicts of interests. These undisclosed conflicts of interest are relevant not only to the HAK Law Firm's later conduct, but also to the integrity of the agreed orders and settlement mechanisms that were later used as leverage against Steele and his property rights.

31.      On information and belief, ASB's refusal to honor its mandatory indemnification and advancement obligations was not an isolated corporate decision, but part of a coordinated legal strategy implemented through the HAK Law Firm, a firm that had served for many years as Steele's personal counsel and as counsel to Steele-controlled entities since 2009. Steele alleges that, while Steele was demanding indemnification and advancement under ASB's Certificate of Formation, ASB continued to use the HAK Law Firm to exert mortgage-related pressure and to condition forbearance on Steele's agreement not to object to, interfere with, or initiate litigation relating to the SWTCC Chapter 7 settlement.

32.      Steele further alleges that these actions were undertaken while HAK's material conflicts interests existed and were not disclosed to Steele or to Steele's counsel at the time. Steele

Copy from re:SearchTX

will establish that, during the period in which the Agreed Judgment, settlement agreement, and receivership order were negotiated and entered, Steele was not informed of material facts concerning the relationship of the HAK Law Firm with TCB, or the HAK Law Firm's prohibition from acting adverse to TCB, despite simultaneous involvement in negotiations and conduct affecting Steele's personal property rights. These facts bear directly on ASB's bad faith, the integrity of ASB's indemnification denial, and ASB's use of foreclosure posture as coercive leverage against Steele.

## J. Coercive and Unlawful Threats of Foreclosure of Steele's Homestead

33. ASB used coercive and unlawful threats of foreclosure of Steele's homestead for coordinated pressure in other legal matters to suppress Steele's ability to object to a separate settlement agreement in a federal bankruptcy proceeding involving both ASB and Steele as well as his related entities.

34. Upon information and belief, on November 22, 2024, while litigation and settlement matters involving Steele were ongoing, ASB refused to accept a routine monthly mortgage payment tendered by Steele at ASB's Beckham branch, thereby falsely creating a mortgage deficiency and default on Steele's mortgage loan. When Steele attempted to make the payment in person, an ASB employee advised that she had been instructed by her supervisor not to accept the payment.

35. Immediately following this incident, Steele sent a written communication to Peter Bennis, President and Chief Executive Officer of ASB, seeking instructions on how to cure the deficiency and process the mortgage payment. This communication was contemporaneously copied to James Bowen of the HAK Law Firm, counsel then representing ASB. ASB provided no contemporaneous explanation for the refusal to accept payment and did not identify any default or

---

**PLAINTIFF'S ORIGINAL PETITION** PAGE 13

Copy from re:SearchTX

deficiency justifying such action.

36.     The refusal to accept payment, coupled with the involvement of ASB's litigation counsel, constituted an improper and bad-faith use of mortgage servicing and foreclosure posture as leverage in disputes unrelated to routine loan performance, and further evidence a pattern of coordinated conduct designed to exert pressure on Steele while impairing his ability to protect his legal and property rights and the quiet enjoyment of his homestead.

37.     On May 5, 2025, Mr. Bowen, representing ASB, forwarded correspondence to Steele with respect to, among other things, a notice of foreclosure sale, wherein Bowen, on behalf of ASB, threatened that ASB would only remove a nonjudicial sale of the homestead of Steele and his wife if Steele and his related entity SBI, promised to take no act to interfere, hinder, or delay the consummation, closing, and finality of unrelated settlements of all claims and causes of action related to motions to approve a settlement in an unrelated bankruptcy proceeding.

38.     The coercive letter threatened and warned of foreclosure of Steele's homestead unless Steele and SBI promised not to object to the settlements, object to or oppose the approval of a compromise settlement in the pending bankruptcy proceeding or initiate any litigation in any forum arising out of, or related to, the settlements. The foregoing threats were made by ASB while admitting that there were "direct conflicts between [Steele] and ASB." Upon information and belief, this information was never conveyed to the bankruptcy court nor was the existence of ASB's conflicted counsel representing ASB in the Federal bankruptcy proceedings.

## VII.
### CAUSES OF ACTION

### Count 1:
#### CONTRACTUAL INDEMNIFICATION AND/OR ADVANCEMENT OF EXPENSES
#### (AGAINST ASB)

39.     Steele incorporates herein by reference the allegations contained in Paragraphs 2

Copy from re:SearchTX

through 38 above, which are asserted herein for all purposes as if set forth in full.

40. Steele and ASB entered into a contract whereby ASB promised and agreed to indemnify Steele and hold Steele harmless for reasonable expenses actually incurred by him from any actions resulting from his service as an officer and/or director of ASB.

41. Steele served as Executive Chairman of the Board of Directors and officer of ASB and SBI during the period in which the conduct giving rise to the SWTCC Shareholder Lawsuits and related proceedings occurred. Steele was named personally as a defendant in multiple lawsuits including, without limitation, the SWTCC Shareholder Lawsuits. All claims asserted against Steele in those matters arose by reason of Steele's actions undertaken during his tenure as Executive Chairman and/or service as an officer and director of ASB and SBI including, without limitation, governance decisions, the Capital Raise Campaign and the SWTCC Securities Offering.

42. ASB's governing documents including (a) Section "EIGHTH" of the Amended and Restated Certificate of Formation of ASB effective May 12, 2022 and (b) Section 7.08 of the Second Amended and Restated Bylaws, obligate ASB to indemnify and advance reasonable attorneys' fees and expenses incurred by Steele in connection with claims arising from his service as an officer or director, subject to any applicable undertaking.

43. In particular, Section "EIGHTH" (a) of the Amended and Restated Certificate of Formation of ASB provides, in pertinent part,

> (a) The Association **shall indemnify and hold harmless** any person for reasonable expenses actually incurred by him, in connection with any action, to which he is a party by reason of his having been a director, officer or employee of the Association or having served as a director, officer, partner, venturer, proprietor, trustee, agent, or similar functionary of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, at the request of the Association...The indemnification herein provided shall be to the fullest extent authorized or permitted by applicable law, as such law

PLAINTIFF'S ORIGINAL PETITION PAGE 15

Copy from re:SearchTX

exists or may hereafter be amended (but only to the extent that such amendment permits the Association to provide broader indemnification rights than permitted prior to the amendment). (emphasis added).

44.    Further Section "EIGHTH" (c) of the Amended and Restated Certificate of Formation of ASB provides, in pertinent part,

> (c)    Any director or officer may enforce his rights to indemnification or advance payments for expenses in a suit brought against the Association if his request for indemnification or advance payments for expenses is wholly or partially refused by the Association or if there is no determination with respect to such request within 60 days from receipt by the Association of a written notice from the director or officer for such a determination. If a director or officer is successful in establishing in a suit his entitlement to receive or recover an advancement of expenses or a right to indemnification, in whole or in part, he shall also be indemnified by the Association for costs and expenses incurred in such suit.

45.    The burden is on ASB to prove that Steele is not entitled to enforce his rights under Section "EIGHTH" (c) of the Amended and Restated Certificate of Formation of ASB:

> ...In a suit brought by a director or officer to enforce a right under this Section (c) or by the Association to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that a director or officer is not entitled to be indemnified or is not entitled to an advancement of expenses under this Section (c) or otherwise, shall be on the Association.

46.    Finally, Section "EIGHTH" (d) of the Amended and Restated Certificate of Formation of ASB provides in pertinent part

> ...The right to indemnification under Section (a) hereof shall continue for a person who has ceased to be a director or officer and shall inure to the benefit of his heirs, next of kin, executors, administrators and legal representatives.

47.    Steele incurred and continues to incur substantial legal fees and expenses in connection with:

---

PLAINTIFF'S ORIGINAL PETITION                                                      PAGE 16

Copy from re:SearchTX

a. defending lawsuits arising from Steele's tenure at ASB including, without limitation, governance decisions, the Capital Raise Campaign, the SWTCC Securities Offering, the SWTCC Shareholder Lawsuits and related transactions;

b. responding to and addressing settlement terms and court-approved resolutions that purport to bind or impair Steele's rights based on his conduct as an officer;

c. protecting and enforcing Steele's contractual and statutory rights to indemnification and advancement;

d. seeking declaratory relief to confirm ASB's indemnification and advancement obligations to Steele.

48. The foregoing fees and expenses were incurred by Steele "by reason of the fact" that Steele served as an officer and director of ASB and SBI and such fees and expenses would not have been incurred, but for that service.

49. Despite repeated demands made by Steele upon ASB including, without limitation, written demand on December 19, 2023 and more recently on February 10, 2025, ASB has failed and refused, after such demand, to advance Steele's reasonable defense and enforcement costs, notwithstanding the fact that ASB exhausted all available insurance coverage in connection with the settlement of the SWTCC Shareholder Lawsuits for its own protection, thereby leaving Steele exposed to ongoing legal expense and coercive leverage.

50. ASB's failure and refusal to advance indemnification fees and expenses has materially impaired Steele's ability to defend claims against him, protect his legal rights, and pursue contractual and statutory indemnification to which he is entitled. ASB unlawful conduct included continued foreclosure pressure and refusal to provide a reconciliation of mortgage payments he made, exacerbating the inequity of ASB's position.

---

PLAINTIFF'S ORIGINAL PETITION                                                      PAGE 17

Copy from re:SearchTX

51.     As a direct and proximate result of ASB's failure and refusal to honor its mandatory indemnity and advancement obligations, Steele has suffered substantial damages, including but not limited to: (a) legal fees personally incurred by Steele; (b) the loss of the benefit of retained counsel during critical litigation and negotiation periods; (c) the inability to object to, and influence settlement outcomes, affecting his personal property rights; (d) prejudice in defending complex shareholder and bankruptcy proceedings; and (e) consequential, financial and reputational harm resulting from the forced attrition of his legal defense.

52.     Advancement is distinct from final indemnification and is intended to operate as interim protection to prevent precisely this form of economic coercion and imbalance. Steele is willing to provide an "undertaking" to repay any advanced amounts if it is ultimately determined that he is not entitled to indemnification, as required by law.

53.     All conditions precedent to ASB's promise to indemnify Steele have been performed by Steele, have occurred, or been waived.

54.     As a result of ASB's' breach of contract in failing to indemnify Steele, Steele has incurred attorneys' fees and expenses and been damaged and seeks indemnity from ASB for all amounts that Steele has incurred and/or has been required to pay with regard to the SWTCC Shareholder Lawsuits.

55.     As a result of ASB's failure and refusal to honor its obligation to indemnify Steele for the costs and expenses incurred by Steele in the SWTCC Shareholder Lawsuits, Steele has been forced to retain the undersigned counsel to initiate this action and has agreed to pay a reasonable fees plus expanses for their services.

56.     Absent immediate payment and/or advancement of reasonable attorneys' fees and expenses, Steele will suffer irreparable harm, including the impairment of his ability to defend

EXHIBIT "A" - PAGE 140 of 153

Copy from re:SearchTX

himself, enforce his statutory and contractual rights, and meaningfully participate in proceedings arising directly from his service as an officer and director of ASB.

**Count 2:**
**STATUTORY MANDATORY AND/OR PERMISSIVE INDEMNIFICATION AND/OR ADVANCEMENT OF EXPENSES UNDER TEXAS BUS. CORP. ORGANIZATION CODE CH. 8**
**(AGAINST ASB)**

57. Steele incorporates herein by reference for all purposes the allegations contained in Paragraphs 2 through 56 above, which are asserted herein as if set forth in full.

58. As more fully set forth above, Section "EIGHTH" (a) of the Amended and Restated Certificate of Formation of ASB provides, in pertinent part, that "the Association **shall indemnify and hold harmless** any person for reasonable expenses actually incurred by him, in connection with any action, to which he is a party by reason of his having been a director, officer or employee of the Association..." (emphasis added). The term "shall" means mandatory indemnity.

59. Texas Business Organizations Code 8.051(a) under Mandatory Indemnity provides "[a]n enterprise shall indemnify a governing person, former governing person, or delegate against reasonable expenses actually incurred by the person in connection with a proceeding in which the person is a respondent because the person is or was a governing person or delegate if the person is wholly successful, on the merits or otherwise, in the defense of the proceeding." The term "Expenses" is defined to include (A) court costs, a judgment, a penalty, a settlement, a fine, and an excise or similar tax ... and (B) reasonable attorney's fees." Texas Business Organizations Code §8.001(3).

60. Alternatively, Texas Business Organizations Code §8.101(a) under Permissive Indemnity generally provides, in pertinent part, for permissive indemnity when "a governing person, former governing person or a delegate who was, is, or threatened to be made a respondent

Copy from re:SearchTX

in a proceeding" acted in good faith and reasonably believed that the person's conduct was in the enterprise's best interests. Further, Texas Business Organizations Code §8.102(a) provides with respect to permissive indemnification that "an enterprise may indemnify a governing person, former governing person, or delegate against (1) a judgment; and (2) expenses, other than a judgment, that are reasonable and actually incurred by the person in connection with a proceeding."

61.     Steele was a governing person, acted in good faith and acted in the enterprise's best interests as defined in the statute. All conditions precedent to Steele's right to indemnity have been performed or have occurred or been waived.

62.     ASB has failed to provide indemnity to Steele as required by Texas Business Organizations Code §8.051 (Mandatory Indemnity) and/or §8.101 (Permissive Indemnity).

63.     ASB's failure and refusal to provide indemnity constitutes a violation of Texas Business Organizations Code §8.051 and/or §8.101.

64.     As a direct and proximate cause of the foregoing breach by ASB, Steele has suffered the damages alleged herein, which are within the jurisdictional limits of this Court.

65.     As a result of ASB's violation of §8.051 (Mandatory Indemnity) and/or §8.101 (Permissive Indemnity), it has been necessary for Steele to hire the undersigned attorneys to represent him. Steele previously presented this claim to ASB, or its duly authorized agent, more than thirty (30) days prior to filing the above-styled and numbered cause. Accordingly, Steele has retained the undersigned counsel to represent him in this matter and has agreed to pay them a reasonable attorneys fees and expenses, pursuant to of the Texas Business Organizations Code.

## Count 3
### TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT

66.     Steele incorporates herein by reference for all purposes the allegations contained in Paragraphs 2 through 65 above, which are asserted herein as if set forth in full.

EXHIBIT "A" - PAGE 142 of 153

Copy from re:SearchTX

67.     At all material times, Steele is, and has been, a "consumer" as that term is defined by §17.45(4) of the Texas Business and Commerce Code Ann. (Vernon Supp. 2000) known as the Texas Deceptive Trade Practices - Consumer Protection Act (the "DTPA"). Further, ASB have offered "goods" and/or "services" for sale in the nature of a mortgage loan transaction of a homestead as contemplated within Tex. Bus. & Com. Code § 17.45(2).

68.     Pursuant to the DTPA as contained in Tex. Bus. & Com. Code §17.50, Steele specifically asserts the following claims under §17.50:

   a.  ASB employed false, misleading, and/or deceptive acts or practices as provided in Tex. Bus. & Com. Code § 17.50(a)(1);

   b.  ASB engaged in an unconscionable course of conduct as provided under Tex. Bus. & Com. Code §17.50(b)(4).

69.     ASB used or employed false, misleading, or deceptive acts or practices including, without limitation, the following:

   a.     ASB's sales pitch intentionally misrepresented, omitted and/or concealed key facts concerning the goods and services it would provide, and the nature of its business relationships with the other persons or entities, in order to induce Steele into transacting business with ASB. If Steele had disclosed the true nature of the goods and services, and business relationships with the other persons or entities, Steele would never have conducted business with ASB; and

   b.     ASB took advantage of Steele's lack of knowledge and experience to a grossly unfair degree in inducing Steele to enter the mortgage loan transaction. Furthermore, in falsely representing the goods and services, the business relationships with the other persons or entities, and the suitability of the goods and services for use by Steele, ASB took advantage of the

Copy from re:SearchTX

lack of knowledge, ability, experience, or capacity of Steele, to his detriment, to a grossly unfair degree.

70.     ASB committed the following false, misleading, or deceptive acts or practices prohibited by the following sections of Tex. Bus. & Com. Code §17.46:

(2)     causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(5)     representing the goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have;

(7)     representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(12)    representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(14)    misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

(24)    failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

71.     Steele relied on the foregoing false, misleading, or deceptive acts and practices to his detriment by entering into the mortgage loan transaction with ASB.

72.     The foregoing false, misleading, or deceptive acts and practices were a producing cause of Steele's suffering economic damages, as well as other damages in amounts in excess of the minimum jurisdictional limits of this Court.

73.     Additionally, because ASB's conduct was committed knowingly and/or intentionally, Steele suffered injuries for which he is entitled to recover treble damages and pre-judgment and post-judgment interest at the highest lawful rates. Moreover, pursuant to Texas

PLAINTIFF'S ORIGINAL PETITION                                                     PAGE 22

Copy from re:SearchTX

Business & Commerce Code §17.50(d), Steele is entitled to his reasonable and necessary attorney's fees, court costs and expenses.

## COUNT 4
### TEXAS FAIR DEBT COLLECTION ACT
### CHAPTER 392 OF THE TEXAS FINANCE CODE

74. Steele incorporates herein by reference for all purposes the allegations contained in Paragraphs 2 through 73 above, which are asserted herein as if set forth in full.

75. This action arises under the Fair Debt Collection Act contained in Chapter 392 of the Texas Finance Code. (the "Act"). ASB used coercive and unlawful threats of foreclosure of Steele's homestead for coordinated pressure in other legal matters to suppress Steele's ability to object to a separate settlement agreement in a federal bankruptcy proceeding involving both ASB and Steele as well as his related entities.

76. ASB refused to accept a routine mortgage payment tendered by Steele at ASB's Beckham branch, thereby falsely creating a mortgage deficiency and default on his mortgage loan. An ASB employee advised Steele that she had been instructed by her supervisor not to accept the payment.

77. ASB provided no contemporaneous explanation for the refusal to accept payment and did not identify any default or deficiency justifying such action.

78. The refusal to accept payment, coupled with the involvement of ASB's litigation counsel, constituted an improper and bad-faith use of mortgage servicing and foreclosure posture as leverage in disputes unrelated to routine loan performance, and further evidence a pattern of coordinated conduct designed to exert pressure on Steele while impairing his ability to protect his legal and property rights.

79. On May 5, 2025, ASB's counsel, forwarded correspondence to Steele with respect

---

PLAINTIFF'S ORIGINAL PETITION PAGE 23

Copy from re:SearchTX

to, among other things, a notice of foreclosure sale, wherein Bowen, on behalf of ASB, threatened that ASB would only remove a nonjudicial sale of the homestead of Steele and his wife if Steele and his related entity SBI, promised to take no act to interfere, hinder, or delay the consummation, closing, and finality of unrelated settlements of all claims and causes of action related to motions to approve a settlement in an unrelated bankruptcy proceeding. The coercive letter threatened and warned of foreclosure of Steele's homestead <u>unless</u> Steele and SBI promised not to object to the settlements, object to or oppose the approval of a compromise settlement in the pending bankruptcy proceeding or initiate any litigation in any forum arising out of, or related to, the settlements. The foregoing threats were made while admitting that there were "direct conflicts between [Steele] and ASB."

80.     Steele is a "consumer" with "consumer debt" as defined by §392.001(1) and (2) respectively of the Act.

81.     ASB is a "debt collector" as defined by §392.001(6) of the Act participating in "debt collection" as defined by §392.001(5) of the Act.

82.     ASB committed a violation of §392.301 of the Act by using threats, coercion, or attempts to coerce that employ the following practices prohibited by the following sections of §392.301:

(1) using or threatening to use violence or other criminal means to cause harm to a person or property of a person;

(2 ) accusing falsely or threatening to accuse falsely a person of fraud or any other crime;

(3) representing or threatening to represent to any person other than the consumer that a consumer is willfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute;

(4) threatening to sell or assign to another the obligation of the consumer and

Copy from re:SearchTX

falsely representing that the result of the sale or assignment would be that the consumer would lose a defense to the consumer debt or would be subject to illegal collection attempts;

(7) threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or

(8) threatening to take an action prohibited by law.

83.     ASB committed a violation of §392.303 of the Act by the use of unfair or unconscionable means that employ the following practices in violation of the following sections of §392.303:

(2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer

84.     ASB committed a violation of §392.304 of the Act by the use of fraudulent, deceptive, or misleading representation that employs practices in violation of the following sections of that employ the following practices in violation of the following sections of §392.304:

(3) representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer;

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

(13) representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion;

(14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;

(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

---

Copy from re:SearchTX

85. The foregoing wrongful conduct and/or acts were committed against Steele and constitute a criminal offense under §392.402 of the Act.

86. ASB's wrongful acts and/or conduct caused injury to Steele, which resulted in damages to Steele.

87. Steele has suffered actual damages pursuant to §392.403(a)(2) of the Act in an amount in excess of the minimum jurisdictional limits of this Court.

88. Steele seeks additional damages under the Act for the recovery of at least $100 for each violation as authorized by §392.403(c) of the Act.

89. Steele is entitled to recover the attorney's fees reasonably related to the amount of work performed and costs pursuant to §392.403(b) of the Act.

90. Further, Steele is entitled to injunctive relief to prevent or restrain a violation of the Act pursuant to §392.403(a)(1) of the Act.

## COUNT 5
### REQUEST FOR DECLARATORY RELIEF
### (AGAINST ASB)

91. Steele incorporates herein by reference for all purposes the allegations contained in Paragraphs 2 through 90 above, which are asserted herein as if set forth in full.

92. The Declaratory Judgment Act, Sec. 37.001 *et seq.* of the Texas Civil Practice & Remedies Code, authorizes this Court to declare the rights and other legal relations of the parties to this dispute.

93. An actual, justiciable controversy has arisen and now exists between Steele and ASB concerning the respective rights and duties of the parties under the indemnity contracts.

94. Steele's request declaratory relief declaring that ASB is obligated to indemnify and/or advance to Steele his reasonable attorneys' fees and expenses incurred to date and on a

Copy from re:SearchTX

current, ongoing basis, subject to an appropriate undertaking, and requiring ASB to promptly pay such amounts pursuant to:

(a)     contractual indemnity under Section EIGHTH of the Amended and Restated Certificate of Formation of ASB effective May 12, 2022;

(b)     contractual indemnity under Section 7.08 of the Second Amended and Restated Bylaws;

(c)     statutory mandatory indemnity under Texas Business Organizations Code §8.051; and

(d)     statutory permissive indemnity under Texas Business Organizations Code   §8.101.

## VIII.
### ATTORNEY'S FEES

95.     Steele incorporates herein by reference for all purposes the allegations contained in Paragraphs 2 through 94 above, which are asserted herein as if set forth in full.

96.     Steele has retained the undesigned counsel to bring this suit to enforce Steele's indemnification rights.  Steele is, therefore, entitled to recover an additional sum to compensate for the reasonable attorney's fees, costs and expenses incurred by him in bringing this suit, with further and subsequent awards of attorney's fees in the event of appeals from this Court in accordance with Texas law including, without limitation (a) §38.001 of the Texas Civil Practice & Remedies Code, (b) §37.009 of the Texas Civil Practice & Remedies Code, (c) §17.50(d) of the Texas Business & Commerce Code,  (d) §392.403(b) of the Texas Finance Code, (e) §8.101 et seq. of the Texas Business Corporations Code and (f) Section EIGHTH of the Amended and Restated Certificate of Formation of ASB.

## IX.
### EXEMPLARY DAMAGES

97.     Steele incorporates herein by reference for all purposes the allegations contained in Paragraphs 2 through 96 above, which are asserted herein as if set forth in full.

Copy from re:SearchTX

98. The acts of ASB asserted herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice. In order to punish ASB for such unconscionable overreaching and to deter such actions and/or omissions in the future, Steele seeks recovery from ASB of exemplary damages as provided by Chapter 41 of the Texas Civil Practice and Remedies Code.

## X.
### NO WAIVER

99. By filing this lawsuit, Steele does not waive or release any rights, claims, causes of action, or defenses or make any election of remedies that he has, but expressly reserves such rights, claims, causes of action and defenses.

## XI.
### CONDITIONS PRECEDENT

100. All conditions precedent necessary for Steele to recover in this action have occurred, have been performed, or have been waived.

## XII.
### CONCLUSION & PRAYER

101. For the foregoing reasons, Plaintiff Brandon T. Steele respectfully requests that the Court:

(1) issue citation for service upon Defendant American State Bank;

(2) render a Final Judgment against Defendant American State Bank awarding Plaintiff Brandon T. Steele damages incurred as a result of the actions of Defendant American State Bank complained of herein;

(3) grant Plaintiff Brandon T. Steele such declaratory relief requested herein;

(4) award Plaintiff Brandon T. Steele exemplary damages as requested herein;

(5) award Plaintiff Brandon T. Steele his reasonable and necessary attorneys' fees, court costs and expenses;

---

PLAINTIFF'S ORIGINAL PETITION PAGE 28

Copy from re:SearchTX

(6)     award Plaintiff Brandon T. Steele his pre-and post-judgment interest on all monetary relief at the highest rates allowed by law; and

(7)     award Plaintiff Brandon T. Steele such other and further relief to which he may show himself justly entitled at law or in equity.

Respectfully submitted,

**FRIEDMAN & FEIGER, L.L.P.**

By: */s/ Lawrence J. Friedman*
      **LAWRENCE J. FRIEDMAN**
      State Bar No. 07469300
      lfriedman@fflawoffice.com
      **RICHARD W. WINN**
      State Bar No. 21779700
      rwinn@fflawoffice.com
      **Elizabeth N. Hiles**
      State Bar No. 24144576
      lhiles@fflawoffice.com
17304 Preston Road, Suite 300
Dallas, Texas 75252
(972) 788-1400 (Telephone)
(972) 788-2667 (Telecopier)

**ATTORNEYS FOR PLAINTIFF
BRANDON T. STEELE**

1145225

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tracy Head on behalf of Larry Friedman
Bar No. 07469300
lfsec@fflawoffice.com
Envelope ID: 111662505
Filing Code Description: Original Petition
Filing Description: Plaintiff's Original Petition
Status as of 2/26/2026 3:40 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ava Avedikian | | lfpara@fflawoffice.com | 2/24/2026 3:37:02 PM | SENT |
| Debbie Perrone | | fftemp1@fflawoffice.com | 2/24/2026 3:37:02 PM | SENT |
| Tracy Head | | lfsec@fflawoffice.com | 2/24/2026 3:37:02 PM | SENT |
| Larry Friedman | | lfriedman@fflawoffice.com | 2/24/2026 3:37:02 PM | SENT |
| Richard Winn | | rwinn@fflawoffice.com | 2/24/2026 3:37:02 PM | SENT |

**EXHIBIT "A" - PAGE 152 of 153**

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tracy Head on behalf of Larry Friedman
Bar No. 07469300
lfsec@fflawoffice.com
Envelope ID: 113264282
Filing Code Description: Petition
Filing Description: Plaintiffs' Original Petition and Application for Injunctive Relief
Status as of 4/6/2026 1:55 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ava Avedikian | | lfpara@fflawoffice.com | 4/6/2026 10:25:44 AM | SENT |
| Richard Winn | | rwinn@fflawoffice.com | 4/6/2026 10:25:44 AM | SENT |
| Larry Friedman | | lfriedman@fflawoffice.com | 4/6/2026 10:25:44 AM | SENT |
| Tracy Head | | lfsec@fflawoffice.com | 4/6/2026 10:25:44 AM | SENT |
| Debbie Perrone | | fftemp1@fflawoffice.com | 4/6/2026 10:25:44 AM | ERROR |

Copy from re:SearchTX