## CAUSE NO. 26-0959-C

| | | |
|---|---|---|
| BRANDON TRACE STEELE, AND ANDREA IRENE STEELE, TRUSTEES OF ARROYO PICOSA REVOCABLE TRUST | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § § | 241st JUDICIAL DISTRICT |
| AMERICAN STATE BANK, KELLY M. SANDERS, IN HIS CAPACITY AS TRUSTEE AND BRUCE A. STOCKARD IN HIS CAPACITY ON BEHALF OF AMERICAN STATE BANK | § § § § § § § § | |
| Defendant. | § | SMITH COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED PETITION AND APPLICATION FOR INJUNCTIVE RELIEF

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Brandon Trace Steele and Andrea Irene Steele, Trustees of the Arroyo Picosa Revocable Trust ("Plaintiffs") and file this Plaintiffs' First Amended Petition and Application for Injunctive Relief complaining of and against American State Bank ("ASB") and Kelly M. Sanders in his capacity as Trustee (the "Trustee") and Bruce A. Stockard in his capacity on behalf of American State Bank ("Stockard") (ASB, the Trustee and Stockard are sometimes collectively referred to herein as the "Defendants"), and for causes of action would show the court the following:

## I.
## DISCOVERY CONTROL PLAN

1.      Discovery in this matter should be conducted in accordance with a Level 3 Discovery Control Plan.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION
FOR INJUNCTIVE RELIEF**                                                          **Page 1**
1155650

## II.
## PARTIES

2.        Plaintiff Brandon Trace Steele is a Trustee of the Arroyo Picosa Revocable Trust and an individual who resides in Smith County, Texas.

3.        Plaintiff Andrea Irene Steele is a Trustee of the Arroyo Picosa Revocable Trust, and an individual who resides in Smith County, Texas.

4.        Defendant American State Bank is a Texas chartered bank with its headquarters and principal place of business at 102 W. Front Street, Arp, Texas, in Smith County, Texas. ASB has already answered and appeared herein and may be served with a copy of this amended petition pursuant to Texas Rule of Civil Procedure 21a by serving its attorneys' of record, Scheef & Stone, L.L.P. at 2600 Network Boulevard, Suite 400, Frisco, Texas 75034

5.        Defendant Kelly M. Sanders is the Trustee named in that certain Deed of Trust (Security Agreement, Financing Statement) (the "Deed of Trust") executed on May 27, 2022, which secures the Promissory Note made the basis of this lawsuit and is an individual who has already answered and appeared herein and may be served with a copy of this amended petition pursuant to Texas Rule of Civil Procedure 21a by serving its attorneys' of record, Scheef & Stone, L.L.P. at 2600 Network Boulevard, Suite 400, Frisco, Texas 75034

6.        Defendant Bruce A. Stockard is an attorney representing ASB but also acts as the person purportedly conducting the sale pursuant to the Notice of Foreclosure Sale, without the Trustee, and without the appointment of a Substitute Trustee as required by the Deed of Trust herein. Mr. Stockard is an individual who has already answered and appeared herein and may be served with a copy of this amended petition pursuant to Texas Rule of Civil Procedure 21a by

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 2**
**FOR INJUNCTIVE RELIEF**
1155650

serving its attorneys' of record, Scheef & Stone, L.L.P. at 2600 Network Boulevard, Suite 400, Frisco, Texas 75034

## III.
## JURISDICTION AND VENUE

7.　　This Court has jurisdiction over this action pursuant to the Texas Constitution Article 5. Section 8 and Texas Civil Practice & Remedies Code section 65.021(a).

8.　　Venue in Smith County is mandatory in this case under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property and the removal of encumbrances from the title to real property located in Smith County, Texas.

## IV.
## CLAIMS FOR RELIEF

9.　　Plaintiffs seek monetary relief in excess of $1,000,000. *See* TEX. R. CIV. P. 47(c)(3).

## V.
## FACTS

10.　　This lawsuit arises from Defendants' multiple attempts to foreclose upon Plaintiffs' homestead. This is at least the third attempt by ASB to foreclose on Plaintiffs' homestead. Plaintiffs seek a Temporary Restraining Order and Temporary/Permanent Injunction to stop Defendants' foreclosure of Plaintiffs' homestead located in Smith County, Texas. Plaintiffs also seek declaratory relief from the Court.

### A.　Plaintiffs' Property and Homestead

11.　　Plaintiffs are husband and wife and currently reside on approximately 169.798 acres of property consisting of three (3) tracts of land including (1) Tract 1 with approximately 166.798 acres, (2) Tract 2 with 1.0 acre and (3) Tract 3 with 2.0 acres located at 10693 County Road 2180, Whitehouse, Smith County, Texas, 75791 (all collectively the "Property"). The resulting

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**　　　　　　　　**Page 3**
**FOR INJUNCTIVE RELIEF**
1155650

approximate 169.798 acres of Property constitutes Plaintiffs' homestead. A true and correct copy of a Legal Description of Plaintiffs' homestead is attached hereto as **Exhibit A** and incorporated herein by reference.

## B.   Promissory Note and Deed of Trust

12.   On or about May 27, 2022, the Arroyo Picosa Revocable Trust, as Borrower, executed a Promissory Note with ASB, as Lender. The Trustees of the Borrower who executed the Promissory Note are: (1) Brandon Trace Steele, Individually and as Trustee of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022, and (2) Andrea Irene Steele, Individually and as Trustee of the Arroyo Picosa Revocable Trust under trust instrument dated March 29, 2022. A true and correct copy of the Promissory Note is attached hereto as **Exhibit B** and incorporated herein by reference. The Promissory Note was secured by a Deed of Trust (Security Agreement, Financing Statement) also dated May 27, 2022 (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C** and incorporated herein by reference. The Deed of Trust granted ASB a lien against the Property.

## C.   Year 6 Balloon Payment, Fixed Rate

13.   The loan product chosen by Plaintiffs and ASB was termed a "Year 6 Balloon Payment, Fixed Rate" loan. Principal and interest on the Promissory Note are payable in monthly installments of $23,981.52 (based on a 300 month amortization) each month beginning June 27, 2022 and continuing regularly in like installments on the same day of the month in each period. If on November 27, 2027, Borrower still owes amounts under this Note, Borrower will pay those amounts on that date, which is called the "Maturity Date" when all unpaid principal and interest is due and payable.

## D.   ASB Has Previously Improperly Noticed Defaults and Posted Plaintiffs' Property

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 4**
**FOR INJUNCTIVE RELIEF**
**1155650**

**for Foreclosure Which Plaintiffs Cured Anyway By Agreement**

14.     ASB's latest attempt to foreclose on Plaintiffs' homestead is at least the third defective attempt at foreclose. ASB's has previously posted a notice of foreclosure of the Plaintiffs' Property for foreclosure scheduled for May 6, 2025, but that posting was eventually removed as more fully discussed in Paragraphs P through R below which focuses on ASB's broken promise to enter into a Reinstatement and Modification Agreement In addition, ASB's second attempt to foreclosure occurred pursuant to a Notice of Foreclosure Sale posted on February 27, 2026 for foreclosure on April 7, 2026, which more fully discussed in the following Paragraph E below.   Therefore, Plaintiffs will first focus on the last two pending Notices of Foreclosure scheduled for April 7, 2026, and  June 2, 2026 and then return to a discussion of the earlier posting for foreclosure scheduled for May 6, 2025 which focuses on ASB's improper acceleration of the debt and broken promise to enter into a Reinstatement  and Modification Agreement

**E.     Second Notice of Foreclosure Sale Scheduled for Tuesday April 7, 2026**

15.     On February 27, 2026, ASB, by and through its attorney Defendant Bruce A. Stockard, and without notice from the Trustee named in the Deed of Trust or the appointment of a Substitute Trustee, purportedly served a Notice of Foreclosure Sale for April 7, 2026. A true and correct copy of the foregoing ASB's Notice of Foreclosure Sale is attached hereto as **Exhibit D** and incorporated herein by reference.

**F.     Temporary Restraining Order Dated April 6, 2026**

16.     On April 6, 2026, Judge Reeve Jackson, of the 114 Judicial District Court of Smith County, Texas signed a Temporary Restraining Order in this cause due to the numerous objections,

errors and defects in Second Notice of Foreclosure Sale.[1] A true and correct copy of the Temporary Restraining Order dated April 6, 2026 is attached hereto as **Exhibit E** and incorporated herein by reference. The hearing on Plaintiffs' Motion for Temporary Injunction scheduled for April 20, 2026, was cancelled by agreement of the parties.

**G.     Third Notice of Foreclosure Sale for Tuesday June 2, 2026**

17.     Despite the numerous objections, errors and defects identified previously by Plaintiffs in the second Notice of Foreclosure Sale,  ASB, again on May 6, 2026, ASB, by and through its attorney Defendant Bruce A. Stockard, and without notice from the Trustee named in the Deed of Trust or the appointment of a Substitute Trustee, purportedly served its third Notice of Foreclosure Sale for June 2, 2026.  A true and correct copy of the foregoing ASB's third Notice of Foreclosure Sale is attached hereto as **Exhibit F** and incorporated herein by reference.  The only apparent change in this new, third Notice of Foreclosure Sale is that the signature block for Bruce A Stockard added the words "Substitute Trustee" under his signature.  ASB failed to cure numerous objections, errors and defects as more fully discussed below.

**H.     Failure to Properly Serve Notice of Foreclosure Sale**

18.     ASB did attach a transmittal envelope accompanying the Notice of Foreclosure Sale for June 2, 2026, this time as opposed to ASB's failure to attach such transmittal envelope for the prior Notice of Foreclosure Sale on April 7, 2026. See Exhibit D. The transmittal letter clearly establishes  that the method, type or date of service  attempted was by U.S. postage mail on May

---

[1]   The case was transferred by Order of Transfer to this 241st Judicial District Court of Smith County on April 6, 2026.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                              **Page 6**
**FOR INJUNCTIVE RELIEF**
**1155650**

6, 2026, but not by certified mail, return receipt requested. The front of the transmittal envelope

addresses the letter as follows:

> Andrea Irene Steele and Brandon Trace Steele, Trustees of the Arroyo Picosa
> Revocable Trust
> 10693 CR 2180
> Whitehouse, TX 75791

19.    Neither of the Plaintiffs, collectively or individually, received the Notice of

Foreclosure Sale by certified mail, return receipt requested as required by Paragraph 11 of the

Deed of Trust (Exhibit C) and Texas Property Code § 51.002(b)(3).   Brandon Steele on behalf of

Plaintiffs denies receiving a copy of the Notice of Foreclosure Sale by certified mail, return receipt

requested, or signing a certified mail return receipt addressed to him.   Without such evidence,

Defendants cannot establish that Defendants' Notice of Foreclosure Sale on May 6, 2026, was

timely sent to Plaintiffs in strict compliance with the terms of the Deed of Trust or Texas Property

Code § 51.002(b)(3).

## I.    Notice of Foreclosure Sale was Served by ASB's Attorney, not by Either the Trustee, or Substitute Trustee

20.    Pursuant to the Deed of Trust, legal title remains in "Kelly M. Sanders, Trustee",

the trustee named in the Deed of Trust. Plaintiffs have received no notice of the appointment of a

Substitute Trustee for either the April 7 or the June 2 foreclosure sales. Paragraph 11 of the Deed

of Trust provides as follows:

> 11.    **POWER OF SALE**. If Grantors shall default hereunder,
> **Grantors hereby authorize and empower the Trustee**, at the request of
> Beneficiary, at any time during the continuance of any default to sell all or
> any portion of the Mortgaged Premises, at public auction, to the highest
> bidder, for cash…(emphasis added)

Therefore, the Trustee is currently holding legal title to the Property and is the only party currently

authorized and empowered to conduct the foreclosure sale.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**    Page 7
**FOR INJUNCTIVE RELIEF**
1155650

21.   The Notice of Foreclosure Sale on June 2, 2026, was purportedly sent by ASB's Attorney, Mr. Bruce Stockard but legal title and the "Power of Sale" would appear to be in Kelly M. Sanders, Trustee pursuant to the Deed of Trust. Although Mr. Stockard as ASB's attorney did add the words "Substitute Trustee" under his signature block to the latest Notice of Foreclosure Sale signed May 6, 2026, there has apparently been no appointment by ASB or Kelly M. Sanders, Trustee of a Substitute Trustee and Plaintiffs deny receipt of any notice of appointment of a substitute trustee. The Notice of Foreclosure Sale is in violation of the foregoing "Power of Sale" provision in Paragraph 11 set forth above and not in strict compliance with the terms of the Deed of Trust. In this regard, Texas Property Code § 51.0076 permits the appointment of a trustee or substitute trustee to be made in an otherwise proper notice of sale but only if the notice contains the following notice in all capital letters and boldface type:

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR SAUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

Clearly, ASB failed to strictly comply with (1) Paragraph 11 of the Deed of Trust and Texas Property Code § 51.0076 and therefore has failed to establish that Mr. Bruce A. Stockard is a validly appointed Substitute Trustee authorized to conduct the foreclosure sale on June 2, 2026.

22.   Although ASB's own Notice of Foreclosure Sale in Paragraph 2 incorrectly and vaguely references "Notice of Substitute Trustee's Sale",  it clearly is not a notice of substitute trustee's sale since there is no reference to the transfer of the "Power of Sale" in Paragraph 11 of the Deed of Trust. See only general reference to a Substitute Trustee's Sale in the Notice of Foreclosure Sale below:

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 8**
**FOR INJUNCTIVE RELIEF**
**1155650**

Place:     In the area designated by the Commissioners Court of such County, pursuant to §51.002 of the Texas Property Code as the place where foreclosure sales are to take place (if no such place is so designated, the sale will take place in the area where **this Notice of Substitute Trustee's Sale is posted**). (emphasis added)

However, "this" (i.e. The Notice of Foreclosure Sale) is neither a notice of the appointment of a substitute trustee nor a Notice of Substitute Trustee's Sale, since no Substitute Trustee has been appointed nor is there (a) a transfer of the "Power of Sale" in Paragraph 11 of the Deed of Trust or (b) compliance with Texas Property Code § 51.0076 as discussed above. An appointment of substitute trustee would have to come from the Trustee Kelly M. Sanders or at least ASB, not ASB's attorney. The person or entity who might have appointed Mr. Stockard is at best assumed and, therefore, the Notice of Foreclosure Sale is not in strict compliance with the terms of the Deed of Trust or Texas Property Code § 51.0076.

**J.     ASB, and its Attorney, Failed to Comply with Substitute/Successor Trustee Requirements in the Deed of Trust**

23.     Paragraph 12 of the Deed of Trust (Exhibit C) provides:

12.     **SUBSTITUTE /SUCCESSOR TRUSTEE.** At the option of the Beneficiary, with or without any reason, a successor substitute trustee may be **appointed by the Beneficiary** without any formality **other than a designation in writing of a successor or substitute trustee,** who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named, the same as if the successor or substitute trustee had been named original Trustee herein; and such right to appoint a successor substitute trustee shall exist as often and whenever the Beneficiary desires.

24.     There is no designation in writing of a successor or substitute trustee by the Beneficiary in compliance with Paragraph 12 above and therefore the Notice of Foreclosure Sale is not in strict compliance with the terms of the Deed of Trust.

**K.     Mr. Stockard and his Law Firm are Advocates Not Fair and Impartial Trustees**

25.   An attorney such as Defendant Stockard is an advocate on behalf of his Client ASB, a member of the law firm of Scheef & Stone representing all three Defendants in this lawsuit and himself a party to this lawsuit in his capacity on behalf of ASB.  A Trustee, in contrast, must be fair and impartial. Therefore Scheef & Stone and particularly attorney Bruce A. Stockard, are disqualified from serving as a fair and impartial Trustee, or Substitute Trustee,  pursuant to the Notice of Foreclosure Sale or to exercise the powers of the Trustee, or Substitute Trustee under the Deed of Trust.

**L.    The Failure to Act In Capacity as Trustee or Substitute Trustee in Posting the Notice of Foreclosure Sale Breaches Duties Owed by Trustee to Plaintiffs**

26.   Under Texas law, a substitute trustee "exercising the authority to foreclose in accordance with the terms of a deed of trust does not act merely as an agent or employee of the lienholder but has a separate capacity with a particular legal responsibility." *Johnson v. Ocwen Loan Servicing, LLC*, No. 02:09-CV-00047, 2009 WL 2215103, at *4 (S.D. Tex. July 22, 2009) (quoting *Person v. Black*, 980 S.W.2d 818, 822 (Tex. App.—San Antonio 1998, no pet)). It is the substitute trustee's duty to "act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust." *Myrad Properties, Inc. v. La Salle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009); *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). "This duty is breached when the trustee fails to comply strictly with the terms of the deed of trust or the notice and sale provisions of § 51.002 of the Texas Property Code." *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011).

27.   Defendant Bruce A. Stockard is a party defendant, an  attorney and advocate for ASB in his capacity as a member of his law firm and is unable to act with impartiality or fairness in performing his duties. An attorney is an advocate while a Trustee must be fair and impartial.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                     **Page 10**
**FOR INJUNCTIVE RELIEF**
**1155650**

Therefore Scheef & Stone and particularly attorney Bruce A. Stockard, are disqualified from serving as a fair and impartial Trustee, or Substitute Trustee, pursuant to the Notice of Foreclosure Sale or to exercise the powers of the Trustee, or Substitute Trustee under the Deed of Trust.

28.     As demonstrated by the Exhibits attached to this Petition, Defendant Stockard  is long-time retained counsel for ASB in this and other matters and has an extensive business relationship with the owners of ASB. The foregoing evidence establishes that Scheef & Stone and particularly attorney Bruce A. Stockard was clearly acting with partiality, acting in bad faith, and committing fraud against the Borrower, the Plaintiffs  and potential third-party bidders.

29.     Defendant Stockard and representatives of ASB have personal animosity toward Plaintiff Brandon Steele, the principal of the Borrower, which further prevents them from acting with impartiality.  As more fully discussed below, Defendant Stockard has previously improperly posted Plaintiffs' Property for foreclosure, only to be forced to remove such postings. In addition, as more fully discussed below, Plaintiffs and ASB are currently engaged, and have been engaged as adversaries in numerous multifaceted litigations,  including one lawsuit originally filed in Dallas County Texas  just 3 days before ASB's posting of its second Notice of Foreclosure Sale signed February 27, 2026, for April 7, 2026, foreclosure. That lawsuit originally filed in Dallas County against ASB seeks in excess of $655,953.57 (and growing as litigation ensues)  for contractual and statutory advancement and  indemnification based upon the legal work performed for Steele as the former Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022. That lawsuit originally filed in Dallas County seeks contractual and statutory advancement and indemnification for legal fees and expenses incurred  by 5 different law firms engaged on Brandon Steele's  behalf as a result of his service to ASB as the former Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                     **Page 11**
**FOR INJUNCTIVE RELIEF**
**1155650**

**M.    Posting of Notice of Foreclosure at the Smith County Courthouse**

30.    Paragraph 11 of the Deed of Trust (Exhibit C) provides as follows:

### 11.    POWER OF SALE:

***

"Notice of such proposed sale shall be given by written notice thereof as provided by applicable law. In addition, Beneficiary shall, **at least twenty-one days preceding the date of sale**, serve written notice of the proposed sale **by certified mail on each debtor obligated to pay the debt** secured hereby according to the records of Beneficiary in the manner prescribed by applicable law. (emphasis added)

The third Notice of Foreclosure Sale signed May 6, 2026, was purportedly filed stamped at 2:02 p.m. on May 7,2026, with the Smith County Clerk, and posted by the Smith County Clerk in the place designated for the posting of notices in Smith County.   True and correct copies of photographs taken by Mr. Steele on behalf of Plaintiffs on May 28, 2026, of the foregoing posted third Notice of Foreclosure Sale are attached hereto as **Exhibit G** and incorporated herein by reference.   The third Notice of Foreclosure Sale signed May 6, 2026,  posted at the Smith County Courthouse (Exhibit G) appears to be identical to the third Notice of Foreclosure Sale attached as Exhibit F.

**N.    The Notice of Foreclosure Sale Fails to Establish the Persons or Entities Served and the Manner or Method of Service**

31.    The third Notice of Foreclosure Sale signed May 6, 2026, attached as Exhibit F, however, is not addressed or  directed to any person or entity, much less the Borrower, Plaintiffs collectively or even individually. As more fully discussed above,  Paragraph 11 of the Deed of Trust and Texas Property Code § 51.0076.require service of "written notice of the proposed sale by certified mail **on each debtor** obligated to pay the debt. (emphasis added)" Certified mail "on each debtor" requires the identification of the debtor and person or entity to be served.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                    **Page 12**
**FOR INJUNCTIVE RELIEF**
**1155650**

32.     The third Notice of Foreclosure Sale signed May 6, 2026 (Ex. F), itself, contains no confirmation of the method or manner of service, the persons or entities served or the place of service including service by certified mail as required by Paragraph 11 of the Deed of Trust and Texas Property Code § 51.0076. Service by Certified mail also requires the identification of the address or location of delivery.

33.     Defendants failed to send the third Notice of Foreclosure Sale signed May 6, 2026, in the manner and method required by the Deed of Trust and Texas Property Code § 51.0076, therefore, the Notice of Foreclosure Sale signed May 6, 2026, is not in strict compliance with the terms of the Deed of Trust.

**O.     The Notice of Foreclosure Sale Fails to Establish that Additional Borrowers were Served**

34.     As set forth above, pursuant to Paragraph 11 of the Deed of Trust and Texas Property Code § 51.0076, ASB was required to "serve written notice of the proposed sale by certified mail **on each debtor obligated to pay the debt** secured hereby" (emphasis added). Pursuant to the Revocable Trust Rider, not only was the Arroyo Picosa Revocable Trust a debtor, but Brandon Trace Steele and Andrea Irene Steele were also debtors entitled to receive Notice of Foreclosure Sale as follows:

> **ADDITIONAL BORROWER(S).**     The     term     "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. **Each party signing this Rider below** (whether by accepting and agreeing to the terms and covenants contained herein or by acknowledging all of the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and **shall be enforceable by the Lender as if**

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                      **Page 13**
**FOR INJUNCTIVE RELIEF**
1155650

**EXHIBIT "F" - PAGE 13 of 44**

such party were named as "Borrower" in the Security Agreement. (emphasis added)

35.    Additionally, section 51.002(b)(3) of the Texas Property Code provides

(b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

(3) serving written notice of the sale **by certified mail** on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt. (emphasis added)

36.    But, the third Notice of Foreclosure Sale signed May 6, 2026, attached as Exhibit F was not properly served upon any of the debtors obligated to pay the debt and therefore, the third Notice of Foreclosure Sale signed May 6, 2026  is not in strict compliance with either the Deed of Trust or Texas Property Code § 51.0076,

**P.    Earlier Unsuccessful Attempts By Defendants to Foreclose on Plaintiffs' Property**

37.    On or about November 29, 2024, Defendant Strickland, as attorney for ASB forwarded to Plaintiffs correspondence including notice of default recognizing a recent payment by Plaintiffs but demanding payment of $49,162.12 for the months of October and November 2024.  A true and correct copy of the foregoing November 29, 2024 correspondence is attached hereto as **Exhibit H** and incorporated herein by reference.

38.    However, during the prior week, on November 22, 2024,  Mr. Steele on behalf of Plaintiffs, had forwarded correspondence to Mr. Petter Bennis, CEO of ASB and James W. Bowen, an attorney for ASB notifying ASB that ASB had prevented Plaintiffs from making timely payment on his mortgage as follows:

Peter,

Hope this message finds you well. I was making my mortgage payment in the drive through at the Bechman branch today at 5:45, ironically, I was also on

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                              **Page 14**
**FOR INJUNCTIVE RELIEF**
**1155650**

the phone with James and the lady in the window said that her supervisor told her that she could not accept my mortgage payment at this time. She was very polite and her name was Stacy Smith. Definitely nothing you need to worry about this weekend but please let me know when you can what I need to do to make my payment.

A true and correct copy of the foregoing November 22, 2024 correspondence is attached hereto as **Exhibit I** and incorporated herein by reference.

39.    On or about December 6, 2024, Defendant Strickland, as attorney for ASB forwarded to Plaintiffs correspondence including Notice of Acceleration. A true and correct copy of the foregoing December 6, 2024 correspondence is attached hereto as **Exhibit J** and incorporated herein by reference.

**Q.    ASB Fails to Abide by Their Proposal and Offer for a Reinstatement and Modification Agreement**

40.    By correspondence dated January 13, 2025, Defendant Stockard as attorney for ASB, presented a written proposal, at ASB's instruction, to Plaintiffs offering to reinstate and modify the Promissory Note upon the following grounds:

> …I have been instructed by Lender that it would still be willing to consider reinstating the Note if you were to meet certain conditions as a requirement before reinstatement would be put into effect. As a condition to reinstatement and which will be set forth in the form of a Reinstatement and Modification Agreement with terms acceptable to the Lender in its sole and absolute direction, you shall be required to send Lender $64,700.30, before January 31, 2025. Additionally, as a condition to reinstatement, you must produce evidence satisfactory to Lender of payment of the 2024 property taxes on the collateral for the Loan prior to January 30, 2025. Finally, upon request, you must allow Lender access to the Property for inspection and appraisal.

A true and correct copy of the foregoing January 13, 2025 correspondence is attached hereto as **Exhibit K** and incorporated herein by reference The deadline to meet the foregoing deadlines was February 1, 2025.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION                    Page 15
FOR INJUNCTIVE RELIEF**
1155650

41.     By correspondence dated later that afternoon on January 13, 2025, Brandon Steele, on behalf of Plaintiffs, responded: "I accept the terms of this letter, thank you." A true and correct copy of the foregoing January 13, 2025 correspondence is attached hereto as **Exhibit L** and incorporated herein by reference

42.     Brandon Steele, on behalf of Plaintiffs, then proceeded to forward to Defendant Stockard the following 5 separate written correspondences, requesting clarifications concerning the balance owed and an accounting of how ASB applied payments on the Promissory Note:

**Request No. 1**:  January 13, 2025 Exhibit L):

Would you mind also sending me a copy of the loans lender for 2024 please? where the payments where applied etc. please? I no longer receive statements, and the payment amount has appeared different than in the original loan agreement. Thanks for your help in this matter.

January 13, 2025 (Exhibit M) :

Additionally, could you please show me how this new payment request will be applied?

**Request No. 2**:  January 17, 2025 (Exhibit N)

Just following up here on the request of the 2024 payments ledger/breakdown of past payments and the sources and uses of how the requested January payment will be applied.

**Request No. 3**:     January 30, 2025 (Exhibit O)

This is my third request asking for basic information regarding my attached loan payment and to date I have not receive the requested information or even an acknowledgement of my email. As you know, ASB evidently stopped sending out loan payment request or statements last year to save dollars which I respect. However, I have simply asked for an allocation of payments for 2024 as well as a source and uses for your payment request from your letter dated 1/13/25. As you can see, my estate attorneys received the attached requested voucher on January 21st after your letter that was sent on January 13th. As you can see, there is no allocation of principal to the payment, it deviated from your payment request of 1/13/25 and additionally the payment does not match the requested loan payment on the loan agreement. And since

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                     **Page 16**
**FOR INJUNCTIVE RELIEF**
**1155650**

ASB no longer sends any kind of loan statements to its customers, or payment vouchers the only way I know to acquire this information is to ask for it. To date based on your lack of response ASB appears to be withholding this information from me which leaves me baffled. Additionally, this payment request deviates from your request in your letter dated January 13th.

Finally, as I have requested several times before I am simply trying to reconcile the payments ASB received in 2024 and additionally , I have three different payment requests in my possession for the month of January. *As in most all my interactions with the banks management team in 2024* I am not asking for any special treatment as the 93% owner of American State Bank but merely the same level of courtesy, respect, access to basic information and communication that any customer/investor should receive. Additionally, you not responding to my three emails leaves me confused based on pure professional courtesy. I look forward to your response.

**Request No. 4**:   January 31, 2025 (Exhibit P)

My 4th attempt to get communication as your letter of 1/21 offered. Attached please see the receipt of paid property taxes per your request. Again, I have attached a loan payment notice after the letter dated on 1/13 and the numbers differ. Which is correct? Can I please see the breakdown of your requested amount and why it differs. The banks internal system has a number that differs from the other. Not saying it's wrong just want to know what the discrepancy is and a breakdown which by law I am entitled to. If I don't get a response by 2:00 Peter ill just come by your office and you can maybe pull it up on the computer and we can walk thought it. Please advise,

**Request No. 5**:   April 15, 2025 (Exhibit Q)

Per your request I am attaching this letter to the four other correspondence that I have sent to you and to Mr. Bennis. I have requested clarification to my balance as well as asking for correct monthly payment amount of my mortgage as you can see it appears to be incorrect. Finally, after not responding to you I spoke to Peter Bennis on February 1st and he apologized for you not responding to my correspondence. He also said there was a payment discrepancy due to the fact that the loan was on non-accrual and that he would get back to me with a reconciliation and payment information. To date I have received nothing.

I have received no payment notice nor balance information and as I told Mr. Bennis I have no idea what the payment amount should be. As I told you on the phone there is no reference to an amount owed or even a balance owed in this letter. I am blind and need the banks assistance in telling me what is owed

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    Page 17
**FOR INJUNCTIVE RELIEF**
1155650

for the 5th request. Please immediately take the foreclosure notice down to avoid escalation.

True and correct copies of each of the foregoing correspondences are attached hereto as **Exhibits**

**L  through Q** respectively and incorporated herein by reference.

43.      The Requests set forth in Exhibits L-Q constitute "Requests for Information" ("RFI") and "Qualified Written Requests" ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §2605(e) which provides in pertinent part as follows::

**(e) Duty of loan servicer to respond to borrower inquiries**

**(1) Notice of receipt of inquiry**

**(A) In general**

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

**(B) Qualified written request**
For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

**(2) Action with respect to inquiry**

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 18**
**FOR INJUNCTIVE RELIEF**
**1155650**

**(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

**(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

**(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower

44.     Pursuant to the correspondence identified in Request No. 4 above, Brandon Steele, on behalf of Plaintiffs, also served upon Mr. Stockard on January 31, 2025, a copy of the Smith Cunty Tax Office-Multiple Account Receipt- along with proof of payment, in full of all 2024 Property Tax Statements(Exhibit P). The foregoing correspondence was served to comply with one of the conditions set forth in Defendant Stockard's January 13, 2025 correspondence (Exhibit K).

45.     Finally, on February 1, 2025, Brandon Steele, on behalf of Plaintiffs, spoke by telephone with Mr. Peter Bennis, Chief Executive Officer of ASB, concerning Mr. Steele's

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                                 **Page 19**
**FOR INJUNCTIVE RELIEF**
**1155650**

requests for clarification of his balance and his request for correct monthly payment amounts on his mortgage which appeared to be incorrect. See Exhibits L through Q above. Mr. Bennis apologized for Mr. Stockard's failure to respond to the 5 Request Nos. 1-5 above and stated there was a payment discrepancy due to the fact that the loan was on non-accrual and that Mr. Bennis would get back to Steele with a reconciliation and payment information. However, Mr. Bennis, the CEO of ASB failed to "get back" to Mr. Steele as he had promised to do in his February 1, 2025 telephone conference.

46.     ASB and its attorneys have breached their duty of cooperation and breached their duty of good faith and fair dealing thereby making it impossible for Plaintiffs to determine the correct amounts required to pay off the Promissory Note and loan indebtedness, or how any payments made would be allocated. Plaintiffs were ready, willing and able to meet all the conditions of the written proposal contained in Mr. Stockard's correspondence dated January 13, 2025 (Exhibit K).

47.     On April 10, 2025, Mr. Bruce A. Stockard of Scheef & Stone purported to serve a Notice of Foreclosure Sale scheduled for May 6, 2025. A true and correct copy of the April 10, 2025 Notice of Foreclosure Sale is attached hereto as **Exhibit R** and incorporated herein by reference.

48.     On April 15, 2025, Mr. Andrew Ryan, a former attorney who had been newly hired to represent Plaintiffs at the time, forwarded correspondence to Mr. Stockard to follow-up on Mr. Steele's requests for clarifications of amounts due on the Promissory Note as follows:

> I just left you a voicemail. I represent Brandon Steele. I'm calling to find out: (1) what amount ASB claims is owed so that Brandon can pay it and have the foreclosure notice taken down; and (2) resolve the reconciliation and auto-debit issues so that lawyers don't have to get involved in what should be the routine auto-debit of his mortgage. Please give me a call back at

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 20**
**FOR INJUNCTIVE RELIEF**
**1155650**

214.347.7360 (office) or 214.417.0076 (cell). As you know, time is of the essence given the foreclosure notice. If we don't receive a prompt response, Brandon will have to pursue all other available options, including seeking a TRO against the foreclosure sale.

A true and correct copy of Mr. Ryan's April 15, 2025 correspondence is attached hereto as **Exhibit**

**S** and incorporated herein by reference.

49.      The next day, on April 16, 2025, Mr. Ryan forwarded correspondence to Mr.

Stockard, requesting the following:

Could you please also provide the following documents?

1 – The reconciliation statements that Brandon's emails have previously asked for.

2 – The amount currently past due on the loan. Not the accelerated amount, but the amount related to allegedly missed payments.

3 – The basis for the interest calculation. Neither the payoff statement nor the daily rate makes much sense. From the payoff statement, there's around $260,000 in interest that is supposedly due. The loan is for roughly $4M; that's about 1 year's interest at 6.25%. But the documents attached to Brandon's prior email show (re-attached here), as of the payment due on 12/27/24, the interest outstanding was $13,039.81—and no principal, so the principal had not been accelerated. So how did a year's worth of interest accrue between January 21st and today? Also, the daily interest amount is over $1,800, which would suggest an interest rate on this mortgage of 18%.

4 – The basis for the tax calculation. Brandon previously sent you his receipt from January 31, 2025 for paying the 2024 property tax. I'm attaching it here again. Yet the documents you sent me allege the property taxes for 2024 haven't been paid.

5 – Any other copies of a Loan Delinquent Notice (like the one attached) that were sent to Brandon after January 21, 2025.

6 - A copy of all notices of acceleration sent to Brandon and proof of receipt.

7 – A copy of the written notice, sent by certified mail, stating that the Trust is in default and giving the Trust at least 20 days to cure the default before the notice of sale.

If we don't get these documents, we will assume the Bank does not have them, as Brandon has been asking for documents for months (see his emails to you yesterday) and none were provided. I have asked Brandon for these documents. He is checking his records again but, as of today, does not believe any were sent to him.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 21**
**FOR INJUNCTIVE RELIEF**
**1155650**

**EXHIBIT "F" - PAGE 21 of 44**

A true and correct copy of the foregoing April 16, 2025 correspondence is attached hereto as **Exhibit T** and incorporated herein by reference,

50.     On April 21, 2025, Mr. Ryan forwarded correspondence to Stockard, requesting the following:

> It's been 5 days and we haven't heard anything back. At this point, I'm taking your silence as an admission by the bank has none of these documents and we will be making that representation to a Court in a motion for temporary restraining order. If you contend otherwise, or if the bank opposes the TRO, please let me know immediately.

A true and correct copy of the foregoing April 21, 2025 correspondence is attached hereto as **Exhibit U** and incorporated herein by reference

51.     Eventually the posting for the scheduled Tuesday May 6, 2025 Foreclosure Sale was taken down with the agreement of all parties.

**R.     ASB Has Both Accepted Large Amounts of Post-Acceleration Payments and Prevented Plaintiffs from Making Payments on the Promissory Note for Months**

52.     Notably, Defendants' own documents demonstrate that the Promissory Note was not treated as accelerated in practice. Although Defendants purported to accelerate the loan in early December 2024, they subsequently accepted substantial payments from Plaintiffs, including a payment in excess of $70,000 in December 2024. Thereafter, on January 21, 2025, Defendants issued a "Loan Delinquent Payment Notice" reflecting only a past-due monthly payment of approximately $23,712.21 and expressly stating that no principal balance was due. A true and correct copy of the Loan Delinquent Payment Notice is attached hereto as **Exhibit V** and incorporated herein by reference. This notice is inconsistent with a fully accelerated loan, under which the entire indebtedness would be immediately due and payable. Defendants' acceptance of post-acceleration payments and issuance of a standard delinquency notice demonstrate that

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION                    Page 22
FOR INJUNCTIVE RELIEF**
1155650

Defendants treated the loan as ongoing and not fully accelerated, thereby creating confusion as to the amount owed and preventing Plaintiffs from determining how to cure any alleged default

53.     On February 3, 2026, a conversation took place in the federal bankruptcy courthouse in Tyler, Texas, among Brandon Steele, on behalf of Plaintiffs, Plaintiffs' attorney Sarah Cox, Peter Bennis (CEO of ASB) and Patrick Schurr (ASB's counsel) during which Mr. Steele, on behalf of Plaintiffs, asked Peter Bennis why he had placed a digital alert on the banks "JackHenry" software system for tellers beginning in November 2024 that instructed bank tellers that they could not accept mortgage payments from Plaintiffs.  Mr. Bennis replied , that "no the message says on the system that the teller cannot accept a mortgage payment from you unless they get my personal permission".

54.     On February 3, 2026, Peter Bennis, CEO of ASB then expressly gave Plaintiffs permission to make post-acceleration payments and requested that Mr. Steele, on behalf of Plaintiffs, make two post-acceleration regular monthly payments which equals $47,963.04.

55.     In fact, ASB has accepted over $125,000.00 in payments after acceleration of the Promissory Note on December 6, 2024.  A true and correct copy of the Individual Loan Activity Statement of ASB dated February 2, 2026, received by Plaintiffs, is attached hereto as **Exhibit W** and incorporated herein by reference.  On February 4, 2026, two days after the date of the Individual Loan Activity Statement, ASB accepted the wire transfer payment, Bennis had permitted and requested on February 3, 2026, equaling two regular monthly payments by Plaintiffs on February 4, 2026, in the total amount of $47,963.04.  A true and correct copy of the foregoing wire transfer is attached hereto as **Exhibit X** and incorporated herein by reference. When ASB has asked for payments after the acceleration of the Promissory Note and Plaintiffs have been

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                        **Page 23**
**FOR INJUNCTIVE RELIEF**
1155650

permitted and allowed to make payments to ASB, Plaintiffs have promptly made payments.

However, ASB has blocked payments on numerous occasions as described herein.

56.   On March 24, 2026, Steele, on behalf of Plaintiffs, forwarded correspondence dated March 24, 2026, to each of the Board Members of ASB which stated, in pertinent part as follows:

> Dear Board Members,
>
> I hope this message finds you well and in good spirits. I wanted to follow up on a matter that Peter and I discussed last month at the courthouse, as I believe we made some progress in clearing up a previous misunderstanding. I am reaching out to request some additional clarification for everyone's benefit.
>
> Peter, as we talked about, **there is a message at the teller line indicating that I am not allowed to make a mortgage payment.** You clarified that the message actually says I can't make a payment without your permission—the last teller I spoke with didn't relay that important detail. On February 6th, you specifically requested that I make two months of mortgage payments by wire transfer, which I was happy to do.
>
> Given these circumstances, I am asking if the board would continue to honor that arrangement and allow me to make my loan payments. For clarity, Peter—based on our conversation in the presence of Sarah and your attorney—**is it now permissible for me to resume making mortgage payments?** As I shared with the judge during the hearing, when asked what I would be willing to pay, I responded, "whatever the bank asks me to do." I am happy to provide a copy of the court transcript if needed.
>
> Since you previously requested that I make two payments, which I did, my question is whether you will allow me to continue making payments and bring my mortgage current, as discussed in the courthouse. I am reaching out now, per your request of February 5th or 6th, to ask for your permission to make my mortgage payments per your request. (emphasis added)

A true and correct copy of the foregoing March 24, 2026 correspondence is attached hereto as

**Exhibit Y** and incorporated herein by reference.

**S.   Neither Defendant ASB, nor Its Counsel, Defendant Stockard, Can Be Fair and Impartial with the "Powers of Sale" Reserved to a Trustee or Substitute Trustee, Under the Deed of Trust**

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                     **Page 24**
**FOR INJUNCTIVE RELIEF**
1155650

57. On January 31, 2026, Brandon Steele, on behalf of Plaintiffs, forwarded correspondence to Peter Bennis, CEO of ASB entitled "Notice of Conflicted Counsel, Tainted Foreclosure Actions, and Demand to Cease Enforcement and Preserve Evidence", a true and correct copy of which is attached hereto as **Exhibit Z** and incorporated herein by reference. The foregoing correspondence provided in pertinent part as follows:

> This letter serves as formal notice to American State Bank ("ASB") that foreclosure-related actions taken by or on behalf of the Bank against me and my family are tainted by a material and non-waivable conflict of interest arising from the Bank's retention of Scheef & Stone LLP. A detailed conflict and withdrawal demand has been transmitted directly to Scheef & Stone LLP, which this letter expressly incorporates by reference.
>
> **Conflicted Counsel and Tainted Enforcement Actions**
>
> As ASB is now aware, I previously consulted with Scheef & Stone LLP in October 2024 regarding representation in matters directly involving ASB's adverse conduct, threatened foreclosure activity, and related litigation strategy. Notwithstanding that consultation, ASB later retained Scheef & Stone LLP to pursue foreclosure, acceleration, and demand actions against my homestead, including notices issued in December 2024 and subsequent enforcement efforts throughout 2025. Those actions were undertaken through conflicted counsel and are therefore voidable, unenforceable, and legally infirm.
>
> **Demand to Cease Enforcement and Maintain Status Quo**
>
> ASB is hereby placed on notice and demanded to immediately cease any foreclosure, acceleration, or enforcement activity based on notices or demands issued through conflicted counsel. ASB may not rely upon or enforce such tainted actions and must maintain the status quo unless and until unconflicted counsel is retained, all prior tainted actions are formally withdrawn, and any enforcement efforts are re-initiated in full compliance with applicable law and court supervision.

T. **Plaintiffs and ASB Have Recently Been, or Are Currently Involved in Numerous Lawsuits as Adversaries Which Magnifies Conflicts in Interest, Impartiality and Fairness Concerns**

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**        **Page 25**
**FOR INJUNCTIVE RELIEF**
1155650

58.     Plaintiffs have been or are currently involved in substantial, on-going litigation as adversaries which magnify the conflicts of interest, impartiality and fairness concerns surrounding Mr. Stockard, ASB's attorney, to serve as the person conducting the proposed foreclosure sale of Plaintiffs' Property without the Trustee or the Appointment of a Substitute Trustee. The litigation between Steele, his related business entities, and ASB include, without limitation, the litigation referenced in the following several paragraphs Q. and R below:

1.     Cause No. DC-2023-CV-0607 styled "RT Franklin Holdings, LLC. and Christina Chapman v. Steele West Texas Capital Corporation, ASB, and Steele Bancshares, Inc. in the 72nd District Court of Lubbock County, Texas" filed on May 16, 2023 (the "RT Franklin Lawsuit");

2.     Cause No. A44977-2311 styled Chris Cartwright and Wright-Cart, Ltd., v. Brandon Steele, Steele West Texas Capital Corporation, Steele Bancshares, Inc. and ASB in the 64th Judicial District Court of Hale County, Texas filed on October 31, 2023 (the "Cartwright Lawsuit"). See, Original Petition filed October 31, 2023, and First Amended Petition filed January 2, 2024, which added new parties Plaintiff Donald Ebeling, Jr., Cinde Ebeling, Steven Ebeling, Shannon Ebeling, Robert Edwards, Ken King, in his capacity as Trustee of the King Contribution Trust, Coy Myrick, Jake Dennis Myrick, Daniel Smith, Reeda Smith and Rotom, Inc. Subsequently, approximately 100-120 shareholders of SWTCC were all added as parties; and

3.     Cause No. B44984-2311 styled Rodney Warren v. Steele West Texas Capital Corporation, Steele Bancshares, Inc., Brandon T. Steele and ASB filed in the 242nd Judicial District Court of Hale County, Texas November 3, 2023." (the "Warren Lawsuit') See, also First Amended Petition filed November 8, 2023.

The RT Franklin Lawsuit, the Carwright Lawsuit and the Warren Lawsuit are collectively referred to herein as the "SWTCC Shareholder Lawsuits".

4.     On February 2, 2024, Steele West Texas Capital Corporation ("SWTCC") filed a voluntary Chapter 7 petition in bankruptcy before Judge Joshua Searcy in Chapter 7 Case No. 24-60053 styled, "In Re Steele West Texas Capital Corporation in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division". The SWTCC Shareholder

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                    **Page 26**
**FOR INJUNCTIVE RELIEF**
1155650

Lawsuits (RT Franklin Lawsuit, Franklin Lawsuit and Warren Lawsuits) were promptly removed to the federal bankruptcy court.

**U.     Most Recent Litigation is a Request for Statutory and Contractual Advancement and Indemnity of Attorneys' Fees and Expenses to Which Brandon Steele is Entitled as the Former CEO of ASB**

59.     Just recently on February 24, 2026, and only three (3) days prior to the execution of the second Notice of Foreclosure Sale on February 27, 2026 (see Exhibit D),  Brandon Steele, as the former Chairman of the Board of Directors and a Director of ASB from December 2010 until December 1, 2022 filed an Original Petition seeking contractual and statutory advancement and indemnity, among other relief,  for recovery of attorneys' fees and expenses incurred as a result of various litigation arising from his tenure as the former Chairman of the Board of Directors and a Director to which is entitled.  A true and correct copy of Plaintiff's Original Petition filed in Cause No. DC-26-03452 styled Brandon T. Steele v. American State Bank in the 298th Judicial District Court of Dallas County Texas is attached hereto as **Exhibit AA** and incorporated herein by reference.  Steele has calculated that he is entitled to in excess of $655,953.57 as of the date of the filing based upon the legal work performed by 5 different law firms on his behalf in the foregoing litigation. In fact, on Monday March 30, 2026, Steele's counsel had contacted opposing counsel, Mr. Karl Dial of Greenberg Traurig concerning the filing of an Emergency Motion to recover those fees in the Dallas County Lawsuit.  Steele's counsel  was in the process of forwarding the Emergency Motion to Mr. Dial for review and conference when the case was unexpectantly Removed to the United States District Court for the Northern District of Texas  on Thursday April 2, 2026 and then immediately administratively transferred on the same day to the United States District Court for the Eastern District of Texas, Tyler Division. Plaintiff Steele has filed a Motion to Remand which is currently under review.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                      **Page 27**
**FOR INJUNCTIVE RELIEF**
**1155650**

60. Foreclosure is a harsh remedy. Consequently, Texas law requires strict compliance with notice requirements. *See Univ. Sav. Ass'n v. Springwood Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (holding "Texas Courts have consistently held that the terms set out in a deed of trust must be strictly followed"); *see also Houston First Am. Sav v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983) (holding "[c]ompliance with the notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale"). A foreclosure sale conducted without strict compliance with the notice provisions of the deed of trust and Texas law is void. *See Musick*, 650 S.W.2d at 769 (because strict compliance is necessary, the foreclosure sale was invalid because the trustee failed to give the debtor the requisite notice pursuant to the statute and the express terms of the deed of trust). Defendants are seeking to foreclose on Lubbock Square, a unique piece of real property, without strict compliance with the Loan Agreement, the Deed of Trust, and Texas law.

61. Plaintiffs seek a temporary restraining order and temporary injunctive relief to stop Defendants' foreclosure and to require Defendants to comply with Texas law.

## VI.
## CAUSES OF ACTION

### COUNT 1
### WRONGFUL FORECLOSURE

62. Plaintiffs re-allege and incorporate the facts and allegations set forth above.

63. The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) an inadequate proposed selling price; and (3) a causal connection between the defect and the inadequate selling price. *See Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied). "For a party to recover

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**        **Page 28**
**FOR INJUNCTIVE RELIEF**
1155650

damages for wrongful foreclosure and breach of the deed of trust, he must show that he has suffered a loss or material injury as the result of an irregularity in the foreclosure sale. In general, this is shown where the actions of the lender or note holder have caused the property to be sold for a grossly inadequate price." *Wells Fargo Bank v. Robinson*, 391 S.W.3d 590, 594 (Tex. App.—Dallas 2012, no pet.).

64.     Plaintiffs argue that Defendants intend to wrongfully foreclose on this Property and have made threats against Plaintiffs that have discouraged investors from joining the effort to save the property.

65.     Plaintiffs assert that the proposed sale process is defective and believe that it is unreasonable to not allow Plaintiff to cure the problems that have caused the proposed foreclosure.

66.     If the Property is not returned to Plaintiffs, the Plaintiffs will lose the right to sell or mortgage the Property at some future date and will not obtain the full benefit of the appreciated value of the Property.  Plaintiffs will likely prevail in its cause for consequential and special damages.

## COUNT 2
## BREACH OF CONTRACT

67.     Plaintiffs reallege and incorporate the facts and allegations set forth above.

68.     Plaintiffs and ASB, by virtue of **its Assignment of Security Interest**, entered into a valid contract.  Plaintiffs have complied, or been prevented from complying, with the **loan documents**.  ASB has breached the contract and seeks to foreclose on the property

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                          **Page 29**
**FOR INJUNCTIVE RELIEF**
1155650

without (1) allowing Plaintiffs the opportunity to cure, and (2) strictly complying with the notice provisions required by the Deed of Trust and Texas Property Code.

69.     Plaintiffs seek damages for Defendants' breach of contract.

70.     In accordance with Tex. Civ. Prac. & Rem. Code §38.001 *et seq.*, Plaintiffs seek recovery of its reasonable and necessary attorneys' fees incurred in prosecuting this lawsuit, as well as all post-judgment proceedings and appellate proceedings.

71.     Furthermore, all conditions precedent necessary for Plaintiffs to recover in this action have occurred, have been performed, or have been waived.

## COUNT 3
## CONVERSION

72.     Plaintiffs reallege and incorporate the facts and allegations set forth above.

73.     Plaintiffs contend that Defendants have wrongfully converted to their own use the contents of the Property wrongfully foreclosed. Plaintiffs also sue for damages caused by the conversion.

## COUNT 4
## BREACH OF DUTY OF COOPERATION

74.     Plaintiffs reallege and incorporate the facts and allegations set forth above.

75.     Texas law recognizes a duty to cooperate that "is implied in every contract in which cooperation is necessary for performance of the contract." This duty "requires that a party to a contract may not hinder, prevent, or interfere with another party's ability to perform its duties under the contract." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.—Dallas 2005, pet. denied).

76.     Defendants' conduct has prevented Plaintiffs from further performing under the Promissory Note and Deed of Trust. Further, Defendants have initiated non-judicial

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 30**
**FOR INJUNCTIVE RELIEF**
**1155650**

foreclosure proceedings in violation of the terms of the Promissory Note and Deed of Trust and without strict compliance with the notice required by the Texas Property Code and thereby prevented Plaintiffs from curing any alleged default. Defendants have therefore breached the implied duty of cooperation. Plaintiffs have suffered damages as a result.

## COUNT 5
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

77.      Plaintiffs re-allege and incorporate the facts and allegations set forth above.

78.      "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Tex. Bus. & Com. Code Ann. § 1.203 (Tex. U.C.C.) (Vernon 1987). See also *La Sara Grain v. First Nat'l Bank*, 673 S.W.2d 558, 563 (Tex. 1984). Promissory notes are governed by the Texas Uniform Commercial Code. *Southview Corp. v. Kelberg First Nat'l Bank*, 512 S.W.2d 817 (Tex. Civ. App.—Corpus Christi 1974, no writ); *Carter v. South Texas Lumber Co.*, 422 S.W.2d 951 (Tex. Civ. App.—Eastland 1967, no writ); see also *Williams v. Stansbury*, 649 S.W.2d 293 (Tex. 1983). Thus, every promissory note has an implied covenant of good faith and fair dealing by virtue of § 1.203 of the Texas U.C.C. The obligation of good faith pursuant to the Texas U.C.C., requires not only that good faith be evidenced but that a standard of commercial reasonableness be observed. Such obligation permeates all of the dealings between lender and borrower because the promissory note in issue is the primary agreement between the parties. The other documents merely elaborate on the obligation of the promissory note. *State Nat'l Bank v. Farah Mfg. Co., Inc.*, 678 S.W.2d 661 (Tex. App.—El Paso 1984, writ dism'd by agr.) also imposed the duty of dealing in good faith required by the Texas Uniform Commercial Code notwithstanding an earlier decision by the Texas Supreme Court that

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 31**
**FOR INJUNCTIVE RELIEF**
1155650

**EXHIBIT "F" - PAGE 31 of 44**

not every contract contains an implied covenant of good faith and fair dealing. In fact, the Deed of Trust provides that it is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.

79.    Defendants' conduct has prevented Plaintiffs from further performing under the Promissory Note and Deed of Trust. Further, Defendants have initiated non-judicial foreclosure proceedings in violation of the terms of the Promissory Note and Deed of Trust and without strict compliance with the notice required by the Texas Property Code and thereby prevented Plaintiffs from curing any alleged default. Defendants have therefore breached the implied duty of cooperation. Plaintiffs have suffered damages as a result.

**COUNT 6**
**TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**

80.    Plaintiffs re-allege and incorporate the facts and allegations set forth above.

81.    At all material times, Plaintiff are, and have been, "consumers" as that term is defined  by §17.45(4) of the Texas Business and Commerce Code Ann. (Vernon Supp. 2000) known as the Texas Deceptive Trade Practices - Consumer Protection Act (the "DTPA"). Further, ASB have offered "goods" and/or "services" for sale in the nature of a mortgage loan transaction of a homestead as contemplated within Tex. Bus. & Com. Code § 17.45(2).

82.    Pursuant to the DTPA as contained in Tex. Bus. & Com. Code §17.50, Plaintiffs specifically assert the following claims under §17.50:

   a. ASB employed false, misleading, and/or deceptive acts or practices as provided in Tex. Bus. & Com. Code § 17.50(a)(1);

   b. ASB  engaged in an unconscionable course of conduct as provided under Tex. Bus. & Com. Code §17.50(b)(4).

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 32**
**FOR INJUNCTIVE RELIEF**
1155650

83.    ASB used or employed false, misleading, or deceptive acts or practices including, without limitation, the following:

a.    ASB's sales pitch intentionally misrepresented, omitted and/or concealed key facts concerning the goods and services it would provide, and the nature of its business relationships with the other persons or entities, in order to induce Plaintiffs into transacting business with ASB. If ASB had disclosed the true nature of the goods and services, and business relationships with the other persons or entities, Plaintiffs would never have conducted business with ASB; and

b.    ASB took advantage of Plaintiffs' lack of knowledge and experience to a grossly unfair degree in inducing Plaintiffs to enter the mortgage loan transaction. Furthermore, in falsely representing the goods and services, the business relationships with the other persons or entities, and the suitability of the goods and services for use by Plaintiffs, ASB took advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs, to their detriment, to a grossly unfair degree.

84.    ASB committed the following false, misleading, or deceptive acts or practices prohibited by the following sections of Tex. Bus. & Com. Code §17.46:

(2)    causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(5)    representing the goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have;

(7)    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(12)    representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 33**
**FOR INJUNCTIVE RELIEF**
1155650

(14)   misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

(24)   failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

85.   Plaintiffs relied on the foregoing false, misleading, or deceptive acts and practices to their detriment by entering into the mortgage loan transaction with ASB.

86.   The foregoing false, misleading, or deceptive acts and practices were a producing cause of Plaintiffs' suffering economic damages, as well as other damages in amounts in excess of the minimum jurisdictional limits of this Court.

87.   Additionally, because ASB's conduct was committed knowingly and/or intentionally, Plaintiffs suffered injuries for which they are entitled to recover treble damages and pre-judgment and post-judgment interest at the highest lawful rates. Moreover, pursuant to Texas Business & Commerce Code §17.50(d), Plaintiffs are entitled to their reasonable and necessary attorney's fees, court costs and expenses.

## COUNT 7
### TEXAS FAIR DEBT COLLECTION ACT
### CHAPTER 392 OF THE TEXAS FINANCE CODE

88.   Plaintiffs re-allege and incorporate the facts and allegations set forth above.

89.   This action arises under the Fair Debt Collection Act contained in Chapter 392 of the Texas Finance Code. (the "Act"). ASB used coercive and unlawful threats of foreclosure of Plaintiffs's homestead for coordinated pressure in other legal matters to suppress Mr. Brandon Steele's ability to object to a separate settlement agreement in a federal bankruptcy proceeding involving both ASB and Steele as well as his related entities.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                          **Page 34**
**FOR INJUNCTIVE RELIEF**
1155650

90.     ASB refused to accept a routine mortgage payment tendered by Steele, on behalf of Plaintiffs, at ASB's Beckham branch, thereby falsely creating a mortgage deficiency and default on Plaintiffs' mortgage loan.  An ASB employee advised Steele that she had been instructed by her supervisor not to accept the payment.

91.     ASB provided no contemporaneous explanation for the refusal to accept payment and did not identify any default or deficiency justifying such action.

92.     The refusal to accept payment, coupled with the involvement of ASB's litigation counsel, constituted an improper and bad-faith use of mortgage servicing and foreclosure posture as leverage in disputes unrelated to routine loan performance, and further evidence a pattern of coordinated conduct designed to exert pressure on Plaintiffs while impairing their ability to protect their legal and property rights.

93.     On May 5, 2025, ASB's counsel, forwarded correspondence to Steele, on balf of Plaintiffs, with respect to, among other things, a notice of foreclosure sale, wherein Bowen, on behalf of ASB, threatened that ASB would only remove a nonjudicial sale of Plaintiffs' homestead if Mr. Steele and his related entity SBI, promised to take no act to interfere, hinder, or delay the consummation, closing, and finality of  unrelated settlements of all claims  and causes of action related to motions to approve a settlement in an unrelated bankruptcy proceeding. The coercive letter threatened and warned of foreclosure of Plaintiffs' homestead <u>unless</u> Steele and SBI promised not to object to the settlements, object to or oppose the approval of a compromise settlement in the pending bankruptcy proceeding or initiate any litigation in any forum arising out of, or related to, the settlements. The foregoing threats were made while admitting that there were "direct conflicts between [Steele] and ASB."

94.     Plaintiffs are "consumers" with "consumer debt" as defined by §392.001(1) and (2)

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                                    **Page 35**
**FOR INJUNCTIVE RELIEF**
**1155650**

respectively of the Act.

95.      ASB is a "debt collector" as defined by §392.001(6) of the Act participating in "debt collection" as defined by §392.001(5) of the Act.

96.      ASB committed a violation of §392.301 of the Act by using threats, coercion, or attempts to coerce that employ the following practices prohibited by the following sections of §392.301:

> (1) using or threatening to use violence or other criminal means to cause harm to a person or property of a person;
>
> (2 ) accusing falsely or threatening to accuse falsely a person of fraud or any other crime;
>
> (3) representing or threatening to represent to any person other than the consumer that a consumer is willfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute;
>
> (4) threatening to sell or assign to another the obligation of the consumer and falsely representing that the result of the sale or assignment would be that the consumer would lose a defense to the consumer debt or would be subject to illegal collection attempts;
>
> (7) threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or
>
> (8) threatening to take an action prohibited by law.

97.      ASB committed a violation of §392.303 of the Act by the use of unfair or unconscionable means that employ the following practices in violation of the following sections of §392.303:

> (2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 36**
**FOR INJUNCTIVE RELIEF**
**1155650**

98.     ASB committed a violation of §392.304 of the Act by the use of fraudulent, deceptive, or misleading representation that employs practices in violation of the following sections of that employ the following practices in violation of the following sections of §392.304:

(3) representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer;

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

(13) representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion;

(14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;

(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

99.     The foregoing wrongful conduct and/or acts were committed against Plaintiffs and constitute a criminal offense under §392.402 of the Act.

100.    ASB's wrongful acts and/or conduct caused injury to Plaintiffs, which resulted in damages to Plaintiffs.

101.    Plaintiffs have suffered actual damages pursuant to §392.403(a)(2) of the Act in an amount in excess of the minimum jurisdictional limits of this Court.

102.    Plaintiffs seek additional damages under the Act for the recovery of at least $100 for each violation as authorized by §392.403(c) of the Act.

103.    Plaintiffs are entitled to recover the attorney's fees reasonably related to the amount of work performed and costs pursuant to §392.403(b) of the Act.

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 37**
**FOR INJUNCTIVE RELIEF**
**1155650**

104.    Further, Plaintiffs are entitled to injunctive relief to prevent or restrain a violation of the Act pursuant to §392.403(a)(1) of the Act.

**COUNT 8**
**DECLARATORY JUDGMENT**

105.    Plaintiffs reallege and incorporate the facts and allegations set forth above.

106.    A justiciable controversy has arisen between Plaintiffs and ASB. Plaintiffs respectfully request that the Court declare the rights and obligations of the parties to the Promissory Note and Deed of Trust.  Specifically, Plaintiffs request that the Court judicially declare that: (1) the Property is Plaintiffs' homestead, (2) the pending foreclosure sale of the Property is wrongful because (a) ASB failed to provide Plaintiff with an opportunity to cure as allowed by the Promissory Note and Deed of Trust; and, (b) Defendants have not provided notice as required by the Deed of Trust and the Texas Property Code as a prerequisite to a non-judicial foreclosure; and, (3) the pending foreclosure sale of the Property is wrongful because Defendants have failed to provide Plaintiffs, as a debtor who, according to the records of ASB, is acknowledged in the Notice of Foreclosure Sale, with proper notice at either as required by Texas Property Code §§ 51.0001(2)(a) and 51.002(b)(3).

107.    In accordance with Tex. Civ. Prac. & Rem. Code §37.001 *et seq.*, Plaintiffs seek recovery of its reasonable and necessary attorneys' fees incurred in prosecuting this lawsuit, as well as all post-judgment proceedings and appellate proceedings.

108.    Furthermore, all conditions precedent necessary for Plaintiffs to recover in this action have occurred, have been performed, or have been waived.

**VII.**
**PRE-JUDGMENT INTEREST**

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 38**
**FOR INJUNCTIVE RELIEF**
**1155650**

109.    As a direct and proximate result of the conduct of Defendants, as described hereinabove, Plaintiffs have been damaged and are entitled to recover pre-judgment interest in addition to the other damages and costs to be awarded by this Court. Plaintiffs seek pre-judgment interest at the maximum lawful rate.

### VIII
### POST-JUDGMENT INTEREST

110.    Plaintiffs are additionally entitled to interest on any judgment received in this action at the highest lawful rate from the date of judgment until paid.

### IX
### ATTORNEY'S FEES

111.    Due to the actions and conduct of Defendants, as described hereinabove, Plaintiffs have been compelled to retain the undersigned attorney to represent them and to protect their interests in this action.  Consequently, Plaintiffs are entitled to recover reasonable and necessary attorney's fees pursuant to Chapter 38 Texas Civil Practice & Remedies Code.

### X.
### APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND  PERMANENT INJUNCTION

112.    Plaintiffs re-allege and incorporate the facts and allegations set forth above.

113.    Plaintiffs have no adequate remedy at law to prevent Defendants from foreclosing on their homestead, a unique piece of real property.

114.    Defendants have failed to strictly comply with the Deed of Trust and the Texas Property Code for noticing and posting the Property for foreclosure sale.  Defendants failed to provide Plaintiffs, as debtors who, according to the records of ASB, with proper notice *as required by Texas Property Code §§ 51.0001(2)(a) and 51.002(b)(3)*

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 39**
**FOR INJUNCTIVE RELIEF**
**1155650**

115.    Plaintiffs have no adequate remedy at law to prevent Defendants from: (i) foreclosing on the Property; (ii) commencing the foreclosure s sale on April 7, 2026 between the hours of 10:00 am and 1:00 p.m; (iii) from posting the Property for a non-judicial foreclosure sale in violation of the notice provisions of Texas Property Code §51.002.

116.    Unless Defendants are enjoined, Plaintiffs will suffer probable harm which is imminent and irreparable. More specifically, if not enjoined, Defendants may sell the Property at any time during the pendency of this matter thus depriving Plaintiffs of ownership of the Property, which constitutes a unique piece of real estate, and potentially causing Plaintiffs to be dispossessed of the Property. Plaintiffs have no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiffs may avail themselves will not give it as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

117.    Plaintiffs will suffer immediate and irreparable harm if the Court does not enter a temporary restraining order with or without notice and a temporary injunction restraining Defendants as requested herein. Such harm will result from the loss of the Property. The Property is unique and cannot be replaced by any other real property. Specifically, Plaintiffs are currently suffering irreparable harm for which no legal remedy can fix because Defendants have not properly noticed the foreclosure sale. Plaintiffs' injury – the wrongful foreclosure of a unique piece of real property – is irreparable. "Irreparable injury" occurs when the injury is of such a nature that the injured party cannot be adequately compensated for it in damages, or the damages cannot be measured by any certain pecuniary standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 911 (Civ. App.--Dallas 1976, ref. n.r.e.) (showing of irreparable injury required); *County of Harris v. Southern Pacific Trans. Co.*,

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**                    **Page 40**
**FOR INJUNCTIVE RELIEF**
**1155650**

457 S.W.2d 336, 339 (Civ. App.--Houston [1st Dist.] 1970, no writ). Unless enjoined, Plaintiffs will lose the Property.

118.    Following entry of a temporary restraining order, a temporary injunction should be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants and their officers, agents, servants, employees, and attorneys, or those persons in active concert or participation with them who receive actual notice of the order, from: (i) foreclosing on the Property; (ii) commencing the foreclosure sale on April 7, 2026 between the hours of 10:00 am and 1:00 p.m; or any other subsequent first Tuesday of the month; (iii) from posting the Property for a non-judicial foreclosure sale in violation of the notice provisions of Texas Property Code §51.002.

119.    A permanent injunction should be issued, on final trial of this cause, enjoining Defendants and their officers, agents, servants, employees, and attorneys, or those persons in active concert or participation with them who receive actual notice of the order, from: (i) foreclosing on the Property; (ii) commencing the Substitute Trustee's sale on November 5, 2024 between the hours of 10:00 am and 1:00 p.m.or any other subsequent first Tuesday of the month; (iii) from posting the Property for a non-judicial foreclosure sale in violation of the notice provisions of Texas Property Code §51.002.

120.    Plaintiffs have no adequate legal remedy now available to avoid the effect of the foreclosure sale of the Property and will suffer severe irreparable harm if the sale scheduled for Tuesday, November 5, 2024 is not enjoined.

121.    Plaintiff is willing to post a bond to support the TRO and temporary injunction it seeks.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs Brandon Trace Steele and Andrea Irene Steele, Trustees of the Arroyo Picosa Revocable Trust respectfully request that citation issue and process be served on American State Bank; that, Plaintiffs be granted a Temporary Restraining Order, that Plaintiffs be granted a Temporary Injunction and that, upon final hearing, Plaintiffs have and recover a Permanent Injunction against the Defendants; judgment from and against the Defendants for Plaintiffs' actual damages in the amounts set forth above, for reasonable attorney's fees incurred by Plaintiffs in prosecuting this action, for costs and expenses of suit herein, for pre-judgment and post-judgment interest on all monetary relief sought herein at the highest rates allowed by law; and, for such other and further relief, both at law or in equity, to which Plaintiffs may be justly entitled.

Dated: June 1, 2026

Respectfully submitted,

**FRIEDMAN & FEIGER, L.L.P.**

By:   /s/ Lawrence J. Friedman
      **LAWRENCE J. FRIEDMAN**
      State Bar No. 07469300
      lfriedman@fflawoffice.com
      **RICHARD W. WINN**
      State Bar No. 21779700
      rwinn@fflawoffice.com
      17304 Preston Road, Suite 300
      Dallas, Texas 75252
      (972) 788-1400 (Telephone)
      (972) 788-2667 (Telecopier)

      **ATTORNEYS FOR PLAINTIFF
      BRANDON TRACE STEELE AND
      ANDREA IRENE STEELE, TRUSTEES
      OF THE ARROYO PICOSA
      REVOCABLE TRUST**

Docusign Envelope ID: 7BF5D398-3449-82D1-82CC-885662565CE8

## VERIFICATION

STATE OF TEXAS      §
§
COUNTY OF DALLAS    §

BEFORE ME, the undersigned authority, on this day personally appeared

Brandon T. Steele, who, being by me first duly sworn, upon his oath deposes and says

that he is one of the Trustees of the Arroyo Picosa Revocable Trust, and one of the Plaintiffs

herein and that he has read Paragraphs 10 through 61 of Plaintiffs' First Amended

Petition and Application for Injunctive Relief and that every statement contained

therein is within his personal knowledge and is true and correct.

— DocuSigned by:

*Brandon Steele*

7F44A317285741B

Brandon T. Steele

SUBSCRIBED AND SWORN TO BEFORE ME on June 1, 2026, to certify

which witness my hand and official seal of office.

— Signed by:

*Jeffrey Thomas O'Dell*

1815FF3EA87F4C1

Notary Public in and for the State of Texas

My Commission Expires: 12/20/2026

JEFFREY THOMAS ODELL
NOTARY PUBLIC
STATE OF TEXAS
Commission #11296457
My Comm. Expires December 20, 2026

**PLAINTIFF'S FIRST AMENDED PETITION AND APPLICATION**      Page 43
**FOR INJUNCTIVE RELIEF**
1155650

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been electronically served upon all counsel of record on this June 1, 2026, in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

/s/ Richard W. Winn
Richard W. Winn